**EXHIBIT 3**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

    Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, et al.,

    Defendants.

CASE NO. 1:21-cv-00119 (RDM)

**PLAINTIFFS' BRIEF ON REMEDY FOR CLAIMS RELATING TO PROTECTION OF ESA-LISTED SPECIES UNDER USFWS' JURISDICTION**

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................ 1

    I.    The BiOp, Technical Assistance Process, and ITS Should Be Vacated. ............ 2

    II.   EPA's Approval of Florida's Inadequate 404 Program Should Be Vacated. ..... 7

    III.  Vacatur Should Not Be Delayed or Limited. ..................................................... 9

CONCLUSION ......................................................................................................... 10

CERTIFICATE OF SERVICE ................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**                                                                                                                              **Page(s)**

\*   *Allied-Signal, Inc. v. USNRC*,
       988 F.2d 146 (D.C. Cir. 1993) ................................................................................ 2, 4, 6

\*   *Allina Health Servs. v. Sebelius*,
       746 F.3d 1102 (D.C. Cir. 2014) ..................................................................................... 1

     *Am. Bioscience, Inc. v. Thompson*,
       269 F.3d 1077 (D.C. Cir. 2001) ..................................................................................... 1

     *Am. Fuel & Petrochemical Mfrs. v. EPA*,
       937 F.3d 559 (D.C. Cir. 2019) ....................................................................................... 5

     *Am. Great Lakes Ports Ass'n v. Schultz*,
       962 F.3d 510 (D.C. Cir. 2020) ....................................................................................... 9

\*   *Appalachian Voices v. Interior*,
       25 F.4th 259 (4th Cir. 2022) .......................................................................................... 3

\*   *CBD v. Bernhardt*,
       982 F.3d 723 (9th Cir. 2020) ......................................................................................... 7

\*   *CBD v. BLM*,
       698 F.3d 1101 (9th Cir. 2012) ....................................................................................... 7

     *CBD v. EPA*,
       861 F.3d 174 (D.C. Cir. 2017) ................................................................................... 5, 9

     *CBD v. Raimondo*,
       No. 18-112, 2022 WL 17039193 (D.D.C. Nov. 17, 2022) ......................................... 10

\*   *CBD v. Ross*,
       480 F. Supp. 3d 236 (D.D.C. 2020) ......................................................................... 3, 10

     *Conservation Law Found. v. Pritzker*,
       37 F. Supp. 3d 254 (D.D.C. 2014) ................................................................................. 2

     *Conserve SW. Utah v. Interior*,
       No. 1:21-cv-01506-ABJ, 2023 WL 7922785 (D.D.C. Nov. 16, 2023) ........................ 3

\*   *Defs. of Wildlife v. EPA*,
       420 F.3d 946 (9th Cir. 2005) .................................................................................. 1, 4, 7

     *Defs. of Wildlife v. Jackson*,
       791 F. Supp. 2d 96 (D.D.C. 2011) ................................................................................. 9

\*   *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*,
    726 F. Supp. 2d 1195 (D. Mont. 2010) .................................................................. 3

\*   *Friends of Crystal River v. EPA*,
    794 F. Supp. 674 (W.D. Mich. 1992) ..................................................................... 7

\*   *Friends of the Earth v. Haaland*,
    583 F. Supp. 3d 113 (D.D.C. 2022) ........................................................................ 2

\*   *Humane Soc'y v. Jewell*,
    76 F. Supp. 3d 69 (D.D.C. 2014) ............................................................................ 5

\*   *Humane Soc'y v. Kempthorne*,
    579 F. Supp. 2d 7 (D.D.C. 2008) ............................................................................ 7

*Me. Lobstermen's Ass'n v. NMFS*,
    70 F.4th 582 (D.C. Cir. 2023) ............................................................................. 5, 9

*Nat. Res. Def. Council v. EPA*,
    489 F.3d 1250 (D.C. Cir. 2007) .............................................................................. 1

*Nat. Res. Def. Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) ................................................................................ 10

*Nat'l Fam. Farm Coal. v. EPA*,
    966 F.3d 893 (9th Cir. 2020) .................................................................................. 4

