**EXHIBIT 10**



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 4
SAM NUNN ATLANTA FEDERAL CENTER
61 FORSYTH STREET, SW
ATLANTA, GEORGIA 30303-8960

April 6, 2023

Secretary Emile D. Hamilton
Florida Department of Environmental Protection
Marjory Stoneman Douglas Building
3900 Commonwealth Boulevard
Tallahassee, Florida 32399

Dear Secretary Hamilton:

Thank you for the draft annual report and supplemental information your office provided regarding the Florida Department of Environmental Protection's (FDEP) administration of its Clean Water Act (CWA) Section 404 program for the reporting period, July 1, 2021, through June 30, 2022. The Environmental Protection Agency (EPA) received the draft report on September 30, 2022 and supplemental information on January 6, 2023, in response to the EPA's request for additional information on October 27, 2022. The FDEP's submission of the draft annual report and the EPA's comments, questions, and requests for additional information are pursuant to the program reporting requirements set forth at 40 CFR 233.52, as well as described in the Memorandum of Agreement between our two agencies regarding FDEP's CWA Section 404 program.

The EPA's comments regarding the draft annual report are enclosed. In accordance with the requirements set forth in 40 CFR 233.52(e), FDEP must finalize the annual report, incorporating and/or responding to the EPA's comments, and transmit the final report to the EPA within 30 days of receipt of this letter.

In addition to identifying issues and additional information needs related to the draft annual report, the EPA is taking this opportunity to express our continued concerns with FDEP's implementation of its CWA Section 404 program. The concerns identified in this letter reflect the EPA's review of FDEP's program as of the date of this letter, and any additional concerns that may arise from the EPA's continued oversight of FDEP's implementation and enforcement of the program will be communicated to FDEP under separate cover. The EPA requests a meeting with FDEP to discuss the following issues at its earliest convenience.

- **FDEP's Continued Use of the Vacated Navigable Waters Protection Rule.**
  FDEP continues to use the vacated Navigable Waters Protection Rule (NWPR) for interpreting "waters of the United States" (WOTUS) in the implementation of its CWA Section 404 program. As outlined in numerous EPA letters provided to FDEP since December 9, 2021, the CWA and its implementing regulations require FDEP to implement its program consistent with the current definition of WOTUS, which the EPA and the U.S. Army Corps of Engineers (Corps) interpreted to be the pre-2015 regulatory regime following vacatur of the NWPR and up until the effective date of the recently published final "Revised Definition of 'Waters of the United States.'" The rule went into

effect in Florida on March 20, 2023 (see https://www.federalregister.gov/documents/2023/01/18/2022-28595/revised-definition-of-waters-of-the-united-states). To date, the EPA has objected to 33 permits proposed by FDEP on the basis that the information provided was insufficient to determine the extent to which the FDEP considered discharges into all WOTUS and therefore did not demonstrate consistency with the CWA or the regulations at 40 CFR Part 233. As described in the enclosure to this letter, we have concerns that FDEP issued 183 No Permit Required (NPR) determinations that used the vacated NWPR for jurisdictional assessments which may result in unauthorized discharges to WOTUS.

- **FDEP's Delineations and Determination of Waters.**
  The EPA has identified that many of FDEP's jurisdictional determinations are not in compliance with the required 62-340 F.A.C. delineation method. The EPA has concerns with the lack of consistent field verifications, and the lack of mandatory 62-340 F.A.C. Data Forms and incomplete or missing WOTUS Determination Forms. Accordingly, the EPA will conduct a detailed review of the FDEP's 404 Delineation Guidance and will offer comments and recommendations outside of the annual reporting process.

- **Majority of FDEP's NPR Determinations Lack Required Supporting Documentation.**
  According to FDEP's own Oculus database, a majority of the NPR determinations made during the reporting period do not include required supporting documentation. Specifically, the EPA's review of the 258 NPR determinations issued by FDEP revealed at least 170 of the assessments were incomplete and/or missing at least one necessary dataset. Please see the enclosure for additional details.

