ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY, et al.** | )<br>)<br>) |
| **Appellees,** | )<br>) |
| v. | )   Case No.  24-5101<br>) |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.** | )<br>)<br>) |
| **Defendants,** | )<br>) |
| **STATE OF FLORIDA AND FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION** | )<br>)<br>)<br>) |
| **Appellants** | )<br>) |

**APPELLANTS' OPPOSED MOTION TO EXPEDITE CONSIDERATION OF THE APPEAL**

Intervenor-Appellants the State of Florida and the Florida Department of Environmental Protection (collectively, "Florida") request expedited consideration of their appeal of the district court's vacatur of Florida's permitting program under Section 404 of the Clean Water Act ("CWA").  Specifically, Florida requests the following briefing schedule: July 2, 2024 (Florida's opening brief is due, and the

1

Federal Defendants[1] opening brief is due, in the event they appeal[2]); August 1, 2024 (Plaintiff-Appellees'[3] response brief is due); and August 22, 2024 (reply briefs are due). Florida further requests that the case be set for the earliest available oral argument date following completion of the briefing.

The Federal Defendants and Plaintiff-Appellees oppose this motion.

## BACKGROUND

Section 404 of the CWA allows States to seek approval from EPA to run their own Section 404 permitting programs. Florida sought and received that approval from EPA in 2020 following EPA's consultation with Fish and Wildlife under Section 7 of the Endangered Species Act ("ESA").

That Section 7 consultation followed a model for ESA compliance that the federal government has used and defended throughout the last three administrations. Specifically, Fish and Wildlife issued a "programmatic" biological opinion ("BiOp") and incidental-take statement that assessed jeopardy to listed species and critical habitats associated with Florida's Section 404 program and relied on a mandatory "technical-assistance process" that would ensure site-

---

[1] The Federal Defendants are the Environmental Protection Agency ("EPA"), United States Fish and Wildlife ("Fish and Wildlife"), the U.S. Army Corps of Engineers ("Corps"), and other named federal officials.

[2] If the Federal Defendants appeal, the Court should consolidate the appeals and align the governing briefing schedules with the expedited schedule set forth here.

[3] Plaintiffs are the Center for Biological Diversity, Defenders of Wildlife, the Sierra Club, the Conservancy of Southwest Florida, Florida Wildlife Federation, Miami Waterkeeper, and St. Johns Riverkeeper.

specific assessments and protections during the state-run permitting process. The Second Circuit approved an identical programmatic model in *Cooling Water Intake Structure Coalition v. EPA*, 905 F.3d 49 (2d Cir. 2018).

Plaintiffs sued the Federal Defendants in 2021, challenging EPA's approval of Florida's Section 404 assumption. After Florida intervened to defend the program, the parties cross-moved for summary judgment on, *inter alia*, Plaintiffs' Administrative Procedure Act claims that the Section 404 program—and its programmatic BiOp and incidental-take statement—violated the ESA.

On February 15, 2024, the district court granted summary judgment for Plaintiffs on the ESA-related claims. It first rejected Florida's challenge to Plaintiffs' standing. Ex. J at 40.[4] On the merits, the court rejected *Cooling Water*, concluded that Fish and Wildlife's programmatic BiOp failed to "engage in the detailed, species-specific analysis necessary" to constitute a valid Section 7 consultation, and declared that the "non-statutory technical assistance process cannot substitute for what the statute requires." *Id.* at 61, 70. Even though it found that only Fish and Wildlife's BiOp and incidental-take statement were invalid, the district court vacated EPA's approval as to the *entire* Florida Section 404 assumption. *Id.* at 88-96.

---

[4] Citations to exhibits reference those attached to Florida's Motion to Stay Pending Appeal, filed in this Court on April 25, 2024.

Two months later, the district court denied a partial stay, issued an amended summary judgment opinion, and granted Florida's request for a Rule 54(b) final judgment on Plaintiffs' ESA-based claims. Florida promptly appealed and moved for a full stay pending appeal, which the district court denied on April 23, 2024. Florida then moved in this Court for a stay pending appeal, which a panel of this Court denied in a per curiam order on May 20, 2024.

## ARGUMENT

This Court grants expedited review when the movant establishes that (i) "the decision under review is subject to substantial challenge," and (ii) "delay will cause irreparable injury." D.C. Cir. IOP § VII.B. "The Court also may expedite cases in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition." *Id.* Both of those avenues for expedition are satisfied here, and the Court should therefore grant Florida's motion.

**I.    The district court's decision to upend Florida's Section 404 program is subject to a substantial challenge.**

The district court's vacatur of Florida's Section 404 program is subject to multiple substantial challenges, which Florida will fully develop in its merits briefing. Here, Florida will highlight three such challenges that amply justify expedition.

