ORAL ARGUMENT NOT YET SCHEDULED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al. | )<br>)<br>) |
| Appellees, | )<br>) |
| v. | ) Case No. 24-5101 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al. | )<br>)<br>) |
| Defendants, | )<br>) |
| STATE OF FLORIDA AND FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION | )<br>)<br>)<br>) |
| Appellants | ) |

**APPELLANTS' REPLY IN SUPPORT OF OPPOSED
MOTION TO EXPEDITE CONSIDERATION OF THE APPEAL**

Intervenor-Appellants the State of Florida and the Florida Department of Environmental Protection (collectively, "Florida") file this reply in support of their Motion to Expedite Consideration of the Appeal ("Motion" or "Mot.") and in response to the opposition briefs filed on June 3, 2024, by Plaintiffs[1] ("Pls. Resp.")

---

[1] Plaintiffs are the Center for Biological Diversity, Defenders of Wildlife, the Sierra Club, the Conservancy of Southwest Florida, Florida Wildlife Federation, Miami Waterkeeper, and St. Johns Riverkeeper.

1

and the Federal Defendants[2] ("Fed. Defs. Resp."). Following the district court's decision to immediately close down Florida's wetlands permit program, which has created massive regulatory upheaval and impacted thousands of economic development and environmental conservation projects across the State, Florida clearly faces an urgent need for prompt resolution of this appeal. Because further delay will cause irreparable harm to Florida and the district court's decision is subject to substantial challenge, this appeal should be expedited. *See* D.C. Cir. IOP § VIII.B. Moreover, even apart from that two-part standard, this Court "also may expedite cases in which the public generally … [has] an unusual interest in prompt disposition." *Id.* Either standard for expedition is easily met here. Accordingly, as set forth in Florida's Motion, the Court should order the following briefing schedule: July 2, 2024 (opening briefs are due); August 1, 2024 (Plaintiffs' response brief is due); and August 22, 2024 (reply briefs are due).

Alternatively, and at a minimum, Florida requests that Florida's and the Federal Defendants' opening briefs be due on July 22, 2024 (40 days after the Federal Defendants' notice of appeal deadline), Plaintiffs' response brief be due on August 21, 2024 (30 days later), and Florida's and the Federal Defendants' reply briefs be due on September 11, 2024 (21 days later) (the "Alternative Schedule").

---

[2] The Federal Defendants are the Environmental Protection Agency ("EPA"), United States Fish and Wildlife ("Fish and Wildlife"), the U.S. Army Corps of Engineers ("Corps"), and other named federal officials.

2

Finally, because neither the Federal Defendants nor Plaintiffs oppose Florida's request that the case be set for the earliest available oral argument date following completion of briefing, the Court should grant that now-unopposed request, irrespective of how it rules on the briefing schedule.

**ARGUMENT**

I. **Florida's appeal presents substantial challenges to the district court's invalidation of Florida's Section 404 program.**

Florida's Motion (and its prior stay briefing) outlined certain of the compelling issues presented in this appeal, which poses fundamental questions concerning the intersection between state assumption of a Clean Water Act ("CWA") Section 404 permitting program and the Endangered Species Act's ("ESA") Section 7 consultation process for a programmatic biological opinion ("BiOp") and incidental-take statement. Having vigorously defended federal approval of Florida's Section 404 assumption below, the Federal Defendants do not—and cannot—now dispute that Florida's appeal raises at least a "substantial challenge." Instead, the Federal Defendants only reinforce the importance of these issues, characterizing the district court's opinion as raising "several nuanced, important issues of federal law regarding how federal agencies comply with the Endangered Species Act when authorizing actions whose impacts are long-running, geographically dispersed, and—in many cases—unknowable at the time of authorization." Fed. Defs. Resp. 4.

3

Plaintiffs, for their part, downplay the novelty of the district court's vacatur and recycle large swaths of the critiques of Fish and Wildlife's Section 7 consultation contained in their stay opposition and addressed in Florida's stay reply. Pls. Resp. 10-18; Doc. 2053051. Of course, a motion panel's denial of a stay under the "stringent requirements for a stay pending appeal," Doc. 2055213, does not answer the distinct question of whether Florida's appeal presents at least a "substantial challenge" worthy of expedition. In any event, Florida will briefly reiterate the flaws in each of Plaintiffs' arguments.