\*   *Nat'l Parks Conservation Ass'n v. Jewell*,
    62 F. Supp. 3d 7 (D.D.C. 2014) .............................................................................. 7

*Oglala Sioux Tribe v. USNRC*,
    896 F.3d 520 (D.C. Cir. 2018) ................................................................................ 9

\*   *PEER v. Hopper*,
    827 F.3d 1077 (D.C. Cir. 2016) .............................................................................. 3

\*   *Sierra Club v. Corps*,
    909 F.3d 635 (4th Cir. 2018) .................................................................................. 5

\*   *Sierra Club v. Interior*,
    899 F.3d 260 (4th Cir. 2018) ............................................................................... 3, 7

\*   *Standing Rock Sioux Tribe v. Corps*,
    985 F.3d 1032 (D.C. Cir. 2021) .............................................................................. 7

\*   *Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978) ............................................................................................ 2, 4

iii

*U.S. Sugar Corp. v. EPA*,
   844 F.3d 268 (D.C. Cir. 2016) .................................................................................. 4

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ................................................................................................... 9

\* *Wild Fish Conservancy v. Salazar*,
   628 F.3d 513 (9th Cir. 2010) ..................................................................................... 7

**Federal Statutes**

5 U.S.C. § 706(2)(A) ........................................................................................................ 1

**Legislative Materials**

Sen. Rep. No. 97-418 (1982) ............................................................................................ 3

# ARGUMENT

In the rush to approve Florida's 404 program during the prior administration, EPA relied on USFWS' unlawful programmatic BiOp to determine that EPA's approval of the state program—and permits issued pursuant to the state program—would not jeopardize ESA-listed species, even though the BiOp unlawfully replaced the ESA' statutory framework with a non-statutory, unenforceable, and unreviewable technical assistance process.  USFWS also issued an unlawful ITS that shielded EPA, FDEP, and state permittees from incidental take liability in perpetuity without limiting incidental take or imposing meaningful terms and conditions.  These serious, substantive violations render EPA's approval unlawful, because the state program does not meet the Clean Water Act's criteria to ensure adequate protection of ESA-listed species.  The violations cannot be cured by further explanation of or changes to the technical assistance process on remand.  The only other court to have considered a similar scenario vacated EPA's approval of a state's Clean Water Act Section 402 program that did not comply with the ESA.  *See Defs. of Wildlife v. EPA*, 420 F.3d 946, 979 (9th Cir. 2005).[1]  The Court should therefore vacate the BiOp (including technical assistance process and ITS) and EPA's approval.

The APA provides that the "reviewing court shall … set aside agency action, findings, and conclusions found to be" unlawful, 5 U.S.C. § 706(2)(A), so relief granted under the APA "normally will be a vacatur."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001).  *Accord Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014) (vacatur "normal remedy" for unsustainable agency action); *see Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1262 (D.C. Cir. 2007).  A court may remand without vacatur where the deficiencies in the agency action are not serious (meaning the agency could substantiate its decision on remand).

---

[1] *Rev'd on other grounds, Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 649 (2007).

1

*Allied-Signal, Inc. v. USNRC*, 988 F.2d 146, 151 (D.C. Cir. 1993). And because vacatur is the default remedy, defendants bear the burden to prove that vacatur is unnecessary or impermissibly disruptive. *Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113, 157 (D.D.C. 2022).[2]

To ensure ESA compliance, any remedy would have to require that prospective permits that may affect ESA-listed species undergo Section 7 review and are thus subject to the ESA's clearly enforceable requirements governing effects analyses, jeopardy determinations, and incidental take limits, since pursuing an incidental take permit ("ITP") under Section 10 is voluntary. The ESA's mandate to protect species cannot be gambled on whether developers are willing to risk liability for take. To allow FDEP to continue issuing permits under its unlawful program would defeat Congress' intent to ensure that protection of ESA-listed species is accorded the "highest of priorities."[3] *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978).

I.  **The BiOp, Technical Assistance Process, and ITS Should Be Vacated.**

The Defendants' unlawful evasion of the ESA calls for vacatur because it was a serious violation that cannot be cured on remand. *Allied-Signal*, 988 F.2d at 150–51; *Conservation Law Found. v. Pritzker*, 37 F. Supp. 3d 254, 271 (D.D.C. 2014) (agency action ought to be vacated "where there is no question that the agency has violated the law and absolutely no possibility of the [agency action's] survival on remand").