- **FDEP's Joint Coordination with the Corps.**
  FDEP's coordination with the Corps, pursuant to the joint coordination procedures set forth in Section III of the Memorandum of Agreement between FDEP and the Corps, has in some instances, led to errors regarding decisions about the appropriate permitting authority. The EPA has issued objections to two proposed permits based on such errors to date. We encourage FDEP to work with the Corps to improve how such joint coordination is conducted and are pleased to offer our participation and assistance in this process.

- **Support on the EPA's preparation of a Biological Evaluation.**
  Pursuant to the Endangered Species Act (ESA), the EPA continues to prepare a Biological Evaluation (BE) regarding FDEP's CWA 404 program in coordination with the National Marine Fisheries Service. The EPA has communicated with FDEP throughout this process, and we anticipate completing and issuing the BE in the near future.

- **Retention of Staff.**
  FDEP officials have made public statements during the past year about the challenge of retaining staff in the Department's CWA Section 404 program. Maintaining significant staff knowledge and expertise is required to effectively implement the program; developing staff expertise may warrant a year or more of training and experience, which would be undermined by a significant level of staff turnover. We are concerned that staff retention may be contributing to some of the issues identified in this letter. As stated in the enclosure, we request the final annual report describe what steps, if any, FDEP has taken to identify the primary causes of the challenges with staff retention in its CWA Section 404 program and any steps that FDEP is taking to improve staff retention.

If you have any questions or wish to discuss these matters, please contact me, or have a member of your staff contact Ms. Denisse Diaz, Acting Director of the Water Division, at Diaz.Denisse@epa.gov or 404-562-9248.

Sincerely,

JEANEANNE GETTLE
Digitally signed by JEANEANNE GETTLE
Date: 2023.04.06 13:09:06 -04'00'

Jeaneanne M. Gettle
Deputy Regional Administrator
*Performing the functions and duties of the Regional Administrator for this matter*

Enclosure

ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

The comments that follow are organized under the same headings included in the Florida Department of Environmental Protection's (FDEP) draft annual report.

## *Program Administration*

### Appeals of permitting decisions

In FDEP's reply dated January 6, 2023, to the EPA's request for additional information issued on October 27, 2022, FDEP indicated that no Clean Water Act (CWA) Section 404 program permitting decisions were appealed. Please include this information in the final annual report. In future annual reports, please provide information including the project name, number, short description of the appeal, and rationale behind the final decision.

### Restricted files

For future annual reports, the EPA requests that FDEP include the number and type of permits with restricted files. We recommend including a table with this information, indicating the project name and number.

## *An Assessment of the Cumulative Impacts of the State's Permit Program on the Integrity of the State Regulated Waters*

### Evaluation of compensatory mitigation and cumulative loss

The documentation provided in this section of the annual report and in Appendix 2 does not provide readily verifiable information needed for the EPA to evaluate questions about compensatory mitigation and cumulative loss. The EPA appreciates that FDEP has begun tracking requests for out-of-service-area mitigation for the next reporting period. In future annual reports, the EPA expects FDEP to include the following additional information: 1) the location of the impact site *(e.g.*, coordinates or the 8-digit HUC); 2) the name of the mitigation site used and its location, especially if it is outside of the service area; 3) whether credits applied as mitigation were in-kind or out-of-kind, with a brief rationale for out-of-kind; 4) if applicable, the proximity ratio that was applied; 5) the total functional loss; 6) any functional gains, especially those that do not propose mitigation or that proposes a combination of mitigation types (*e.g.*, PRM vs. TPM credit purchases, etc.); 7) if applicable, a short, one-sentence explanation as rationale for why mitigation was not required for a project with demonstrated functional losses; and 8) totals for all columns involving a numeric statistic.

### Continued use of the vacated Navigable Waters Protection Rule

The annual report states that "Florida is working cooperatively with EPA to navigate the changing definitional regimes of [waters of the United States (WOTUS)] and is committed to administering its assumed CWA Section 404 program in accordance with the requirements of the CWA and regulations promulgated thereunder." FDEP continues to use the vacated Navigable Waters Protection Rule (NWPR) for interpreting WOTUS in the implementation of its CWA Section 404 program, which is inconsistent with the requirements of the CWA. The CWA and its implementing regulations require FDEP to implement its program consistent with the current