4

A. First, the district court's disagreement with Fish and Wildlife's ESA consultation and programmatic BiOp and incidental-take statement conflicts with the text and structure of the ESA. The district court's critiques of that consultation process relate to its supposed failure to consider *site-specific* species effects and take limits, despite Fish and Wildlife's reliance on a mandatory technical-assistance process that takes full account of those analyses on a *permit-by-permit* basis, when such site- and permit-specific information would be available.

Nothing in the ESA supports the district court's micromanaging of the process by which Fish and Wildlife complies with Section 7(a)(2)'s core mandate to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize" certain species or damage critical habitat. 16 U.S.C. § 1536(a)(2). Instead, "[i]t is *for the agencies* to determine how best to structure consultation to fulfill Section 7(a)(2)'s mandate." *Defs. of Wildlife v. U.S. Dep't of the Navy*, 733 F.3d 1106, 1121 (11th Cir. 2013) (emphasis added).

In *Cooling Water*, the Second Circuit considered and rejected the same challenges to a programmatic BiOp and incidental-take statement that the district court accepted here. For example, it rejected the argument that it was impermissible for Fish and Wildlife to "provide[] the current status of the species and the environmental baseline but, relying on the protections of the technical-assistance process, defer[] evaluation of the Rule's effects on the species within its

5

jurisdiction." 905 F.3d at 75. And it also rejected an argument that Fish and Wildlife "violate[d] [its] statutory obligations when [it] decided to solicit more data (during the permitting process) in order to assess . . . impacts on a site-specific basis." 906 F.3d at 74 (internal quotation marks omitted).

Faced with this sharp divergence between the Second Circuit's reasoning and Plaintiffs' challenges, the district court could only offer hollow attempts to "distinguish[] [*Cooling Water*] on its facts," before ultimately declaring that *Cooling Water* was wrongly decided. Ex. L at 65-67. In breaking from the Second Circuit's decision, the district court became the first in the country to invalidate a programmatic BiOp/incidental-take statement like the one at issue here. That novel holding—and the circuit split it portends—give rise to a substantial challenge to the district court's vacatur order.

B. Second, the district court's opinion gravely undermines the cooperative federalism principles that pervade the CWA and the ESA. Congress declared in the CWA that "[i]t is the policy of Congress that *the States* . . . implement the[se] permit programs*," 33 U.S.C. § 1251(b) (emphasis added), and it established a policy in the ESA for "federal agencies [to] *cooperate with [s]tate and local agencies* to resolve water resource issues in concert with conservation of endangered species," 16 U.S.C. § 1531(c)(2) (emphasis added). The district court's opinion renders these promises illusory, as it forecloses the

6

ability of Fish and Wildlife to successfully engage in a programmatic Section 7 consultation for a state permitting program like the one at issue here. Expedition would allow the Court to quickly resolve whether Congress intended to render the Section 404 state assumption framework obsolete for states with significant populations of endangered species.

      C.    Third, the district court should never have vacated Florida's program because Plaintiffs lack standing to pursue their challenge. For alleged procedural injuries like those claimed here, "the injury in fact requirement [remains] a hard floor of Article III jurisdiction that cannot be altered by statute," as does the requisite "causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest." *Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 183 (D.C. Cir. 2017) (internal quotation marks omitted). Under that rubric, this Court has held that challenges to delegated state programs that preserve safeguards equivalent to those under federal law create no non-conjectural injury or standing. *E.g.*, *Waterkeeper Alliance, Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022); *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912 (D.C. Cir. 2003).

      This case should meet the same fate, since Plaintiffs' challenges to Florida's Section 404 assumption fail to demonstrate that Florida's program will be any *less protective* of species and habitats than the prior Corps-led program. Because the

7

federal agencies "have an ongoing and undiluted enforcement role" under the Florida Section 404 program to ensure adherence to federal species-protection measures, no non-conjectural injury can be established under this Court's precedent. *Crow Creek*, 331 F.3d at 332. That standing defect is yet another substantial challenge to the district court's order.

**II.    Florida has suffered—and will continue to suffer—an irreparable injury from having its Section 404 program stripped away during lengthy appellate proceedings.**

Before the district court's vacatur, Florida had successfully administered its state Section 404 program for over three years—facilitating *thousands of permitting actions* under that program. Removing that program from Florida's control constitutes a classically irreparable harm by impinging on Florida's sovereign interests in the conservation and management of water resources, land use, and wildlife—areas of traditional state responsibility. *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 161 (2001) (recognizing "States' traditional and primary power over land and water use"); *Kentucky v. Biden*, 23 F.4th 585, 611-12 n.19 (6th Cir. 2022) (discussing "invasions of state sovereignty" as harms that cannot be monetarily addressed); *Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 17 (D.D.C. 2014) (recognizing loss of "state sovereignty and state management of land" as an irreparable harm).