**BiOp.** Plaintiffs declare that the BiOp "failed to undertake *any* species-specific analysis" and ignored available data that could have facilitated a purportedly adequate Section 7 consultation. Pls. Resp. 13-14. But the BiOp undisputedly *did* consider significant data and *did* conduct a species-specific analysis of the "environmental baseline" and "effects of the action." Ex. F at 45-65; Ex E at 36-70 & App'xs B-C. What the BiOp did not do—and what no programmatic BiOp of this nature could have scientifically done—is to assess all future permit- and site-specific impacts on species at the outset, which is why Fish and Wildlife relied on a binding technical-assistance process to perform such analysis during the permitting process. Ex. F at 68. Nothing in the ESA or its regulations forbids Fish and Wildlife from structuring a programmatic BiOp in that manner.

4

***Incidental-Take Statement.*** The district court's invalidation of the programmatic incidental-take statement is no more defensible. Such a statement must "specif[y] the impact of such incidental taking on the species," 16 U.S.C. § 1536(b)(4)(C)(i), which Fish and Wildlife did here in outlining the take-minimizing effects of the technical-assistance process, Ex. F at 70. But the ESA does not impose a numerical-quantification requirement in the scenario where, as here, the Service "explain[s] why it was impracticable to express a numerical measure of take." *Ctr. for Bio. Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1126-27 (9th Cir. 2012). Nor can Plaintiffs seriously dismiss the incidental-take statement's "terms and conditions" as non-binding on state permittees, Pls. Resp. 15, when those terms are made binding on the Florida permitting scheme itself, which in turn binds permittees. Ex. F at 71-72; *see* Ex. I at 13-14.

***Cooperative Federalism.*** Plaintiffs downplay the logical inconsistency of the district court's decision, which (a) recognized the requirement that EPA engage in ESA Section 7 consultation for its approval of Florida's Section 404 *program*, but (b) interpreted Section 7's requirements in a manner that raises insurmountable barriers to Section 404 assumptions in states like Florida with significant wetlands coverage and listed species, despite (c) Congress's expressed desire in the CWA to promote state assumption of Section 404 programs. Plaintiffs gesture vaguely at "other options for Florida's assumption that would have complied with the ESA,"

5

Pls. Resp. 15, but they do not explain how those options (whatever they are) are consistent with Section 7's requirements that an agency *must* issue a BiOp and *must* issue an incidental-take statement when agency action is likely to affect listed species and result in incidental take, respectively. 16 U.S.C. § 1536(a)(3), (b)(4).

***Cooling Water.*** Plaintiffs cannot gainsay that the district court's stark deviation from the Second Circuit's unanimous opinion in *Cooling Water Intake Structure Coalition v. EPA*, 905 F.3d 49 (2d Cir. 2018), gives rise to a substantial challenge. Florida has already explained on multiple occasions why the district court's attempts to distinguish *Cooling Water* ring hollow. Doc. 2051487 at 16-17; Doc. 2054085 at 6. In *Cooling Water*, the Second Circuit rejected similar challenges to the programmatic biological opinion that was the model for the BiOp at issue in this case. And Plaintiffs can point to no court that has invalidated a programmatic BiOp/incidental-take statement like this one—only clearly distinguishable cases. *See Forest Servs. Emps. for Env't Ethics v. USFWS*, 726 F. Supp. 2d 1195, 1203 (D. Mont. 2010) (involving a BiOp that contained only "non-binding 'conservation recommendations'" and was not accompanied by an incidental-take statement); *N. Slope Borough v. Andrus*, 642 F.2d 589, 608 (D.C. Cir. 1980) (BiOp dealt "exclusively with . . . one particular stage of a[] . . . project"); *Nat'l Wildlife Fed. v. Brownlee*, 402 F. Supp. 2d 1, 4, 10 (D.D.C.

6

2005) (agency issued nationwide permits while skipping programmatic consultation altogether).