---

[2] *Appeal dismissed in part sub nom. Friends of Earth v. Haaland*, No. 22-5036, 2022 WL 4293098 (D.C. Cir. Apr. 15, 2022), *vacated and remanded on other grounds*, No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023).

[3] Because FDEP is poised to issue permits for major projects pursuant to the unlawful technical assistance process and state program, Plaintiffs Center for Biological Diversity and Sierra Club respectfully request this relief be granted before February 16, 2024, to enjoin FDEP from issuing those permits and prevent irreparable harm to ESA-listed species. *See* Dkt. 135. This relief would resolve their motion for a temporary restraining order and preliminary injunction. *See id.*

2

First, USFWS failed to conduct any of the analyses mandated by the ESA to reach a "no jeopardy" determination, which is a severe substantive and procedural violation.[4] *See Appalachian Voices v. Interior*, 25 F.4th 259, 264 (4th Cir. 2022) ("[S]ubstantive duty to avoid jeopardy is policed by a procedural consultation requirement."). Instead, USFWS claimed there would be no jeopardy because the agency would engage in a non-statutory permit-level technical assistance process that only required USFWS to receive and review permit applications.[5] Dkt. 98 at 36–41, 45–51; Dkt. 104 at 20–30, 36–49; Dkt. 123 at 6–12; Dkt. 129 at 2 & n.2. These violations strike at the heart of the ESA and demand vacatur. *Appalachian Voices*, 25 F.4th at 283 (vacating BiOp when USFWS failed to conduct analysis to find no jeopardy); *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 726 F. Supp. 2d 1195, 1232 (D. Mont. 2010) (vacating programmatic BiOp that deferred all analysis to later, site-specific USFWS review).

Second, USFWS acted contrary to the plain language of the ESA by issuing an ITS without any take limits or meaningful terms and conditions, undermining "one of the most effective tools for conserving endangered wildlife." Sen. Rep. No. 97-418, at 25 (1982); Dkt. 98 at 42–45; Dkt. 104 at 30–36; Dkt. 123 at 8–9; Dkt. 129 at 2; *PEER v. Hopper*, 827 F.3d 1077, 1090 (D.C. Cir. 2016) (vacating unlawful ITS); *Sierra Club v. Interior*, 899 F.3d 260, 295 (4th Cir. 2018) (same); *CBD v. Ross*, 480 F. Supp. 3d 236, 245 (D.D.C. 2020) ("little 'doubt'" as to whether agency chose correctly; ESA required an ITS with required measures to minimize take).

Third, these violations are severe because they allow harm to species without compliance with the stringent procedures and standards that Congress created in the ESA to "halt and reverse

---

[4] The case Florida cites is distinguishable. Dkt. 160 at 6. *Conserve Sw. Utah v. Interior*, No. 1:21-cv-01506-ABJ, 2023 WL 7922785, at *9 (D.D.C. Nov. 16, 2023) (denying request for vacatur because court could not find legal error without the benefit of summary judgment).
[5] Plaintiffs have already rebutted, Dkt. 153 at 14 n.10, claims that the technical assistance process has been working well, Dkt. 158 at 4; Dkt. 160-1 at 3–6, 8 (Wolfe Dec. ¶¶ 6–13, 20).

3

the trend toward species extinction—whatever the cost." *See Tenn. Valley Auth.*, 437 U.S. at 154. Remand without vacatur means that potentially hundreds of permits a year will be issued, *see* Dkt. 160 at 5, in a state with 139 listed species, all without lawful Section 7 consultation ever having taken place.[6] This is especially concerning for critically endangered species like the Florida panther, with a population as low as 120 adults and subadults, because many permits are currently proposed in the panther's last remaining occupied habitat. Dkt. 135 at 12–13; Dkt. 153 at 29 & n.33. "The purpose of the Endangered Species Act—to conserve endangered and threatened species rather than allow them to go extinct []—renders the risk of harm to listed species too great." *Defs. of Wildlife v. EPA*, 420 F.3d at 978 (internal citation omitted).