1

Case 1:21-cv-00119-RDM   Document 104-1   Filed 06/09/23   Page 34 of 38
USCA Case #24-5101   Document #2053051   Filed: 05/06/2024   Page 6 of 10
ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

definition of WOTUS which the EPA and the U.S. Army Corps of Engineers (Corps) interpreted to be the pre-2015 regulatory regime following vacatur of the NWPR and up until the effective date (i.e., March 20, 2023) of the recently published final "Revised Definition of 'Waters of the United States'." FDEP's current interpretation of WOTUS creates a situation whereby FDEP's CWA Section 404 program is narrower in scope than contemplated under the CWA. To address this inconsistency with the CWA, the EPA is objecting to projects proposed by FDEP, requiring permit conditions to ensure consistency with the CWA, and requiring FDEP and the permit applicants to spend additional time and resources to address the objections. This leads to inefficiency and confusion, specifically, potential inconsistencies between federal and state actions, inefficiencies in FDEP's program implementation, confusion on the part of the regulated community and the public, and most importantly, insufficient protections for the quality of the nation's waters. If the FDEP does not enforce CWA Section 404 program requirements in waters not covered by the NWPR, the lack of enforcement could lead to suits brought by citizens or potential enforcement by the EPA.

FDEP's Delineations and Determination of Waters

Based on information FDEP provided, discussions between the EPA and FDEP staff, and the EPA's review of information in its Oculus database, the EPA has identified numerous concerns. The EPA is concerned, for example, that many of the jurisdictional determinations are not in compliance with the required 62-340 F.A.C delineation method. The EPA is concerned that field verifications are conducted inconsistently. The EPA is concerned about the lack of mandatory 62-340 F.A.C. Data Forms and incomplete or missing WOTUS Determination Forms.

In addition, based on the EPA's concerns about how FDEP performs delineations of waters, FDEP previously drafted "Delineations for Projects that May Require a State 404 Program Permit," (Delineation Guidance), dated October 27, 2021. In response to the EPA's request for additional information for this draft annual report (dated October 27, 2022), FDEP referenced the Delineation Guidance and stated that the document memorializes the requirement to always use the 62-340 F.A.C. delineation method. If FDEP is using the Delineation Guidance to direct staff to always require the use of the 62-340 F.A.C. delineation method, that should be clearly described in the final annual report and any relevant program documentation. The EPA plans to perform a detailed review of the Delineation Guidance under separate cover.

### The Number and Nature of Individual and General Permits Issued, Modified, and Denied

No Permit Required (NPR) Letters

The EPA is providing comments regarding NPR determinations issued by FDEP. These comments are based on review of the draft annual report, including Appendix 4, FDEP's reply dated January 6, 2023, to the EPA's request for additional information issued on October 27, 2022, and FDEP's Oculus database.

- FDEP utilized the vacated NWPR, and therefore the incorrect definition of WOTUS, as the basis for issuing 183 of 258 NPR determinations. The available information does not include sufficient documentation to quantify the amount (*e.g.*, acreage, linear feet) of waters that met the current definition of WOTUS (*i.e.*, the pre-2015 regulatory regime for

Case 1:21-cv-00119-RDM   Document 104-1   Filed 06/09/23   Page 35 of 38
USCA Case #24-5101    Document #2053051    Filed: 05/06/2024    Page 7 of 10
ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

the portion of the reporting period between August 30, 2021, and June 30, 2022) but were not considered in FDEP's NPR determinations. Accordingly, the EPA believes that the NPR determinations issued by FDEP may lead to unauthorized discharges to WOTUS. Based on the information reviewed, which for many projects does not include sufficient documentation as described below, the EPA cannot confirm the extent of WOTUS and potential scope of unauthorized discharges.

- The available information, including FDEP's Oculus database, appears to indicate that a majority of the NPR determinations made during the reporting period do not include required supporting documentation. Specifically, the EPA's review of the 258 NPR determinations issued by FDEP, revealed at least 170 of the assessments were incomplete and/or missing at least one necessary dataset. For example,
    o 119 of 258 NPR determinations did not include complete documentation that field verifications were conducted. Specifically, 105 determinations were based on desktop only assessments, and of those that included onsite verification, 14 were missing 62-340 F.A.C. Data Forms.
    o 124 of 258 NPR determinations did not have complete WOTUS Determination Forms. In particular, 48 determinations did not include a WOTUS Determination Form, and the 76 determinations that included a WOTUS Determination Form did not include a signature from the Certified Wetland Evaluator (CWE).
  FDEP should ensure that all previously issued and future NPR determinations are fully supported and documented in the Oculus database, and in accordance with relevant program requirements.