8

Florida's declaration from the General Counsel of the Florida Department of Environmental Protection exhaustively chronicles the harms that have resulted from the district court's vacatur—and that *will* continue to result from that decision during appellate proceedings. Ex. P. For example:

- Florida has dedicated substantial resources and funds to its Section 404 program, including by training hundreds of certified wetlands evaluators and other staff—efforts that are wasted as Florida is now relegated to a role of merely commenting on the issuance of the Corps' 404 permits, rather than administering its own state program. *Id.* ¶¶ 15-16, 30-32.

- The vacatur order calls into question whether Florida has authority to take actions to ensure compliance with its Section 404 permitting actions and redress violations in Florida. *Id.* ¶ 18.

- The district court's order nullifies the permitting efficiencies gained by coordinating Florida's state Section 404 program with its program for State Environmental Resource Permits. *Id.* ¶ 33.

- Many of the over 1,000 permit applications pending at the time of the district court's vacatur were *Florida's own* projects—including critical environmental restoration projects, transportation projects, grid-reliability projects, and more. The district court's order places those projects in regulatory limbo and directly harms Florida's sovereign interest. *Id.* ¶¶ 34-42.

At every stage, Florida has demonstrated its desire to avoid these irreparable harms by rapidly moving for stays in the district court and this Court. A lengthy appellate schedule would compound these harms and delay a much-needed, definitive resolution of who will administer the Section 404 program in Florida.

9

## III. The public has a compelling interest in prompt disposition of this appeal.

Expedition is alternatively warranted if "the public generally, or . . . persons not before the Court, have an unusual interest in prompt disposition." D.C. Cir. IOP § VII.B. In two respects, this case satisfies that independent basis for expedition.

First, the district court's order harms not just Florida itself—it also throws the Florida *regulated community* into a state of disarray. To be sure, the Corps maintains that it is attempting to pick up the pieces of the district court's order and restart the machinery of its Section 404 program. But even the Corps concedes that it has fewer dedicated resources for the program than Florida does, and that it will have to reprocess all permits and independently evaluate them from scratch— no matter how far along those permits were in the Florida program. Doc. No. 2052135, Corps Dec. ¶¶ 8, 11. The consequence is undisputed delay and confusion, as vividly illustrated by the accounts of 13 Florida industry *amici*. Doc. No. 2052661. The regulated community's interest in prompt resolution is pressing, as each passing week strings out the delay and further entrenches the Corps' program that, if Florida prevails, must be ended in favor of the properly approved Florida program.

Second, outside the directly regulated community, Florida's citizens suffer collateral damage from the district court's vacatur. Those citizens would be the

10

beneficiaries of the public projects that now sit in regulatory flux—including residents in senior-living communities or affordable-housing projects, commuters, and communities that would benefit from post-hurricane restoration work. Ex. P ¶¶ 34-42. The public has a compelling interest in prompt resolution, so that such beneficial projects can proceed unencumbered by the regulatory delay that currently persists.

## CONCLUSION

For the above reasons, Florida requests that this Court expedite the consideration of its appeal, adopt the briefing schedule proposed in this Motion, and set the case for the earliest available oral argument following completion of the briefing.

                    Respectfully submitted,

May 23, 2024

                    */s/ Aaron M. Streett*
                    Aaron M. Streett
                    Anthony J. Lucisano
                    BAKER BOTTS L.L.P.
                    910 Louisiana St.
                    Houston, Texas 77002
                    (713) 229-1855 (phone)
                    (713) 229-7855 (fax)
                    aaron.streett@bakerbotts.com
                    anthony.lucisano@bakerbotts.com

                    Jeffrey H. Wood
                    700 K Street NW
                    BAKER BOTTS LLP
                    Washington, D.C. 20001
                    (202) 639-7700
                    jeff.wood@bakerbotts.com

                    *Counsel for the State of Florida and the Florida Department of Environmental Protection*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), this document contains 2,226 words.

2.  This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

*/s/ Aaron M. Streett*
Aaron M. Streett

*Counsel for the State of Florida and the Florida Department of Environmental Protection*

**CERTIFICATE OF SERVICE**

    I certify that on May 23, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

                             */s/ Aaron M. Streett*
                             Aaron M. Streett

                             *Counsel for the State of Florida and the Florida Department of Environmental Protection*