*Standing.* Plaintiffs do not take issue with the basic holding of this Court's cases that, irrespective of an alleged abstract procedural injury, adopting a state program that preserves safeguards equivalent to those under federal law cannot create a non-conjectural injury. Mot. 7 (citing *Waterkeeper Alliance, Inc. v. Regan*, 41 F.4th 654 (D.C. Cir. 2022); *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912 (D.C. Cir. 2003)). Instead, Plaintiffs simply repeat that Florida's Section 404 program was "inadequate" and "provid[ed] far less robust ESA protections" than the federal program, without explaining *how* or *why* that is so. Pls. Resp. 12-13 (alterations in original). Indeed, Plaintiffs ignore altogether that Florida's Section 404 approval was contingent on comprehensive federal agency oversight of Florida 404 permits and that Fish and Wildlife determinations for such permits would be "determinative." Ex. F at 71-72; Ex. I at 13-14. That uncontested reality defeats standing.

## II. Florida continues to face irreparable harm from an unduly delayed appellate process.

Florida's ongoing inability to operate its "*State* program . . . established under *State* law" that "functions in lieu of the Federal program," H.R. Rep. No. 95-830 at 104 (emphases added), is an unquestionably irreparable harm. Mot. 8. So much so that Plaintiffs' only response to that loss-of-sovereignty harm is to

7

sidestep it entirely by conflating irreparable harm with success on the merits and declaring that Florida's program does not comply with federal law. Pls. Resp. 18. That hardly justifies delaying the *answer* to the question of whether approval of Florida's program does, in fact, violate federal law.

From there, both Plaintiffs and the Federal Defendants invoke the U.S. Army Corps of Engineers' ("Corps") stated willingness to continue processing Section 404 permits in the interim. Pls. Resp. 19; Fed. Defs. Resp. 1-2. But Florida's point was never that the Corps was entirely incapable of processing Section 404 permits; it was that forcing Florida to abruptly relinquish its years-old Section 404 program during a lengthy appellate process would sideline hundreds of Florida wetlands permitting staff, deprive Florida of the benefit of substantial investments in its 404 program, and result in unquestionable delays, inefficiencies, and regulatory confusion. Even the Corps' declaration, despite its promise that transferred permits "will not go to the 'back of the line,'" ends up describing precisely that outcome, in which transferred applications are "screened and assigned *in the same manner as any other application*," meaning information gathered through the Florida permitting process "will have to [be] *independently evaluate[d]*." Doc. 2052135, Corps Dec. ¶ 11 (emphases added). No amount of quibbling by Plaintiffs over the precise makeup of Florida's versus the Corps' permitting staff, baseless denigration of Florida *amici*'s harm as "hyperbolic[]," or

misguided suggestion that Florida's injury is "self-inflicted"[3] can distract from the fallout of the district court's vacatur and imperative for prompt resolution of this important appeal impacting virtually all forms of economic development across the entire State of Florida.  Resp. 18-20.

**III.   The public's interest in prompt disposition is inescapable.**

Neither Plaintiffs nor the Federal Defendants meaningfully confront Florida's basic point about the public's interest in expedition:  A cloud of uncertainty currently hangs over Section 404 permitting, compliance, and enforcement in Florida, and an expedient and definitive answer here will minimize the ongoing harm now experienced by the regulated community and those who stand to benefit from a variety of permitted projects.  Mot. 10-11.  Plaintiffs protest that the public *also* has an interest in the protection of endangered species and enforcement of federal law.  Pls. Resp. 21-22.  That point is obvious, but it in no way counsels against expediting this Court's decision while *the Corps remains in control* of the Section 404 program, which cannot conceivably impinge on that interest, even as Plaintiffs define it.

---

[3] Plaintiffs criticize Florida's concerns with transfer of thousands of state permit files to the Corps through a cumbersome external hard drive transfer process.  Because Florida invested in an online database system that provides immediate, real-time access to all Florida 404 permit records, the Corps *already has access* to those files through public download.  Ex. 4 ¶ 45; Ex. P ¶¶ 26, 29.

9

## IV. The Federal Defendants' notice of appeal deadline does not preclude expedition.

The Federal Defendants' principal objection to Florida's Motion is that the Federal Defendants' deadline to file a notice of appeal is not until June 11, 2024 (*i.e.*, tomorrow), and that Florida's proposed briefing deadline would "truncate" the Federal Defendants' briefing deadline to "less than one month from noticing its appeal to fil[ing] an opening brief." Fed. Defs. Resp. 1-4. Those concerns do not warrant delaying the briefing schedule.