Fourth, the violations are severe because they were undertaken with the express purpose of providing a work-around to the ESA. USFWS invoked its Section 7 authority to engage in programmatic consultation to provide incidental take coverage without performing the requisite analyses and without setting any take limits. The goal was to extend liability coverage without Florida or its permittees having to obtain a Section 10 ITP or have permits undergo Section 7 review subject to the ESA's Section 7 guardrails. Dkt. 98 at 27–29. The opposing parties' reliance on *Cooling Water* to claim that these violations are not severe, Dkt. 158 at 4, 8; Dkt. 160 at 3–5, fails since any remedy presumes that the Court has rejected the relevance of that case on the merits. The argument that USFWS is "free to choose" how it complies with the ESA, Dkt. 158 at 3, ignores that an unlawful path is not compliance at all. Dkt. 104 at 41.[7]

---

[6] *Cf. U.S. Sugar Corp. v. EPA*, 844 F.3d 268, 270 (D.C. Cir. 2016) (voluntary remand without vacatur because vacatur would remove protections) (cited by Florida, Dkt. 160 at 6).

[7] Whether the Defendants had a "reasonable belief" that the path they chose complied with the law, Dkt. 158 at 4, is immaterial. The relevant question is whether the agency's approach could conceivably be justified on remand. *Allied-Signal*, 988 F.2d at 151. And it cannot. *Cf. Nat'l Fam. Farm Coal. v. EPA*, 966 F.3d 893, 929 (9th Cir. 2020) (legal error was minor and technical; EPA could provide better reasoning on remand to justify its action).

4

Tellingly, the Defendants continue to stand by their unlawful actions, offering that on remand USFWS could simply adjust the non-statutory technical assistance process. Dkt. 158 at 4.[8] However, none of the supposed fixes would remedy USFWS' abrogation of the ESA nor USFWS' actions that exceeded its statutory authority. *See Humane Soc'y v. Jewell*, 76 F. Supp. 3d 69, 137 (D.D.C. 2014)[9] (vacating rule where USFWS acted outside authority); *Sierra Club v. Corps*, 909 F.3d 635, 655 (4th Cir. 2018) (vacating action that exceeded agency's authority).

Indeed, to comply with the ESA, USFWS would either have to (1) develop an adequate BiOp and ITS at the programmatic level; or (2) determine that Section 7 programmatic consultation is not required (i.e., that there would be "no effect" to listed species) so long as any permit that "may affect" species (as determined by USFWS) would be processed by the Corps (and subject to Section 7 consultation) or include proof that the applicant had already obtained a Section 10 ITP. But here, the Defendants have adhered to the position that the first option is not possible,[10] and have expressed no interest in pursuing the second option. Vacatur is therefore not only appropriate but necessary. That permittees *could* obtain Section 10 ITPs does not eliminate the need for vacatur because it does not render the violations non-serious and because the decision to seek an ITP is entirely voluntary. Dkt. 158 at 6 n.3; Dkt. 160-1 at 8–9 (Wolfe Dec. ¶ 21). Applicants would therefore be able to obtain state 404 permits that harm species without having complied with the ESA.

---

[8] The Defendants cite distinguishable cases to claim remand without vacatur is a frequent remedy for ESA violations. Dkt. 158 at 6 n.4. *See Me. Lobstermen's Ass'n v. NMFS*, 70 F.4th 582, 601 (D.C. Cir. 2023) (vacating BiOp but not rule where legal error was not fatal to rule); *Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 598 (D.C. Cir. 2019) (remanding without vacatur where petitioners did not request vacatur); *CBD v. EPA*, 861 F.3d 174, 188–89 (D.C. Cir. 2017) (no vacatur of pesticide registration where pesticide was less toxic than alternatives).
[9] *Aff'd sub nom. Humane Soc'y v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017).
[10] Plaintiffs have shown that USFWS had ample historical data to conduct this analysis, as is common for programmatic consultations. Dkt. 98 at 42; Dkt. 104 at 27–30, 40–41 & n.19.