- The reply issued by FDEP on January 6, 2023, in response to the EPA's request for additional information dated October 27, 2022, suggests that NPR determinations are similar to Preliminary Jurisdictional Determinations (PJDs) issued by the Corps, because they are both preliminary in nature. However, the language included in the FDEP's NPR letters states that FDEP has verified that the activity as proposed does not require a permit or other form of authorization and that the verification is valid for a period of five years unless new information warrants a revision to the verification. The EPA believes the characterization of NPR determinations as preliminary is not accurate and that comparisons to PJDs may lead to misunderstandings about the NPR process being similar to the process used by the Corps. Accordingly, we recommend the language describing NPR determinations/letters in the final annual report should not include comparisons to PJDs, nor should these claims be articulated in other correspondences with the EPA.

- The EPA appreciates the detailed tabular information regarding NPR determinations provided by FDEP on January 6, 2023. Please include this detailed information in the final annual report (*i.e.*, the application number and the name of the office that processed the action, relevant county, project name, agency action date, documentation of whether a WOTUS Determination Form was used and/or whether the CWE signature page was signed, documentation of whether a relevant 62-340 F.A.C. Data Form was completed, documentation of whether there was coordination with the Corps, the jurisdictional assessment method used, documentation of whether a site inspection or desktop assessment was performed, and the relevant link to the Oculus database). For future

3

Case 1:21-cv-00119-RDM   Document 104-1   Filed 06/09/23   Page 36 of 38
USCA Case #24-5101    Document #2053051    Filed: 05/06/2024   Page 8 of 10
ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

annual reports, please provide a similar table that includes the same type of information along with additional information for each project that describes whether the disclaimer language was included on the CWE signature page of the WOTUS Determination Form, the types and amounts (*e.g.*, acreage, linear feet) of any waters that were excluded on the WOTUS Determination Form, and where applicable, any prior permit applications submitted and related withdrawal dates.

- In the final annual report, FDEP should correct the number of NPR letters issued during the reporting period. The language on page 14 of the draft report indicates 353 NPR letters were issued during the reporting period; however, the EPA's review of the information provided by FDEP on January 6, 2023, indicates that 258 NPR letters were issued.

- The EPA appreciates that FDEP shared NPR Guidance as an enclosure to the letter issued to the EPA on July 28, 2022. We wish to discuss the procedures used by FDEP to evaluate and document its NPR determinations, particularly in the context of the above comments and recommendations and will follow-up with your office under separate cover.

Long-Term Projects

FDEP's final annual report should address and resolve the following discrepancies between the draft annual report and the additional information shared by FDEP on January 6, 2023, regarding permits with long-term planning.

- Page 14 of FDEP's draft annual report states that "[t]he Department issued one individual permit with a long-term plan during this reporting period [The Chemours Company, TT, LLC, for the Florida Mine Trail Ridge West Levee, file number 137482-022-SFI]. However, FDEP's response to the EPA's request for additional information dated October 27, 2022, indicates that two permits were issued with long-term planning during the second reporting period (396565-001; issued July 9, 2021, and 396574-001; issued November 19, 2021), neither of which match the Chemours/Trail Ridge West Levee permit which has a file number of 137482-002-SFI.

- FDEP's response to the EPA's request for additional information dated October 27, 2022, says that three of the twelve permits for long-term projects that were under review during the previous annual reporting period are still actively being processed during the current reporting period (file numbers 400133-001, and 396364-001, 396966-001). However, these three file numbers do not match the file numbers in Table 2 (Long-Term Planning Projects Under Review as of June 30, 2022) on page 14 of the draft annual report.

We request that FDEP's final annual report also reconcile the discrepancy in the draft annual report regarding the status of the permitting action for the Chemours/Trail Ridge West Levee. The first full paragraph on page 14 indicates a permit was issued, whereas Table 2 suggests the project was still under review during the reporting period.