Although Florida recognizes that the Solicitor General must consider and authorize an appeal, that process can and should be accomplished in time for the Federal Defendants to file an opening brief on July 2, 2024. For all practical purposes, the United States "receive[d] [the] adverse decision," Fed. Defs. Resp. 2, on *February 15, 2024*, when the district court first granted summary judgment on Plaintiffs' ESA claims and vacated Florida's Section 404 program. Ex. J. When Florida's requested opening brief deadline arrives on July 2, 2024, nearly five months will have passed since the district court's decision, and although the district court confirmed that the decision was appealable on April 12, nearly three months is still plenty of time for the Solicitor General to authorize an appeal and for the Federal Defendants to prepare an opening brief in this urgent matter. *See New York Times Co. v. Dep't of Health & Human Servs.*, No. 20 CIV. 3063 (GWG), 2021 WL 235138, at *3 (S.D.N.Y. Jan. 25, 2021) (recognizing that "the usual

10

process for obtaining the Solicitor General's authorization may consume many weeks," but concluding that "the Government has the ability to hasten that process for urgent matters" and "the Court has no doubt that a decision from the Solicitor General can be obtained before the Government's [opening appellate] brief would be due under the schedule ordered below, which is nearly a month from now").[4]

Alternatively, if the Court is concerned about ensuring that a standard briefing schedule runs from the Federal Defendants' June 11 notice of appeal deadline, that is no reason to *broaden* the ordinary 40/30/21 days cadence of briefing under the Court's rules.[5] D.C. Cir. R. 31(a). Thus, if the Court is unwilling to impose the briefing schedule requested in Florida's Motion, at a bare minimum it should impose the following Alternative Schedule: Florida's and the Federal Defendants' opening briefs due on July 22, 2024, Plaintiffs' response brief due on August 21, 2024, and Florida's and the Federal Defendants' reply briefs due on September 11, 2024.

---

[4] For similar reasons, Plaintiffs' delay in deciding whether to cross-appeal presents no ground for denying expedition. Pls. Resp. 2. Plaintiffs have had months to contemplate that decision and could quickly file a notice if the Court grants expedition, which would then adjust the expedited briefing schedule. In any case, this is a makeweight argument because Plaintiffs obtained full vacatur of Florida's program below, rendering any cross-appeal meaningless.

[5] Nor can Federal Defendants justify further delay by suggesting that the Solicitor General may not be able to decide whether to appeal within the 60-day period set in Rule 4(a)(1)(B). *See* Fed. Defs. Resp. 3 ("While the United States anticipates filing a notice of appeal on June 11 to protect its right to appeal, the Solicitor General's decision-making process may continue past that date.").

## CONCLUSION

For the above reasons, Florida requests that this Court expedite the consideration of its appeal, adopt the briefing schedule originally proposed in Florida's Motion or, at a minimum, the Alternative Schedule proposed in this reply, and set the case for the earliest available oral argument following completion of the briefing.

          Respectfully submitted,

June 10, 2024

*/s/ Aaron M. Streett*
Aaron M. Streett
Anthony J. Lucisano
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, Texas 77002
(713) 229-1855 (phone)
(713) 229-7855 (fax)
aaron.streett@bakerbotts.com
anthony.lucisano@bakerbotts.com

Jeffrey H. Wood
700 K Street NW
BAKER BOTTS LLP
Washington, D.C. 20001
(202) 639-7700
jeff.wood@bakerbotts.com

*Counsel for the State of Florida and the Florida Department of Environmental Protection*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts of the document exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), this document contains 2,522 words.

2.  This document complies with the typeface requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and the type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

*/s/ Aaron M. Streett*
Aaron M. Streett

*Counsel for the State of Florida and the Florida Department of Environmental Protection*

## CERTIFICATE OF SERVICE

I certify that on June 10, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/ Aaron M. Streett*
Aaron M. Streett

*Counsel for the State of Florida and the Florida Department of Environmental Protection*