5

The opposing parties' claim that the "disruption" factor weighs against vacatur ignores that it was the unlawful agency actions challenged here that displaced (i.e., disrupted) the congressionally mandated ESA processes for determining impacts to species and limiting take. Now they ask the Court to deprive Plaintiffs of a meaningful remedy because this would displace (i.e., disrupt) the unlawful path they chose. But this is not the sort of "disruption" contemplated in *Allied-Signal*, which concerned an agency action that might be adequately justified on remand, in which case vacatur in the interim would be unduly disruptive. 988 F.2d at 150–51.

The Defendants' argument that vacatur would be unduly disruptive rests entirely on the concern that permittees would have to find another (lawful) way to obtain liability coverage for incidental take.[11] Dkt. 158 at 5–6. But that is what the law requires. And vacatur, in fact, would provide greater clarity to the Defendants and developers that the BiOp and ITS are no longer in effect and may no longer be relied upon for incidental take coverage. Rather than create uncertainty, *id.* at 5, vacatur would make clear to developers that the familiar, congressionally mandated processes for complying with the ESA apply in Florida too. Any concern over potential impacts on already-issued permits (a concern also raised by Florida) would be addressed by making the relief apply prospectively.[12]

Florida's hyperbolic claims that vacatur of the BiOp and ITS would cause severe uncertainty, chaos, and a chilling effect on 404 permitting, Dkt. 160-1 at 6–9 (Wolfe Dec. ¶¶ 14–21), are easily rebutted, as these effects are much more likely to occur if the Court holds the

---

[11] The Defendants argue against vacating the BiOp "entirely," Dkt. 158 at 5, but fail to aver purported disruption beyond that which they say would flow from vacatur of the ITS alone.
[12] Prospective relief would not invalidate issued permits or coverage for incidental take that has occurred. Existing projects that could cause future incidental take (no more than 32 projects, Dkt. 106-1 at 6 (Wolfe Dec. ¶ 13)) could obtain coverage for future take through Section 10.

6

BiOp and ITS unlawful but leaves them intact.[13] Vacatur of the BiOp and ITS, and injunctive relief that restores the Corps' authority over permits that may affect ESA-listed species, would ensure that those permits receive the review required by the ESA while also providing clarity over the applicable species review process for those permits (Section 7) and how to obtain liability coverage for incidental take (an ITS or ITP).[14]

II.  **EPA's Approval of Florida's Inadequate 404 Program Should Be Vacated.**

Vacatur of EPA's approval is warranted because the agency relied on unlawful workarounds not only to claim compliance with the ESA, but also to find that Florida's program met the Clean Water Act's criteria for approval. Dkt. 98 at 51–52, 66, 73–74 & n.37; Dkt. 104 at 49–51, 73; Dkt. 123 at 12–13. These severe violations call for vacatur. *See Defs. of Wildlife v. EPA*, 420 F.3d at 978–79 (vacating EPA approval of state Clean Water Act program because of ESA violations); *Sierra Club v. Interior*, 899 F.3d at 295 (vacating agency action that relied on unlawful ESA consultation); *CBD v. Bernhardt*, 982 F.3d 723, 751 (9th Cir. 2020) (same); *CBD v. BLM*, 698 F.3d 1101, 1128 (9th Cir. 2012) (same); *Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 22 (D.D.C. 2014) (same).

---

[13] Florida's vague, unsupported references to past expenditures and staff training, Dkt. 160-1 at 6–10 (Wolfe Dec. ¶¶ 15, 20, 24), do not add much, especially given that agency resources are regularly re-allocated depending on need and there are many other areas where FDEP could expend resources for environmental protection. That staff in a high-turnover program have been trained on an unlawful species review process is no reason to allow that process to continue.

[14] *See* Dkt. 153 at 54–55; *Standing Rock Sioux Tribe v. Corps*, 985 F.3d 1032, 1054 (D.C. Cir. 2021) (courts must consider effect of vacatur and whether injunction is required); *Humane Soc'y v. Kempthorne*, 579 F. Supp. 2d 7, 21 (D.D.C. 2008) (little disruption from reinstating prior regime); *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 532 (9th Cir. 2010) (instructing district court to enjoin agency action until USFWS complies with the ESA); *Friends of Crystal River v. EPA*, 794 F. Supp. 674, 685, 694 (W.D. Mich. 1992), *aff'd*, 35 F.3d 1073 (6th Cir. 1994) (permanently enjoining state from issuing 404 permit after finding Corps had authority once EPA federalized permit).