4

Case 1:21-cv-00119-RDM   Document 104-1   Filed 06/09/23   Page 37 of 38
USCA Case #24-5101    Document #2053051    Filed: 05/06/2024   Page 9 of 10
ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

*An Estimate of Extent of Activities Regulated by General Permits*

Based on the information included in the draft annual report and the FDEP's reply dated January 6, 2023, to the EPA's request for additional information on October 27, 2022, the EPA understands that authorizations issued under the 62-331.215 General Permit for Utility Line Activities (GP) during the reporting period exceed the allowable impact threshold specified by GP. Specifically, FDEP's draft annual report states that 64 activities were authorized by the GP that impacted a total of 56.1 acres, which indicates that the average impact of the authorized activities (*i.e.*, approximately 0.88 acres) exceeds the threshold of 0.5 acres for each activity set forth by the GP. Authorizing activities that exceed the GP's threshold is inconsistent with the approach articulated in the Program Description of Florida's Section 404 program, which indicates general permits are modeled after Nationwide Permits issued by the Corps. Regarding future permitting decisions, FDEP should ensure that each authorization under the GP does not exceed the 0.5-acre threshold for each activity.

*Historical, Cultural, and Tribal Resources*

FDEP indicated in response to the EPA's request for additional information dated October 27, 2022, that it does not track at what point in the process (advance notice or public notice) a response from a State Historic Preservation Office (SHPO) or a Tribe is received. This information is useful to the EPA, and we believe the public would also find this information helpful. We also note that FDEP was able to track this information in the previous annual report (see pg. 28 "DEP received the following in response to advanced notices:…," and pg. 30 "There were 12 instances where DEP received specific comments during the public comment period on potential effects to historic/cultural resources, broken down as follows: Table 15 - Comments received during the notice and comment period."). Please include this information in the final annual report and in all future annual reports.

*Program Auditing*

For future annual reports, the audit findings of FDEP's formal determinations (FDs) of the landward extent of wetlands and other surface waters should include: a quantification of the specific issues identified (*i.e.*, the number of FDs without the necessary 62-340 F.A.C. Data Forms, including those for renewal/reissuance purposes; the number of FDs that did not accurately apply the 62-340 F.A.C. delineation method, including those that lacked necessary photographs of indicator factors or narrative descriptions; the number of FDs with clerical errors, such as files referencing specific information that was not uploaded to the Oculus database; the number of FDs with issues regarding the site visit; the number of FDs that did not meet the requirements for the renewal/reissuance of an authorized FD; and the number of FDs with any other errors or issues regarding compliance with FDEP's CWA Section 404 Program).

FDEP's reply dated January 6, 2023, to the EPA's request for additional information issued on October 27, 2022, included a copy of FDEP's 404 Delineation Guidance (Guidance), which had previously been shared with the EPA, along with a statement that the Guidance memorializes the requirement for FDEP to use the 62-340 F.A.C. delineation method for CWA Section 404 permitting purposes, among other requirements. We request that FDEP include this requirement

5

Case 1:21-cv-00119-RDM   Document 104-1   Filed 06/09/23   Page 38 of 38
USCA Case #24-5101   Document #2053051   Filed: 05/06/2024   Page 10 of 10
ENCLOSURE: Assessment of FDEP's 9/30/2022 Draft Annual Report

in the final annual report. In consideration of the audit findings (described immediately above) and the records in FDEP's Oculus database regarding NPR determinations that did not include all of the required documentation (described on pp. 2-3 of this enclosure), the EPA will conduct a detailed review of the Guidance and will follow-up with FDEP outside of the annual reporting process to discuss and/or offer comments and any recommendations.

### *Other Information*

The EPA's request for additional information on October 27, 2022, asked about steps FDEP has taken to improve retention of its employees, aside from hiring. FDEP's response dated January 6, 2023, provided general information about hiring benefits that appear to be applicable to any state government employee and did not include any information specific to the CWA Section 404 program. Please include information in the final annual report that clarifies what steps, if any, have been taken to identify the primary cause(s) of the challenges with staff retention in its CWA Section 404 program (*e.g.*, conducting exit interviews) and any steps that FDEP is taking to improve staff retention. For future annual reports, the EPA requests that FDEP describe whether staff retention has improved, and any steps that have been taken or will be taken to identify the causes of turnover and improve staff retention.