7

The Defendants continue to argue that EPA did not rely solely on the BiOp and technical assistance process to find that the State 404 program complied with the 404(b)(1) no-jeopardy requirement, which was required for program approval. Dkt. 158 at 6. But the record shows that EPA relied on the BiOp to justify its approval. Dkt. 98 at 74 n.37. Indeed, the technical assistance process in the BiOp underpinned all the other authority EPA cited to find that Florida satisfied the no jeopardy 404(b)(1) Guideline. *Id.* at 73–74; Dkt. 104 at 87.[15]

Contrary to the Defendants' argument, Dkt. 158 at 7, these violations cannot be cured on remand. If the Court rules for Plaintiffs on the BiOp and technical assistance process, there is no way that EPA can justify its decision. Indeed, the Defendants all but concede that if the Court rules for Plaintiffs, the State program would need to *change. See id.* The Defendants point to no authority that would justify remand without vacatur in such a situation.

The Defendants' claim of disruption, should the Court vacate EPA's approval of Florida's program, similarly fails because it focuses on the purported disruption that would be required for permittees to obtain incidental take coverage through lawful means. *Id.* at 7–8. This argument, however, overlooks two key points: first, that seeking incidental take coverage through Section 10 is entirely voluntary, *see id.* at 6 n.3; and second, that compliance with the ESA, and with the Clean Water Act's 404(b)(1) Guidelines, is not.

The Defendants' description of the Corps' process following a transfer of authority, Dkt. 158 at 8, does not identify any disruption other than potential delay to pending applications. Moreover, that delay should be reduced given that unlike Florida, which had no experience with 404 permitting when its program was approved, the Corps already has trained staff with

---

[15] For these reasons, the Defendants' claim that vacatur of the BiOp (and thus the technical assistance process) would not affect Florida's program, Dkt. 158 at 6, is simply untrue.

8

expertise in 404 permitting that are, have been, and will continue administering 404 permits in Florida, given the Corps' obligation regarding retained waters. And having permittees obtain their permits from the Corps, which follows the ESA process, promotes certainty.[16]

None of the cases Florida cites support allowing FDEP to continue issuing state 404 permits, particularly those that may affect ESA-listed species, pursuant to a BiOp that violates the ESA and a program that violates the Clean Water Act.[17] The Developers urge that disruption to their individual permit interests (additional expense and time) warrant denying Plaintiffs relief or carving out an exception to allow state permits for Bellmar and Kingston notwithstanding the unlawfulness of USFWS' actions and EPA's approval. Dkts. 157, 159. But the Developers present no legal basis for such exemption from the law and there will be irreparable harm if the State issues those permits. Dkts. 135, 153; *CBD v. EPA*, 861 F.3d at 188–89 (remanding unlawful pesticide registration without vacatur where vacatur would have removed an environmental benefit by leaving only more toxic pesticides available).

### III. Vacatur Should Not Be Delayed or Limited.

The Court should not stay or "postpone the effective date" of its ruling on remedy as the Defendants and Florida request. *See* Dkt. 158 at 7; Dkt. 160 at 7. The opposing parties have

---

[16] Requiring compliance with federal law does not infringe on Florida's authority or cooperative federalism, *contra* Dkt. 160-1 at 9 (Wolfe Dec. ¶ 23), since a state's ability to administer federal programs presumes compliance with federal law. That Florida may find the technical assistance process more "efficient," *id.* at 10 (Wolfe Dec. ¶¶ 25, 27), does not provide a basis to allow unlawful agency action to continue.

[17] *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (remedies other than injunctions available to ensure compliance with law); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (vacatur would undo completed financial transactions); *Oglala Sioux Tribe v. USNRC*, 896 F.3d 520, 538 (D.C. Cir. 2018) (agency could satisfy NEPA on remand; no construction until NEPA compliance); *Me. Lobstermen's Ass'n*, 70 F.4th at 601 (court "not convinced" BiOp's legal error was fatal to rule; vacatur could lead to fishery closure); *Defs. of Wildlife v. Jackson*, 791 F. Supp. 2d 96, 118–19 (D.D.C. 2011) (pesticide was already in use and vacatur would cause "scattered resurrection" of local registrations, not restore status quo).

9

made no showing to justify allowing the State to issue permits that may affect ESA-listed species pursuant to the Defendants' unlawful actions and Florida's unlawful program.[18] Delay would allow significant state permits to issue that would harm ESA-listed species. *See* Dkts. 135, 153.[19] Although the Corps would experience an increase in workload, the Corps has continued to administer 404 permitting Florida (in retained waters), has the requisite expertise, and would not be starting from scratch.[20]

The Court should also reject Florida's request to limit vacatur of the state permitting program only as to projects that "may affect, [are] likely to adversely affect" species, Dkt. 160 at 7, because to comply with the ESA, any project that "may affect" ESA-listed species must be reviewed pursuant to Section 7 of the ESA, and not the unlawful technical assistance process. *See, e.g.*, FWS-006144, at FWS-006148 (NJ MOU).[21]

## CONCLUSION

As Plaintiffs have shown, vacatur is the appropriate remedy. The Defendants and Florida may explore other options for any future program the State may propose. But where, as here, the Defendants have committed serious substantive violations of the ESA and Clean Water Act, leaving FDEP's program intact—particularly as to permits that may affect ESA-listed species— is no remedy at all.

---

[18] *Contra CBD v. Ross*, 480 F. Supp. 3d at 246, 249 (fishers could go out of business; no likely harm to protected species); *CBD v. Raimondo*, No. 18-112, 2022 WL 17039193, at *2 (D.D.C. Nov. 17, 2022), *vacated on other grounds*, 2024 WL 324103 (D.D.C. Jan. 29, 2024) (same).
[19] The Developers' investments in their projects would not go to waste. They have claimed that they would present the same information for a 404 permit issued by the Corps.
[20] Collier's concerns about EPA's process for federalizing state 404 permits, Dkt. 159 at 7–8, are misplaced since vacatur of the program approval would result in transfer of permits to the Corps and would not depend on EPA federalizing permits. Collier's concern that USFWS would receive "hundreds or thousands of ITP" applications, *id.* at 6, is not supported by any evidence and was not raised by the Defendants.
[21] Florida's cited case, Dkt. 160 at 8, supports Plaintiffs' request. *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 82 (D.C. Cir. 2020) (court should vacate parts of a rule it finds invalid).

10

Dated: February 9, 2024

    Respectfully submitted,

    /s/ Tania Galloni
    TANIA GALLONI*
    Fla. Bar No. 619221
    CHRISTINA I. REICHERT*
    Fla. Bar No. 0114257
    Earthjustice
    4500 Biscayne Blvd., Ste 201
    Miami, FL 33137
    T: 305-440-5432
    F: 850-681-0020
    tgalloni@earthjustice.org
    creichert@earthjustice.org

    /s/ Bonnie Malloy
    BONNIE MALLOY*
    Fla. Bar No. 86109
    Earthjustice
    111 S. Martin Luther King Jr. Blvd
    Tallahassee, FL 32301
    T: 850-681-0031
    F: 850-681-0020
    bmalloy@earthjustice.org

    /s/ Anna Sewell
    ANNA SEWELL
    D.C. Bar No. 241861
    Earthjustice
    1001 G St., Ste 1000
    Washington, DC 20001
    T: 202-667-4500
    asewell@earthjustice.org

    Counsel for Plaintiffs

    * Appearing pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of February 2024, I electronically filed the foregoing document using the CM/ECF system. Service was accomplished by the CM/ECF system.

    Respectfully submitted,

    /s/ Tania Galloni
    TANIA GALLONI
    Fla. Bar No. 619221
    Earthjustice
    4500 Biscayne Blvd., Ste 201
    Miami, FL 33137
    T: 305-440-5432
    F: 850-681-0020
    tgalloni@earthjustice.org