NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 24-5101

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

CENTER FOR BIOLOGICAL DIVERSITY, et al.,
*Plaintiffs-Appellees/Plaintiffs-Appellants*,

v.

MICHAEL REGAN, et al.,
*Defendants-Appellants/Defendants-Appellees*,

and

STATE OF FLORIDA, et al.,
*Intervenors-Defendants-Appellants/ Intervenors-Defendants-Appellees.*

—————————————

Appeal from the United States District Court for the District of Columbia
No. 1:21-cv-00119 (Hon. Randolph D. Moss)

—————————————

**ADDENDUM FOR FEDERAL APPELLANTS**

—————————————

TODD KIM
*Assistant Attorney General*

REBECCA JAFFE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 305-0258
rebecca.jaffe@usdoj.gov

# ADDENDUM

16 U.S.C. § 1536 ................................................................................................ 1a

33 U.S.C. § 1251 .............................................................................................. 15a

33 U.S.C. § 1344 .............................................................................................. 18a

40 C.F.R. § 230.10 ........................................................................................... 29a

40 C.F.R. § 233.15 ........................................................................................... 33a

40 C.F.R. § 233.23 ........................................................................................... 36a

40 C.F.R. § 233.50 ........................................................................................... 38a

40 C.F.R. § 233.51 ........................................................................................... 41a

50 C.F.R. § 402.02 ........................................................................................... 43a

50 C.F.R. § 402.14 ........................................................................................... 48a

50 C.F.R. § 402.16 ........................................................................................... 59a

F.A.C. 62-331.053 ............................................................................................ 61a

F.A.C. 62-331.054 ............................................................................................ 63a

United States Code Annotated
   Title 16. Conservation
      Chapter 35. Endangered Species (Refs & Annos)

16 U.S.C.A. § 1536

§ 1536. Interagency cooperation

Currentness

**(a) Federal agency actions and consultations**

**(1)** The Secretary shall review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter. All other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title.

**(2)** Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section. In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.

**(3)** Subject to such guidelines as the Secretary may establish, a Federal agency shall consult with the Secretary on any prospective agency action at the request of, and in cooperation with, the prospective permit or license applicant if the applicant has reason to believe that an endangered species or a threatened species may be present in the area affected by his project and that implementation of such action will likely affect such species.

**(4)** Each Federal agency shall confer with the Secretary on any agency action which is likely to jeopardize the continued existence of any species proposed to be listed under section 1533 of this

USA Addendum 1a

title or result in the destruction or adverse modification of critical habitat proposed to be designated for such species. This paragraph does not require a limitation on the commitment of resources as described in subsection (d).

**(b) Opinion of Secretary**

**(1)(A)** Consultation under subsection (a)(2) with respect to any agency action shall be concluded within the 90-day period beginning on the date on which initiated or, subject to subparagraph (B), within such other period of time as is mutually agreeable to the Secretary and the Federal agency.

**(B)** In the case of an agency action involving a permit or license applicant, the Secretary and the Federal agency may not mutually agree to conclude consultation within a period exceeding 90 days unless the Secretary, before the close of the 90th day referred to in subparagraph (A)--

    **(i)** if the consultation period proposed to be agreed to will end before the 150th day after the date on which consultation was initiated, submits to the applicant a written statement setting forth--

        **(I)** the reasons why a longer period is required,

        **(II)** the information that is required to complete the consultation, and

        **(III)** the estimated date on which consultation will be completed; or

    **(ii)** if the consultation period proposed to be agreed to will end 150 or more days after the date on which consultation was initiated, obtains the consent of the applicant to such period.

The Secretary and the Federal agency may mutually agree to extend a consultation period established under the preceding sentence if the Secretary, before the close of such period, obtains the consent of the applicant to the extension.

**(2)** Consultation under subsection (a)(3) shall be concluded within such period as is agreeable to the Secretary, the Federal agency, and the applicant concerned.

USA Addendum 2a

**(3)(A)** Promptly after conclusion of consultation under paragraph (2) or (3) of subsection (a), the Secretary shall provide to the Federal agency and the applicant, if any, a written statement setting forth the Secretary's opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects the species or its critical habitat. If jeopardy or adverse modification is found, the Secretary shall suggest those reasonable and prudent alternatives which he believes would not violate subsection (a)(2) and can be taken by the Federal agency or applicant in implementing the agency action.

**(B)** Consultation under subsection (a)(3), and an opinion issued by the Secretary incident to such consultation, regarding an agency action shall be treated respectively as a consultation under subsection (a)(2), and as an opinion issued after consultation under such subsection, regarding that action if the Secretary reviews the action before it is commenced by the Federal agency and finds, and notifies such agency, that no significant changes have been made with respect to the action and that no significant change has occurred regarding the information used during the initial consultation.

**(4)** If after consultation under subsection (a)(2), the Secretary concludes that--

**(A)** the agency action will not violate such subsection, or offers reasonable and prudent alternatives which the Secretary believes would not violate such subsection;

**(B)** the taking of an endangered species or a threatened species incidental to the agency action will not violate such subsection; and

**(C)** if an endangered species or threatened species of a marine mammal is involved, the taking is authorized pursuant to section 1371(a)(5) of this title;

the Secretary shall provide the Federal agency and the applicant concerned, if any, with a written statement that--

**(i)** specifies the impact of such incidental taking on the species,

**(ii)** specifies those reasonable and prudent measures that the Secretary considers necessary or appropriate to minimize such impact,

USA Addendum 3a

**(iii)** in the case of marine mammals, specifies those measures that are necessary to comply with section 1371(a)(5) of this title with regard to such taking, and

**(iv)** sets forth the terms and conditions (including, but not limited to, reporting requirements) that must be complied with by the Federal agency or applicant (if any), or both, to implement the measures specified under clauses (ii) and (iii).

**(c) Biological assessment**

**(1)** To facilitate compliance with the requirements of subsection (a)(2), each Federal agency shall, with respect to any agency action of such agency for which no contract for construction has been entered into and for which no construction has begun on November 10, 1978, request of the Secretary information whether any species which is listed or proposed to be listed may be present in the area of such proposed action. If the Secretary advises, based on the best scientific and commercial data available, that such species may be present, such agency shall conduct a biological assessment for the purpose of identifying any endangered species or threatened species which is likely to be affected by such action. Such assessment shall be completed within 180 days after the date on which initiated (or within such other period as is mutually agreed to by the Secretary and such agency, except that if a permit or license applicant is involved, the 180-day period may not be extended unless such agency provides the applicant, before the close of such period, with a written statement setting forth the estimated length of the proposed extension and the reasons therefor) and, before any contract for construction is entered into and before construction is begun with respect to such action. Such assessment may be undertaken as part of a Federal agency's compliance with the requirements of section 102 of the National Environmental Policy Act of 1969 (42 U.S.C. 4332).

**(2)** Any person who may wish to apply for an exemption under subsection (g) of this section for that action may conduct a biological assessment to identify any endangered species or threatened species which is likely to be affected by such action. Any such biological assessment must, however, be conducted in cooperation with the Secretary and under the supervision of the appropriate Federal agency.

**(d) Limitation on commitment of resources**

USA Addendum 4a

After initiation of consultation required under subsection (a)(2), the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of this section.

**(e) Endangered Species Committee**

**(1)** There is established a committee to be known as the Endangered Species Committee (hereinafter in this section referred to as the "Committee").

**(2)** The Committee shall review any application submitted to it pursuant to this section and determine in accordance with subsection (h) of this section whether or not to grant an exemption from the requirements of subsection (a)(2) of this section for the action set forth in such application.

**(3)** The Committee shall be composed of seven members as follows:

    **(A)** The Secretary of Agriculture.

    **(B)** The Secretary of the Army.

    **(C)** The Chairman of the Council of Economic Advisors.

    **(D)** The Administrator of the Environmental Protection Agency.

    **(E)** The Secretary of the Interior.

    **(F)** The Administrator of the National Oceanic and Atmospheric Administration.

    **(G)** The President, after consideration of any recommendations received pursuant to subsection (g)(2)(B) shall appoint one individual from each affected State, as determined by the Secretary, to be a member of the Committee for the consideration of the application for exemption for an

USA Addendum 5a

agency action with respect to which such recommendations are made, not later than 30 days after an application is submitted pursuant to this section.

**(4)(A)** Members of the Committee shall receive no additional pay on account of their service on the Committee.

**(B)** While away from their homes or regular places of business in the performance of services for the Committee, members of the Committee shall be allowed travel expenses, including per diem in lieu of subsistence, in the same manner as persons employed intermittently in the Government service are allowed expenses under section 5703 of Title 5.

**(5)(A)** Five members of the Committee or their representatives shall constitute a quorum for the transaction of any function of the Committee, except that, in no case shall any representative be considered in determining the existence of a quorum for the transaction of any function of the Committee if that function involves a vote by the Committee on any matter before the Committee.

**(B)** The Secretary of the Interior shall be the Chairman of the Committee.

**(C)** The Committee shall meet at the call of the Chairman or five of its members.

**(D)** All meetings and records of the Committee shall be open to the public.

**(6)** Upon request of the Committee, the head of any Federal agency is authorized to detail, on a nonreimbursable basis, any of the personnel of such agency to the Committee to assist it in carrying out its duties under this section.

**(7)(A)** The Committee may for the purpose of carrying out its duties under this section hold such hearings, sit and act at such times and places, take such testimony, and receive such evidence, as the Committee deems advisable.

**(B)** When so authorized by the Committee, any member or agent of the Committee may take any action which the Committee is authorized to take by this paragraph.

USA Addendum 6a

**(C)** Subject to the Privacy Act, the Committee may secure directly from any Federal agency information necessary to enable it to carry out its duties under this section. Upon request of the Chairman of the Committee, the head of such Federal agency shall furnish such information to the Committee.

**(D)** The Committee may use the United States mails in the same manner and upon the same conditions as a Federal agency.

**(E)** The Administrator of General Services shall provide to the Committee on a reimbursable basis such administrative support services as the Committee may request.

**(8)** In carrying out its duties under this section, the Committee may promulgate and amend such rules, regulations, and procedures, and issue and amend such orders as it deems necessary.

**(9)** For the purpose of obtaining information necessary for the consideration of an application for an exemption under this section the Committee may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents.

**(10)** In no case shall any representative, including a representative of a member designated pursuant to paragraph (3)(G) of this subsection, be eligible to cast a vote on behalf of any member.

**(f) Promulgation of regulations; form and contents of exemption application**

Not later than 90 days after November 10, 1978, the Secretary shall promulgate regulations which set forth the form and manner in which applications for exemption shall be submitted to the Secretary and the information to be contained in such applications. Such regulations shall require that information submitted in an application by the head of any Federal agency with respect to any agency action include, but not be limited to--

**(1)** a description of the consultation process carried out pursuant to subsection (a)(2) of this section between the head of the Federal agency and the Secretary; and

USA Addendum 7a

**(2)** a statement describing why such action cannot be altered or modified to conform with the requirements of subsection (a)(2) of this section.

**(g) Application for exemption; report to Committee**

**(1)** A Federal agency, the Governor of the State in which an agency action will occur, if any, or a permit or license applicant may apply to the Secretary for an exemption for an agency action of such agency if, after consultation under subsection (a)(2), the Secretary's opinion under subsection (b) indicates that the agency action would violate subsection (a)(2). An application for an exemption shall be considered initially by the Secretary in the manner provided for in this subsection, and shall be considered by the Committee for a final determination under subsection (h) after a report is made pursuant to paragraph (5). The applicant for an exemption shall be referred to as the "exemption applicant" in this section.

**(2)(A)** An exemption applicant shall submit a written application to the Secretary, in a form prescribed under subsection (f), not later than 90 days after the completion of the consultation process; except that, in the case of any agency action involving a permit or license applicant, such application shall be submitted not later than 90 days after the date on which the Federal agency concerned takes final agency action with respect to the issuance of the permit or license. For purposes of the preceding sentence, the term "final agency action" means (i) a disposition by an agency with respect to the issuance of a permit or license that is subject to administrative review, whether or not such disposition is subject to judicial review; or (ii) if administrative review is sought with respect to such disposition, the decision resulting after such review. Such application shall set forth the reasons why the exemption applicant considers that the agency action meets the requirements for an exemption under this subsection.

**(B)** Upon receipt of an application for exemption for an agency action under paragraph (1), the Secretary shall promptly (i) notify the Governor of each affected State, if any, as determined by the Secretary, and request the Governors so notified to recommend individuals to be appointed to the Endangered Species Committee for consideration of such application; and (ii) publish notice of receipt of the application in the Federal Register, including a summary of the information contained in the application and a description of the agency action with respect to which the application for exemption has been filed.

**(3)** The Secretary shall within 20 days after the receipt of an application for exemption, or within such other period of time as is mutually agreeable to the exemption applicant and the Secretary--

USA Addendum 8a

**(A)** determine that the Federal agency concerned and the exemption applicant have--

**(i)** carried out the consultation responsibilities described in subsection (a) in good faith and made a reasonable and responsible effort to develop and fairly consider modifications or reasonable and prudent alternatives to the proposed agency action which would not violate subsection (a)(2);

**(ii)** conducted any biological assessment required by subsection (c); and

**(iii)** to the extent determinable within the time provided herein, refrained from making any irreversible or irretrievable commitment of resources prohibited by subsection (d); or

**(B)** deny the application for exemption because the Federal agency concerned or the exemption applicant have not met the requirements set forth in subparagraph (A)(i), (ii), and (iii).

The denial of an application under subparagraph (B) shall be considered final agency action for purposes of chapter 7 of Title 5.

**(4)** If the Secretary determines that the Federal agency concerned and the exemption applicant have met the requirements set forth in paragraph (3)(A)(i), (ii), and (iii) he shall, in consultation with the Members of the Committee, hold a hearing on the application for exemption in accordance with sections 554, 555, and 556 (other than subsection (b)(1) and (2) thereof) of Title 5 and prepare the report to be submitted pursuant to paragraph (5).

**(5)** Within 140 days after making the determinations under paragraph (3) or within such other period of time as is mutually agreeable to the exemption applicant and the Secretary, the Secretary shall submit to the Committee a report discussing--

**(A)** the availability of reasonable and prudent alternatives to the agency action, and the nature and extent of the benefits of the agency action and of alternative courses of action consistent with conserving the species or the critical habitat;

USA Addendum 9a

**(B)** a summary of the evidence concerning whether or not the agency action is in the public interest and is of national or regional significance;

**(C)** appropriate reasonable mitigation and enhancement measures which should be considered by the Committee; and

**(D)** whether the Federal agency concerned and the exemption applicant refrained from making any irreversible or irretrievable commitment of resources prohibited by subsection (d).

**(6)** To the extent practicable within the time required for action under subsection (g) of this section, and except to the extent inconsistent with the requirements of this section, the consideration of any application for an exemption under this section and the conduct of any hearing under this subsection shall be in accordance with sections 554, 555, and 556 (other than subsection (b)(3) of section 556) of Title 5.

**(7)** Upon request of the Secretary, the head of any Federal agency is authorized to detail, on a nonreimbursable basis, any of the personnel of such agency to the Secretary to assist him in carrying out his duties under this section.

**(8)** All meetings and records resulting from activities pursuant to this subsection shall be open to the public.

**(h) Grant of exemption**

**(1)** The Committee shall make a final determination whether or not to grant an exemption within 30 days after receiving the report of the Secretary pursuant to subsection (g)(5). The Committee shall grant an exemption from the requirements of subsection (a)(2) for an agency action if, by a vote of not less than five of its members voting in person--

**(A)** it determines on the record, based on the report of the Secretary, the record of the hearing held under subsection (g)(4) and on such other testimony or evidence as it may receive, that--

**(i)** there are no reasonable and prudent alternatives to the agency action;

USA Addendum 10a

**(ii)** the benefits of such action clearly outweigh the benefits of alternative courses of action consistent with conserving the species or its critical habitat, and such action is in the public interest;

**(iii)** the action is of regional or national significance; and

**(iv)** neither the Federal agency concerned nor the exemption applicant made any irreversible or irretrievable commitment of resources prohibited by subsection (d); and

**(B)** it establishes such reasonable mitigation and enhancement measures, including, but not limited to, live propagation, transplantation, and habitat acquisition and improvement, as are necessary and appropriate to minimize the adverse effects of the agency action upon the endangered species, threatened species, or critical habitat concerned.

Any final determination by the Committee under this subsection shall be considered final agency action for purposes of chapter 7 of Title 5.

**(2)(A)** Except as provided in subparagraph (B), an exemption for an agency action granted under paragraph (1) shall constitute a permanent exemption with respect to all endangered or threatened species for the purposes of completing such agency action--

**(i)** regardless whether the species was identified in the biological assessment; and

**(ii)** only if a biological assessment has been conducted under subsection (c) with respect to such agency action.

**(B)** An exemption shall be permanent under subparagraph (A) unless--

**(i)** the Secretary finds, based on the best scientific and commercial data available, that such exemption would result in the extinction of a species that was not the subject of consultation under subsection (a)(2) or was not identified in any biological assessment conducted under subsection (c), and

USA Addendum 11a

**(ii)** the Committee determines within 60 days after the date of the Secretary's finding that the exemption should not be permanent.

If the Secretary makes a finding described in clause (i), the Committee shall meet with respect to the matter within 30 days after the date of the finding.

## (i) Review by Secretary of State; violation of international treaty or other international obligation of United States

Notwithstanding any other provision of this chapter, the Committee shall be prohibited from considering for exemption any application made to it, if the Secretary of State, after a review of the proposed agency action and its potential implications, and after hearing, certifies, in writing, to the Committee within 60 days of any application made under this section that the granting of any such exemption and the carrying out of such action would be in violation of an international treaty obligation or other international obligation of the United States. The Secretary of State shall, at the time of such certification, publish a copy thereof in the Federal Register.

## (j) Exemption for national security reasons

Notwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of Defense finds that such exemption is necessary for reasons of national security.

## (k) Exemption decision not considered major Federal action; environmental impact statement

An exemption decision by the Committee under this section shall not be a major Federal action for purposes of the National Environmental Policy Act of 1969: *Provided*, That an environmental impact statement which discusses the impacts upon endangered species or threatened species or their critical habitats shall have been previously prepared with respect to any agency action exempted by such order.

## (l) Committee order granting exemption; cost of mitigation and enhancement measures; report by applicant to Council on Environmental Quality

USA Addendum 12a

**(1)** If the Committee determines under subsection (h) that an exemption should be granted with respect to any agency action, the Committee shall issue an order granting the exemption and specifying the mitigation and enhancement measures established pursuant to subsection (h) which shall be carried out and paid for by the exemption applicant in implementing the agency action. All necessary mitigation and enhancement measures shall be authorized prior to the implementing of the agency action and funded concurrently with all other project features.

**(2)** The applicant receiving such exemption shall include the costs of such mitigation and enhancement measures within the overall costs of continuing the proposed action. Notwithstanding the preceding sentence the costs of such measures shall not be treated as project costs for the purpose of computing benefit-cost or other ratios for the proposed action. Any applicant may request the Secretary to carry out such mitigation and enhancement measures. The costs incurred by the Secretary in carrying out any such measures shall be paid by the applicant receiving the exemption. No later than one year after the granting of an exemption, the exemption applicant shall submit to the Council on Environmental Quality a report describing its compliance with the mitigation and enhancement measures prescribed by this section. Such a report shall be submitted annually until all such mitigation and enhancement measures have been completed. Notice of the public availability of such reports shall be published in the Federal Register by the Council on Environmental Quality.

**(m) Notice requirement for citizen suits not applicable**

The 60-day notice requirement of section 1540(g) of this title shall not apply with respect to review of any final determination of the Committee under subsection (h) of this section granting an exemption from the requirements of subsection (a)(2) of this section.

**(n) Judicial review**

Any person, as defined by section 1532(13) of this title, may obtain judicial review, under chapter 7 of Title 5, of any decision of the Endangered Species Committee under subsection (h) in the United States Court of Appeals for (1) any circuit wherein the agency action concerned will be, or is being, carried out, or (2) in any case in which the agency action will be, or is being, carried out outside of any circuit, the District of Columbia, by filing in such court within 90 days after the date of issuance of the decision, a written petition for review. A copy of such petition shall be transmitted by the clerk of the court to the Committee and the Committee shall file in the court the record in the proceeding, as provided in section 2112 of Title 28. Attorneys designated by the

USA Addendum 13a

Endangered Species Committee may appear for, and represent the Committee in any action for review under this subsection.

**(o) Exemption as providing exception on taking of endangered species**

Notwithstanding sections 1533(d) and 1538(a)(1)(B) and (C) of this title, sections 1371 and 1372 of this title, or any regulation promulgated to implement any such section--

**(1)** any action for which an exemption is granted under subsection (h) shall not be considered to be a taking of any endangered species or threatened species with respect to any activity which is necessary to carry out such action; and

**(2)** any taking that is in compliance with the terms and conditions specified in a written statement provided under subsection (b)(4)(iv) shall not be considered to be a prohibited taking of the species concerned.

**(p) Exemptions in Presidentially declared disaster areas**

In any area which has been declared by the President to be a major disaster area under the Disaster Relief and Emergency Assistance Act, the President is authorized to make the determinations required by subsections (g) and (h) of this section for any project for the repair or replacement of a public facility substantially as it existed prior to the disaster under section 405 or 406 of the Disaster Relief and Emergency Assistance Act, and which the President determines (1) is necessary to prevent the recurrence of such a natural disaster and to reduce the potential loss of human life, and (2) to involve an emergency situation which does not allow the ordinary procedures of this section to be followed. Notwithstanding any other provision of this section, the Committee shall accept the determinations of the President under this subsection.

## CREDIT(S)

(Pub.L. 93-205, § 7, Dec. 28, 1973, 87 Stat. 892; Pub.L. 95-632, § 3, Nov. 10, 1978, 92 Stat. 3752; Pub.L. 96-159, § 4, Dec. 28, 1979, 93 Stat. 1226; Pub.L. 97-304, §§ 4(a), 8(b), Oct. 13, 1982, 96 Stat. 1417, 1426; Pub.L. 99-659, Title IV, § 411(b), (c), Nov. 14, 1986, 100 Stat. 3742; Pub.L. 100-707, Title I, § 109(g), Nov. 23, 1988, 102 Stat. 4709.)

16 U.S.C.A. § 1536, 16 USCA § 1536

USA Addendum 14a

USCA Case #24-5101      Document #2074893      Filed: 09/16/2024      Page 17 of 65

> United States Code Annotated
>   Title 33. Navigation and Navigable Waters (Refs & Annos)
>     Chapter 26. Water Pollution Prevention and Control (Refs & Annos)
>       Subchapter I. Research and Related Programs (Refs & Annos)

33 U.S.C.A. § 1251

§ 1251. Congressional declaration of goals and policy

Currentness

**(a) Restoration and maintenance of chemical, physical and biological integrity of Nation's waters; national goals for achievement of objective**

The objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. In order to achieve this objective it is hereby declared that, consistent with the provisions of this chapter--

**(1)** it is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985;

**(2)** it is the national goal that wherever attainable, an interim goal of water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water be achieved by July 1, 1983;

**(3)** it is the national policy that the discharge of toxic pollutants in toxic amounts be prohibited;

**(4)** it is the national policy that Federal financial assistance be provided to construct publicly owned waste treatment works;

**(5)** it is the national policy that areawide waste treatment management planning processes be developed and implemented to assure adequate control of sources of pollutants in each State;

USA Addendum 15a

**(6)** it is the national policy that a major research and demonstration effort be made to develop technology necessary to eliminate the discharge of pollutants into the navigable waters, waters of the contiguous zone, and the oceans; and

**(7)** it is the national policy that programs for the control of nonpoint sources of pollution be developed and implemented in an expeditious manner so as to enable the goals of this chapter to be met through the control of both point and nonpoint sources of pollution.

**(b) Congressional recognition, preservation, and protection of primary responsibilities and rights of States**

It is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter. It is the policy of Congress that the States manage the construction grant program under this chapter and implement the permit programs under sections 1342 and 1344 of this title. It is further the policy of the Congress to support and aid research relating to the prevention, reduction, and elimination of pollution and to provide Federal technical services and financial aid to State and interstate agencies and municipalities in connection with the prevention, reduction, and elimination of pollution.

**(c) Congressional policy toward Presidential activities with foreign countries**

It is further the policy of Congress that the President, acting through the Secretary of State and such national and international organizations as he determines appropriate, shall take such action as may be necessary to insure that to the fullest extent possible all foreign countries shall take meaningful action for the prevention, reduction, and elimination of pollution in their waters and in international waters and for the achievement of goals regarding the elimination of discharge of pollutants and the improvement of water quality to at least the same extent as the United States does under its laws.

**(d) Administrator of Environmental Protection Agency to administer chapter**

Except as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called "Administrator") shall administer this chapter.

**(e) Public participation in development, revision, and enforcement of any regulation, etc.**

Public participation in the development, revision, and enforcement of any regulation, standard, effluent limitation, plan, or program established by the Administrator or any State under this chapter shall be provided for, encouraged, and assisted by the Administrator and the States. The Administrator, in cooperation with the States, shall develop and publish regulations specifying minimum guidelines for public participation in such processes.

**(f) Procedures utilized for implementing chapter**

It is the national policy that to the maximum extent possible the procedures utilized for implementing this chapter shall encourage the drastic minimization of paperwork and interagency decision procedures, and the best use of available manpower and funds, so as to prevent needless duplication and unnecessary delays at all levels of government.

**(g) Authority of States over water**

It is the policy of Congress that the authority of each State to allocate quantities of water within its jurisdiction shall not be superseded, abrogated or otherwise impaired by this chapter. It is the further policy of Congress that nothing in this chapter shall be construed to supersede or abrogate rights to quantities of water which have been established by any State. Federal agencies shall co-operate with State and local agencies to develop comprehensive solutions to prevent, reduce and eliminate pollution in concert with programs for managing water resources.

**CREDIT(S)**

(June 30, 1948, c. 758, Title I, § 101, as added Pub.L. 92-500, § 2, Oct. 18, 1972, 86 Stat. 816; amended Pub.L. 95-217, §§ 5(a), 26(b), Dec. 27, 1977, 91 Stat. 1567, 1575; Pub.L. 100-4, Title III, § 316(b), Feb. 4, 1987, 101 Stat. 60.)

33 U.S.C.A. § 1251, 33 USCA § 1251
Current through P.L. 118-70. Some statute sections may be more current, see credits for details.

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

  © 2024 Thomson Reuters. No claim to original U.S. Government Works.  USA Addendum 17a

---

United States Code Annotated
    Title 33. Navigation and Navigable Waters (Refs & Annos)
        Chapter 26. Water Pollution Prevention and Control (Refs & Annos)
            Subchapter IV. Permits and Licenses (Refs & Annos)

33 U.S.C.A. § 1344

§ 1344. Permits for dredged or fill material

Currentness

**(a) Discharge into navigable waters at specified disposal sites**

The Secretary may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites. Not later than the fifteenth day after the date an applicant submits all the information required to complete an application for a permit under this subsection, the Secretary shall publish the notice required by this subsection.

**(b) Specification for disposal sites**

Subject to subsection (c) of this section, each such disposal site shall be specified for each such permit by the Secretary (1) through the application of guidelines developed by the Administrator, in conjunction with the Secretary, which guidelines shall be based upon criteria comparable to the criteria applicable to the territorial seas, the contiguous zone, and the ocean under section 1343(c) of this title, and (2) in any case where such guidelines under clause (1) alone would prohibit the specification of a site, through the application additionally of the economic impact of the site on navigation and anchorage.

**(c) Denial or restriction of use of defined areas as disposal sites**

The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational

USA Addendum 18a

areas. Before making such determination, the Administrator shall consult with the Secretary. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

**(d) "Secretary" defined**

The term "Secretary" as used in this section means the Secretary of the Army, acting through the Chief of Engineers.

**(e) General permits on State, regional, or nationwide basis**

**(1)** In carrying out his functions relating to the discharge of dredged or fill material under this section, the Secretary may, after notice and opportunity for public hearing, issue general permits on a State, regional, or nationwide basis for any category of activities involving discharges of dredged or fill material if the Secretary determines that the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment. Any general permit issued under this subsection shall (A) be based on the guidelines described in subsection (b)(1) of this section, and (B) set forth the requirements and standards which shall apply to any activity authorized by such general permit.

**(2)** No general permit issued under this subsection shall be for a period of more than five years after the date of its issuance and such general permit may be revoked or modified by the Secretary if, after opportunity for public hearing, the Secretary determines that the activities authorized by such general permit have an adverse impact on the environment or such activities are more appropriately authorized by individual permits.

**(f) Non-prohibited discharge of dredged or fill material**

**(1)** Except as provided in paragraph (2) of this subsection, the discharge of dredged or fill material--

**(A)** from normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices;

USA Addendum 19a

**(B)** for the purpose of maintenance, including emergency reconstruction of recently damaged parts, of currently serviceable structures such as dikes, dams, levees, groins, riprap, breakwaters, causeways, and bridge abutments or approaches, and transportation structures;

**(C)** for the purpose of construction or maintenance of farm or stock ponds or irrigation ditches, or the maintenance of drainage ditches;

**(D)** for the purpose of construction of temporary sedimentation basins on a construction site which does not include placement of fill material into the navigable waters;

**(E)** for the purpose of construction or maintenance of farm roads or forest roads, or temporary roads for moving mining equipment, where such roads are constructed and maintained, in accordance with best management practices, to assure that flow and circulation patterns and chemical and biological characteristics of the navigable waters are not impaired, that the reach of the navigable waters is not reduced, and that any adverse effect on the aquatic environment will be otherwise minimized;

**(F)** resulting from any activity with respect to which a State has an approved program under section 1288(b)(4) of this title which meets the requirements of subparagraphs (B) and (C) of such section,

is not prohibited by or otherwise subject to regulation under this section or section 1311(a) or 1342 of this title (except for effluent standards or prohibitions under section 1317 of this title).

**(2)** Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section.

**(g) State administration**

**(1)** The Governor of any State desiring to administer its own individual and general permit program for the discharge of dredged or fill material into the navigable waters (other than those waters which are presently used, or are susceptible to use in their natural condition or by reasonable improvement

as a means to transport interstate or foreign commerce shoreward to their ordinary high water mark, including all waters which are subject to the ebb and flow of the tide shoreward to their mean high water mark, or mean higher high water mark on the west coast, including wetlands adjacent thereto) within its jurisdiction may submit to the Administrator a full and complete description of the program it proposes to establish and administer under State law or under an interstate compact. In addition, such State shall submit a statement from the attorney general (or the attorney for those State agencies which have independent legal counsel), or from the chief legal officer in the case of an interstate agency, that the laws of such State, or the interstate compact, as the case may be, provide adequate authority to carry out the described program.

**(2)** Not later than the tenth day after the date of the receipt of the program and statement submitted by any State under paragraph (1) of this subsection, the Administrator shall provide copies of such program and statement to the Secretary and the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service.

**(3)** Not later than the ninetieth day after the date of the receipt by the Administrator of the program and statement submitted by any State, under paragraph (1) of this subsection, the Secretary and the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service, shall submit any comments with respect to such program and statement to the Administrator in writing.

**(h) Determination of State's authority to issue permits under State program; approval; notification; transfers to State program**

**(1)** Not later than the one-hundred-twentieth day after the date of the receipt by the Administrator of a program and statement submitted by any State under paragraph (1) of this subsection, the Administrator shall determine, taking into account any comments submitted by the Secretary and the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service, pursuant to subsection (g) of this section, whether such State has the following authority with respect to the issuance of permits pursuant to such program:

  **(A)** To issue permits which--

  **(i)** apply, and assure compliance with, any applicable requirements of this section, including, but not limited to, the guidelines established under subsection (b)(1) of this section, and sections 1317 and 1343 of this title;

USA Addendum 21a

**(ii)** are for fixed terms not exceeding five years; and

**(iii)** can be terminated or modified for cause including, but not limited to, the following:

    **(I)** violation of any condition of the permit;

    **(II)** obtaining a permit by misrepresentation, or failure to disclose fully all relevant facts;

    **(III)** change in any condition that requires either a temporary or permanent reduction or elimination of the permitted discharge.

**(B)** To issue permits which apply, and assure compliance with, all applicable requirements of section 1318 of this title, or to inspect, monitor, enter, and require reports to at least the same extent as required in section 1318 of this title.

**(C)** To assure that the public, and any other State the waters of which may be affected, receive notice of each application for a permit and to provide an opportunity for public hearing before a ruling on each such application.

**(D)** To assure that the Administrator receives notice of each application (including a copy thereof) for a permit.

**(E)** To assure that any State (other than the permitting State), whose waters may be affected by the issuance of a permit may submit written recommendations to the permitting State (and the Administrator) with respect to any permit application and, if any part of such written recommendations are not accepted by the permitting State, that the permitting State will notify such affected State (and the Administrator) in writing of its failure to so accept such recommendations together with its reasons for so doing.

**(F)** To assure that no permit will be issued if, in the judgment of the Secretary, after consultation with the Secretary of the department in which the Coast Guard is operating, anchorage and navigation of any of the navigable waters would be substantially impaired thereby.

**(G)** To abate violations of the permit or the permit program, including civil and criminal penalties and other ways and means of enforcement.

**(H)** To assure continued coordination with Federal and Federal-State water-related planning and review processes.

**(2)** If, with respect to a State program submitted under subsection (g)(1) of this section, the Administrator determines that such State--

**(A)** has the authority set forth in paragraph (1) of this subsection, the Administrator shall approve the program and so notify (i) such State and (ii) the Secretary, who upon subsequent notification from such State that it is administering such program, shall suspend the issuance of permits under subsections (a) and (e) of this section for activities with respect to which a permit may be issued pursuant to such State program; or

**(B)** does not have the authority set forth in paragraph (1) of this subsection, the Administrator shall so notify such State, which notification shall also describe the revisions or modifications necessary so that such State may resubmit such program for a determination by the Administrator under this subsection.

**(3)** If the Administrator fails to make a determination with respect to any program submitted by a State under subsection (g)(1) of this section within one-hundred-twenty days after the date of the receipt of such program, such program shall be deemed approved pursuant to paragraph (2)(A) of this subsection and the Administrator shall so notify such State and the Secretary who, upon subsequent notification from such State that it is administering such program, shall suspend the issuance of permits under subsection (a) and (e) of this section for activities with respect to which a permit may be issued by such State.

**(4)** After the Secretary receives notification from the Administrator under paragraph (2) or (3) of this subsection that a State permit program has been approved, the Secretary shall transfer any applications for permits pending before the Secretary for activities with respect to which a permit may be issued pursuant to such State program to such State for appropriate action.

USA Addendum 23a

**(5)** Upon notification from a State with a permit program approved under this subsection that such State intends to administer and enforce the terms and conditions of a general permit issued by the Secretary under subsection (e) of this section with respect to activities in such State to which such general permit applies, the Secretary shall suspend the administration and enforcement of such general permit with respect to such activities.

### (i) Withdrawal of approval

Whenever the Administrator determines after public hearing that a State is not administering a program approved under subsection (h)(2)(A) of this section, in accordance with this section, including, but not limited to, the guidelines established under subsection (b)(1) of this section, the Administrator shall so notify the State, and, if appropriate corrective action is not taken within a reasonable time, not to exceed ninety days after the date of the receipt of such notification, the Administrator shall (1) withdraw approval of such program until the Administrator determines such corrective action has been taken, and (2) notify the Secretary that the Secretary shall resume the program for the issuance of permits under subsections (a) and (e) of this section for activities with respect to which the State was issuing permits and that such authority of the Secretary shall continue in effect until such time as the Administrator makes the determination described in clause (1) of this subsection and such State again has an approved program.

### (j) Copies of applications for State permits and proposed general permits to be transmitted to Administrator

Each State which is administering a permit program pursuant to this section shall transmit to the Administrator (1) a copy of each permit application received by such State and provide notice to the Administrator of every action related to the consideration of such permit application, including each permit proposed to be issued by such State, and (2) a copy of each proposed general permit which such State intends to issue. Not later than the tenth day after the date of the receipt of such permit application or such proposed general permit, the Administrator shall provide copies of such permit application or such proposed general permit to the Secretary and the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service. If the Administrator intends to provide written comments to such State with respect to such permit application or such proposed general permit, he shall so notify such State not later than the thirtieth day after the date of the receipt of such application or such proposed general permit and provide such written comments to such State, after consideration of any comments made in writing with respect to such application or such proposed general permit by the Secretary and the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service, not later than the ninetieth day after the date of such receipt. If such State is so notified by the

USA Addendum 24a

Administrator, it shall not issue the proposed permit until after the receipt of such comments from the Administrator, or after such ninetieth day, whichever first occurs. Such State shall not issue such proposed permit after such ninetieth day if it has received such written comments in which the Administrator objects (A) to the issuance of such proposed permit and such proposed permit is one that has been submitted to the Administrator pursuant to subsection (h)(1)(E), or (B) to the issuance of such proposed permit as being outside the requirements of this section, including, but not limited to, the guidelines developed under subsection (b)(1) of this section unless it modifies such proposed permit in accordance with such comments. Whenever the Administrator objects to the issuance of a permit under the preceding sentence such written objection shall contain a statement of the reasons for such objection and the conditions which such permit would include if it were issued by the Administrator. In any case where the Administrator objects to the issuance of a permit, on request of the State, a public hearing shall be held by the Administrator on such objection. If the State does not resubmit such permit revised to meet such objection within 30 days after completion of the hearing or, if no hearing is requested within 90 days after the date of such objection, the Secretary may issue the permit pursuant to subsection (a) or (e) of this section, as the case may be, for such source in accordance with the guidelines and requirements of this chapter.

**(k) Waiver**

In accordance with guidelines promulgated pursuant to subsection (i)(2) of section 1314 of this title, the Administrator is authorized to waive the requirements of subsection (j) of this section at the time of the approval of a program pursuant to subsection (h)(2)(A) of this section for any category (including any class, type, or size within such category) of discharge within the State submitting such program.

**(l) Categories of discharges not subject to requirements**

The Administrator shall promulgate regulations establishing categories of discharges which he determines shall not be subject to the requirements of subsection (j) of this section in any State with a program approved pursuant to subsection (h)(2)(A) of this section. The Administrator may distinguish among classes, types, and sizes within any category of discharges.

**(m) Comments on permit applications or proposed general permits by Secretary of the Interior acting through Director of United States Fish and Wildlife Service**

Not later than the ninetieth day after the date on which the Secretary notifies the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service that (1) an application for a permit under subsection (a) of this section has been received by the Secretary,

USA Addendum 25a

or (2) the Secretary proposes to issue a general permit under subsection (e) of this section, the Secretary of the Interior, acting through the Director of the United States Fish and Wildlife Service, shall submit any comments with respect to such application or such proposed general permit in writing to the Secretary.


**(n) Enforcement authority not limited**

Nothing in this section shall be construed to limit the authority of the Administrator to take action pursuant to section 1319 of this title.


**(o) Public availability of permits and permit applications**

A copy of each permit application and each permit issued under this section shall be available to the public. Such permit application or portion thereof, shall further be available on request for the purpose of reproduction.


**(p) Compliance**

Compliance with a permit issued pursuant to this section, including any activity carried out pursuant to a general permit issued under this section, shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1317, and 1343 of this title.


**(q) Minimization of duplication, needless paperwork, and delays in issuance; agreements**

Not later than the one-hundred-eightieth day after December 27, 1977, the Secretary shall enter into agreements with the Administrator, the Secretaries of the Departments of Agriculture, Commerce, Interior, and Transportation, and the heads of other appropriate Federal agencies to minimize, to the maximum extent practicable, duplication, needless paperwork, and delays in the issuance of permits under this section. Such agreements shall be developed to assure that, to the maximum extent practicable, a decision with respect to an application for a permit under subsection (a) of this section will be made not later than the ninetieth day after the date the notice for such application is published under subsection (a) of this section.


**(r) Federal projects specifically authorized by Congress**

USA Addendum 26a

The discharge of dredged or fill material as part of the construction of a Federal project specifically authorized by Congress, whether prior to or on or after December 27, 1977, is not prohibited by or otherwise subject to regulation under this section, or a State program approved under this section, or section 1311(a) or 1342 of this title (except for effluent standards or prohibitions under section 1317 of this title), if information on the effects of such discharge, including consideration of the guidelines developed under subsection (b)(1) of this section, is included in an environmental impact statement for such project pursuant to the National Environmental Policy Act of 1969 and such environmental impact statement has been submitted to Congress before the actual discharge of dredged or fill material in connection with the construction of such project and prior to either authorization of such project or an appropriation of funds for such construction.

**(s) Violation of permits**

**(1)** Whenever on the basis of any information available to him the Secretary finds that any person is in violation of any condition or limitation set forth in a permit issued by the Secretary under this section, the Secretary shall issue an order requiring such person to comply with such condition or limitation, or the Secretary shall bring a civil action in accordance with paragraph (3) of this subsection.

**(2)** A copy of any order issued under this subsection shall be sent immediately by the Secretary to the State in which the violation occurs and other affected States. Any order issued under this subsection shall be by personal service and shall state with reasonable specificity the nature of the violation, specify a time for compliance, not to exceed thirty days, which the Secretary determines is reasonable, taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements. In any case in which an order under this subsection is issued to a corporation, a copy of such order shall be served on any appropriate corporate officers.

**(3)** The Secretary is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction for any violation for which he is authorized to issue a compliance order under paragraph (1) of this subsection. Any action under this paragraph may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such acton [1] shall be given immediately to the appropriate State.

USA Addendum 27a

**(4)** Any person who violates any condition or limitation in a permit issued by the Secretary under this section, and any person who violates any order issued by the Secretary under paragraph (1) of this subsection, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. In determining the amount of a civil penalty the court shall consider the seriousness of the violation or violations, the economic benefit (if any) resulting from the violation, any history of such violations, any good-faith efforts to comply with the applicable requirements, the economic impact of the penalty on the violator, and such other matters as justice may require.

**(t) Navigable waters within State jurisdiction**

Nothing in this section shall preclude or deny the right of any State or interstate agency to control the discharge of dredged or fill material in any portion of the navigable waters within the jurisdiction of such State, including any activity of any Federal agency, and each such agency shall comply with such State or interstate requirements both substantive and procedural to control the discharge of dredged or fill material to the same extent that any person is subject to such requirements. This section shall not be construed as affecting or impairing the authority of the Secretary to maintain navigation.

## CREDIT(S)

(June 30, 1948, c. 758, Title IV, § 404, as added Pub.L. 92-500, § 2, Oct. 18, 1972, 86 Stat. 884; amended Pub.L. 95-217, § 67(a), (b), Dec. 27, 1977, 91 Stat. 1600; Pub.L. 100-4, Title III, § 313(d), Feb. 4, 1987, 101 Stat. 45.)

## Footnotes

1       So in original. Probably should be "action".

33 U.S.C.A. § 1344, 33 USCA § 1344
Current through P.L. 118-70. Some statute sections may be more current, see credits for details.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

USA Addendum 28a

> Code of Federal Regulations
>   Title 40. Protection of Environment
>     Chapter I. Environmental Protection Agency (Refs & Annos)
>       Subchapter H. Ocean Dumping
>         Part 230. Section 404(b)(1) Guidelines for Specification of Disposal Sites for Dredged or Fill Material (Refs & Annos)
>           Subpart B. Compliance with the Guidelines

40 C.F.R. § 230.10

§ 230.10 Restrictions on discharge.

Currentness

Note: Because other laws may apply to particular discharges and because the Corps of Engineers or State 404 agency may have additional procedural and substantive requirements, a discharge complying with the requirement of these Guidelines will not automatically receive a permit.

Although all requirements in § 230.10 must be met, the compliance evaluation procedures will vary to reflect the seriousness of the potential for adverse impacts on the aquatic ecosystems posed by specific dredged or fill material discharge activities.

(a) Except as provided under section 404(b)(2), no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences.

(1) For the purpose of this requirement, practicable alternatives include, but are not limited to:

(i) Activities which do not involve a discharge of dredged or fill material into the waters of the United States or ocean waters;

(ii) Discharges of dredged or fill material at other locations in waters of the United States or ocean waters;

USA Addendum 29a

(2) An alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics in light of overall project purposes. If it is otherwise a practicable alternative, an area not presently owned by the applicant which could reasonably be obtained, utilized, expanded or managed in order to fulfill the basic purpose of the proposed activity may be considered.

(3) Where the activity associated with a discharge which is proposed for a special aquatic site (as defined in subpart E) does not require access or proximity to or siting within the special aquatic site in question to fulfill its basic purpose (i.e., is not "water dependent"), practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise. In addition, where a discharge is proposed for a special aquatic site, all practicable alternatives to the proposed discharge which do not involve a discharge into a special aquatic site are presumed to have less adverse impact on the aquatic ecosystem, unless clearly demonstrated otherwise.

(4) For actions subject to NEPA, where the Corps of Engineers is the permitting agency, the analysis of alternatives required for NEPA environmental documents, including supplemental Corps NEPA documents, will in most cases provide the information for the evaluation of alternatives under these Guidelines. On occasion, these NEPA documents may address a broader range of alternatives than required to be considered under this paragraph or may not have considered the alternatives in sufficient detail to respond to the requirements of these Guidelines. In the latter case, it may be necessary to supplement these NEPA documents with this additional information.

(5) To the extent that practicable alternatives have been identified and evaluated under a Coastal Zone Management program, a section 208 program, or other planning process, such evaluation shall be considered by the permitting authority as part of the consideration of alternatives under the Guidelines. Where such evaluation is less complete than that contemplated under this subsection, it must be supplemented accordingly.

(b) No discharge of dredged or fill material shall be permitted if it:

(1) Causes or contributes, after consideration of disposal site dilution and dispersion, to violations of any applicable State water quality standard;

USA Addendum 30a

(2) Violates any applicable toxic effluent standard or prohibition under section 307 of the Act;

(3) Jeopardizes the continued existence of species listed as endangered or threatened under the Endangered Species Act of 1973, as amended, or results in likelihood of the destruction or adverse modification of a habitat which is determined by the Secretary of Interior or Commerce, as appropriate, to be a critical habitat under the Endangered Species Act of 1973, as amended. If an exemption has been granted by the Endangered Species Committee, the terms of such exemption shall apply in lieu of this subparagraph;

(4) Violates any requirement imposed by the Secretary of Commerce to protect any marine sanctuary designated under title III of the Marine Protection, Research, and Sanctuaries Act of 1972.

(c) Except as provided under section 404(b)(2), no discharge of dredged or fill material shall be permitted which will cause or contribute to significant degradation of the waters of the United States. Findings of significant degradation related to the proposed discharge shall be based upon appropriate factual determinations, evaluations, and tests required by subparts B and G, after consideration of subparts C through F, with special emphasis on the persistence and permanence of the effects outlined in those subparts. Under these Guidelines, effects contributing to significant degradation considered individually or collectively, include:

(1) Significantly adverse effects of the discharge of pollutants on human health or welfare, including but not limited to effects on municipal water supplies, plankton, fish, shellfish, wildlife, and special aquatic sites;

(2) Significantly adverse effects of the discharge of pollutants on life stages of aquatic life and other wildlife dependent on aquatic ecosystems, including the transfer, concentration, and spread of pollutants or their byproducts outside of the disposal site through biological, physical, and chemical processes;

(3) Significantly adverse effects of the discharge of pollutants on aquatic ecosystem diversity, productivity, and stability. Such effects may include, but are not limited to, loss of fish and wildlife habitat or loss of the capacity of a wetland to assimilate nutrients, purify water, or reduce wave energy; or

USA Addendum 31a

USCA Case #24-5101    Document #2074893    Filed: 09/16/2024    Page 34 of 65

(4) Significantly adverse effects of discharge of pollutants on recreational, aesthetic, and economic values.

(d) Except as provided under section 404(b)(2), no discharge of dredged or fill material shall be permitted unless appropriate and practicable steps have been taken which will minimize potential adverse impacts of the discharge on the aquatic ecosystem. Subpart H identifies such possible steps.

SOURCE: 45 FR 85344, Dec. 24, 1980; 80 FR 37115, June 29, 2015; 84 FR 56669, Oct. 22, 2019; 85 FR 22341, April 21, 2020, unless otherwise noted.

AUTHORITY: 33 U.S.C. 1251 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

USA Addendum 32a

USCA Case #24-5101     Document #2074893     Filed: 09/16/2024     Page 35 of 65

---

Code of Federal Regulations
 Title 40. Protection of Environment
  Chapter I. Environmental Protection Agency (Refs & Annos)
   Subchapter H. Ocean Dumping
    Part 233. 404 State Program Regulations (Refs & Annos)
     Subpart B. Program Approval

---

40 C.F.R. § 233.15

§ 233.15 Procedures for approving State programs.

Currentness

(a) The 120 day statutory review period shall commence on the date of receipt of a complete State program submission as set out in § 233.10 of this part. EPA shall determine whether the submission is complete within 30 days of receipt of the submission and shall notify the State of its determination. If EPA finds that a State's submission is incomplete, the statutory review period shall not begin until all the necessary information is received by EPA.

(b) If EPA determines the State significantly changes its submission during the review period, the statutory review period shall begin again upon the receipt of a revised submission.

(c) The State and EPA may extend the statutory review period by agreement.

(d) Within 10 days of receipt of a complete State section 404 program submission, the Regional Administrator shall provide copies of the State's submission to the Corps, FWS, and NMFS (both Headquarters and appropriate Regional organizations.)

(e) After determining that a State program submission is complete, the Regional Administrator shall publish notice of the State's application in the Federal Register and in enough of the largest newspapers in the State to attract statewide attention. The Regional Administrator shall also mail notice to persons known to be interested in such matters. Existing State, EPA, Corps, FWS, and NMFS mailing lists shall be used as a basis for this mailing. However, failure to mail all such notices shall not be grounds for invalidating approval (or disapproval) of an otherwise acceptable (or unacceptable) program. This notice shall:

(1) Provide for a comment period of not less than 45 days during which interested members of the public may express their views on the State program.

(2) Provide for a public hearing within the State to be held not less than 30 days after notice of hearing is published in the Federal Register;

(3) Indicate where and when the State's submission may be reviewed by the public;

(4) Indicate whom an interested member of the public with questions should contact; and

(5) Briefly outline the fundamental aspects of the State's proposed program and the process for EPA review and decision.

(f) Within 90 days of EPA's receipt of a complete program submission, the Corps, FWS, and NMFS shall submit to EPA any comments on the State's program.

(g) Within 120 days of receipt of a complete program submission (unless an extension is agreed to by the State), the Regional Administrator shall approve or disapprove the program based on whether the State's program fulfills the requirements of this part and the Act, taking into consideration all comments received. The Regional Administrator shall prepare a responsiveness summary of significant comments received and his response to these comments. The Regional Administrator shall respond individually to comments received from the Corps, FWS, and NMFS.

(h) If the Regional Administrator approves the State's section 404 program, he shall notify the State and the Secretary of the decision and publish notice in the Federal Register. Transfer of the program to the State shall not be considered effective until such notice appears in the Federal Register. The Secretary shall suspend the issuance by the Corps of section 404 permits in State regulated waters on such effective date.

(i) If the Regional Administrator disapproves the State's program based on the State not meeting the requirements of the Act and this part, the Regional Administrator shall notify the State of the reasons for the disapproval and of any revisions or modifications to the State's program which are

necessary to obtain approval. If the State resubmits a program submission remedying the identified problem areas, the approval procedure and statutory review period shall begin upon receipt of the revised submission.

SOURCE: 53 FR 20776, 20777, 20779, 20780, 20782, 20783, June 6, 1988; 59 FR 9933, March 2, 1994, unless otherwise noted.

AUTHORITY: 33 U.S.C. 1251 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

**End of Document**                                            © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**USA Addendum 35a**

USCA Case #24-5101    Document #2074893    Filed: 09/16/2024    Page 38 of 65

Code of Federal Regulations
    Title 40. Protection of Environment
        Chapter I. Environmental Protection Agency (Refs & Annos)
            Subchapter H. Ocean Dumping
                Part 233. 404 State Program Regulations (Refs & Annos)
                    Subpart C. Permit Requirements

40 C.F.R. § 233.23

§ 233.23 Permit conditions.

Currentness

(a) For each permit the Director shall establish conditions which assure compliance with all applicable statutory and regulatory requirements, including the 404(b)(1) Guidelines, applicable section 303 water quality standards, and applicable section 307 effluent standards and prohibitions.

(b) Section 404 permits shall be effective for a fixed term not to exceed 5 years.

(c) Each 404 permit shall include conditions meeting or implementing the following requirements:

(1) A specific identification and complete description of the authorized activity including name and address of permittee, location and purpose of discharge, type and quantity of material to be discharged. (This subsection is not applicable to general permits).

(2) Only the activities specifically described in the permit are authorized.

(3) The permittee shall comply with all conditions of the permit even if that requires halting or reducing the permitted activity to maintain compliance. Any permit violation constitutes a violation of the Act as well as of State statute and/or regulation.

(4) The permittee shall take all reasonable steps to minimize or prevent any discharge in violation of this permit.

USA Addendum 36a

(5) The permittee shall inform the Director of any expected or known actual noncompliance.

(6) The permittee shall provide such information to the Director, as the Director requests, to determine compliance status, or whether cause exists for permit modification, revocation or termination.

(7) Monitoring, reporting and recordkeeping requirements as needed to safeguard the aquatic environment. (Such requirements will be determined on a case-by-case basis, but at a minimum shall include monitoring and reporting of any expected leachates, reporting of noncompliance, planned changes or transfer of the permit.)

(8) Inspection and entry. The permittee shall allow the Director, or his authorized representative, upon presentation of proper identification, at reasonable times to:

(i) Enter upon the permittee's premises where a regulated activity is located or where records must be kept under the conditions of the permit,

(ii) Have access to and copy any records that must be kept under the conditions of the permit,

(iii) Inspect operations regulated or required under the permit, and

(iv) Sample or monitor, for the purposes of assuring permit compliance or as otherwise authorized by the Act, any substances or parameters at any location.

(9) Conditions assuring that the discharge will be conducted in a manner which minimizes adverse impacts upon the physical, chemical and biological integrity of the waters of the United States, such as requirements for restoration or mitigation.

SOURCE: 53 FR 20776, 20777, 20779, 20780, 20782, 20783, June 6, 1988; 59 FR 9933, March 2, 1994, unless otherwise noted.

AUTHORITY: 33 U.S.C. 1251 et seq.

USA Addendum 37a

Code of Federal Regulations
    Title 40. Protection of Environment
        Chapter I. Environmental Protection Agency (Refs & Annos)
            Subchapter H. Ocean Dumping
                Part 233. 404 State Program Regulations (Refs & Annos)
                    Subpart F. Federal Oversight

40 C.F.R. § 233.50

§ 233.50 Review of and objection to State permits.

Currency

(a) The Director shall promptly transmit to the Regional Administrator:

(1) A copy of the public notice for any complete permit applications received by the Director, except those for which permit review has been waived under § 233.51. The State shall supply the Regional Administrator with copies of public notices for permit applications for which permit review has been waived whenever requested by EPA.

(2) A copy of a draft general permit whenever the State intends to issue a general permit.

(3) Notice of every significant action taken by the State agency related to the consideration of any permit application except those for which Federal review has been waived or draft general permit.

(4) A copy of every issued permit.

(5) A copy of the Director's response to another State's comments/recommendations, if the Director does not accept these recommendations (§ 233.32(a)).

(b) Unless review has been waived under § 233.51, the Regional Administrator shall provide a copy of each public notice, each draft general permit, and other information needed for review of the application to the Corps, FWS, and NMFS, within 10 days of receipt. These agencies shall

USA Addendum 38a

USCA Case #24-5101      Document #2074893      Filed: 09/16/2024      Page 41 of 65

notify the Regional Administrator within 15 days of their receipt if they wish to comment on the public notice or draft general permit. Such agencies should submit their evaluation and comments to the Regional Administrator within 50 days of such receipt. The final decision to comment, object or to require permit conditions shall be made by the Regional Administrator. (These times may be shortened by mutual agreement of the affected Federal agencies and the State.)

(c) If the information provided is inadequate to determine whether the permit application or draft general permit meets the requirements of the Act, these regulations, and the 404(b)(1) Guidelines, the Regional Administrator may, within 30 days of receipt, request the Director to transmit to the Regional Administrator the complete record of the permit proceedings before the State, or any portions of the record, or other information, including a supplemental application, that the Regional Administrator determines necessary for review.

(d) If the Regional Administrator intends to comment upon, object to, or make recommendations with respect to a permit application, draft general permit, or the Director's failure to accept the recommendations of an affected State submitted pursuant to § 233.31(a), he shall notify the Director of his intent within 30 days of receipt. If the Director has been so notified, the permit shall not be issued until after the receipt of such comments or 90 days of the Regional Administrator's receipt of the public notice, draft general permit or Director's response (§ 233.31(a)), whichever comes first. The Regional Administrator may notify the Director within 30 days of receipt that there is no comment but that he reserves the right to object within 90 days of receipt, based on any new information brought out by the public during the comment period or at a hearing.

(e) If the Regional Administrator has given notice to the Director under paragraph (d) of this section, he shall submit to the Director, within 90 days of receipt of the public notice, draft general permit, or Director's response (§ 233.31(a)), a written statement of his comments, objections, or recommendations; the reasons for the comments, objections, or recommendations; and the actions that must be taken by the Director in order to eliminate any objections. Any such objection shall be based on the Regional Administrator's determination that the proposed permit is (1) the subject of an interstate dispute under § 233.31(a) and/or (2) outside requirements of the Act, these regulations, or the 404(b)(1) Guidelines. The Regional Administrator shall make available upon request a copy of any comment, objection, or recommendation on a permit application or draft general permit to the permit applicant or to the public.

(f) When the Director has received an EPA objection or requirement for a permit condition to a permit application or draft general permit under this section, he shall not issue the permit unless he has taken the steps required by the Regional Administrator to eliminate the objection.

USA Addendum 39a

USCA Case #24-5101    Document #2074893    Filed: 09/16/2024    Page 42 of 65

(g) Within 90 days of receipt by the Director of an objection or requirement for a permit condition by the Regional Administrator, the State or any interested person may request that the Regional Administrator hold a public hearing on the objection or requirement. The Regional Administrator shall conduct a public hearing whenever requested by the State proposing to issue the permit, or if warranted by significant public interest based on requests received.

(h) If a public hearing is held under paragraph (g) of this section, the Regional Administrator shall, following that hearing, reaffirm, modify or withdraw the objection or requirement for a permit condition, and notify the Director of this decision.

(1) If the Regional Administrator withdraws his objection or requirement for a permit condition, the Director may issue the permit.

(2) If the Regional Administrator does not withdraw the objection or requirement for a permit condition, the Director must issue a permit revised to satisfy the Regional Administrator's objection or requirement for a permit condition or notify EPA of its intent to deny the permit within 30 days of receipt of the Regional Administrator's notification.

(i) If no public hearing is held under paragraph (g) of this section, the Director within 90 days of receipt of the objection or requirement for a permit condition shall either issue the permit revised to satisfy EPA's objections or notify EPA of its intent to deny the permit.

(j) In the event that the Director neither satisfies EPA's objections or requirement for a permit condition nor denies the permit, the Secretary shall process the permit application.

**Credits**
[53 FR 41649, Oct. 24, 1988]

SOURCE: 53 FR 20776, 20777, 20779, 20780, 20782, 20783, June 6, 1988; 59 FR 9933, March 2, 1994, unless otherwise noted.

AUTHORITY: 33 U.S.C. 1251 et seq.

USA Addendum 40a

Code of Federal Regulations
   Title 40. Protection of Environment
      Chapter I. Environmental Protection Agency (Refs & Annos)
         Subchapter H. Ocean Dumping
            Part 233. 404 State Program Regulations (Refs & Annos)
               Subpart F. Federal Oversight

40 C.F.R. § 233.51

§ 233.51 Waiver of review.

Currentness

(a) The MOA with the Regional Administrator shall specify the categories of discharge for which EPA will waive Federal review of State permit applications. After program approval, the MOA may be modified to reflect any additions or deletions of categories of discharge for which EPA will waive review. The Regional Administrator shall consult with the Corps, FWS, and NMFS prior to specifying or modifying such categories.

(b) With the following exceptions, any category of discharge is eligible for consideration for waiver:

(1) Draft general permits;

(2) Discharges with reasonable potential for affecting endangered or threatened species as determined by FWS;

(3) Discharges with reasonable potential for adverse impacts on waters of another State;

(4) Discharges known or suspected to contain toxic pollutants in toxic amounts (section 101(a)(3) of the Act) or hazardous substances in reportable quantities (section 311 of the Act);

(5) Discharges located in proximity of a public water supply intake;

USA Addendum 41a

(6) Discharges within critical areas established under State or Federal law, including but not limited to National and State parks, fish and wildlife sanctuaries and refuges, National and historical monuments, wilderness areas and preserves, sites identified or proposed under the National Historic Preservation Act, and components of the National Wild and Scenic Rivers System.

(c) The Regional Administrator retains the right to terminate a waiver as to future permit actions at any time by sending the Director written notice of termination.

SOURCE: 53 FR 20776, 20777, 20779, 20780, 20782, 20783, June 6, 1988; 59 FR 9933, March 2, 1994, unless otherwise noted.

AUTHORITY: 33 U.S.C. 1251 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   USA Addendum 42a   2

Code of Federal Regulations
　　Title 50. Wildlife and Fisheries
　　　　Chapter IV. Joint Regulations (United States Fish and Wildlife Service, Department of
　　　　the Interior and National Marine Fisheries Service, National Oceanic and Atmospheric
　　　　Administration, Department of Commerce); Endangered Species Committee Regulations
　　　　　Subchapter A
　　　　　　Part 402. Interagency Cooperation—Endangered Species Act of 1973, as Amended
　　　　　　(Refs & Annos)
　　　　　　　Subpart A. General

50 C.F.R. § 402.02

§ 402.02 Definitions.

Effective: May 6, 2024
Currentness

Act means the Endangered Species Act of 1973, as amended, 16 U.S.C. 1531 et seq.

Action means all activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal agencies in the United States or upon the high seas. Examples include, but are not limited to:

(a) actions intended to conserve listed species or their habitat;

(b) the promulgation of regulations;

(c) the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants-in-aid; or

(d) actions directly or indirectly causing modifications to the land, water, or air.

Action area means all areas to be affected directly or indirectly by the Federal action and not merely the immediate area involved in the action.

Applicant refers to any person, as defined in section 3(13) of the Act, who requires formal approval or authorization from a Federal agency as a prerequisite to conducting the action.

**USA Addendum 43a**

Biological assessment refers to the information prepared by or under the direction of the Federal agency concerning listed and proposed species and designated and proposed critical habitat that may be present in the action area and the evaluation potential effects of the action on such species and habitat.

Biological opinion is the document that states the opinion of the Service as to whether or not the Federal action is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat.

Conference is a process which involves informal discussions between a Federal agency and the Service under section 7(a)(4) of the Act regarding the impact of an action on proposed species or proposed critical habitat and recommendations to minimize or avoid the adverse effects.

Conservation recommendations are suggestions of the Service regarding discretionary measures to minimize or avoid adverse effects of a proposed action on listed species or critical habitat or regarding the development of information.

Critical habitat refers to an area designated as critical habitat listed in 50 CFR parts 17 or 226.

Cumulative effects are those effects of future State or private activities, not involving Federal activities, that are reasonably certain to occur within the action area of the Federal action subject to consultation.

Designated non-Federal representative refers to a person designated by the Federal agency as its representative to conduct informal consultation and/or to prepare any biological assessment.

Destruction or adverse modification means a direct or indirect alteration that appreciably diminishes the value of critical habitat as a whole for the conservation of a listed species.

Director refers to the Assistant Administrator for Fisheries for the National Marine Fisheries Service, or his or her authorized representative; or the Director of the U.S. Fish and Wildlife Service, or his or her authorized representative.

Early consultation is a process requested by a Federal agency on behalf of a prospective applicant under section 7(a)(3) of the Act.

Effects of the action are all consequences to listed species or critical habitat that are caused by the proposed action, including the consequences of other activities that are caused by the proposed action but that are not part of the action. A consequence is caused by the proposed action if it would not occur but for the proposed action and it is reasonably certain to occur. Effects of the

USA Addendum 44a

action may occur later in time and may include consequences occurring outside the immediate area involved in the action.

Environmental baseline refers to the condition of the listed species or its designated critical habitat in the action area, without the consequences to the listed species or designated critical habitat caused by the proposed action. The environmental baseline includes the past and present impacts of all Federal, State, or private actions and other human activities in the action area, the anticipated impacts of all proposed Federal projects in the action area that have already undergone formal or early section 7 consultation, and the impact of State or private actions which are contemporaneous with the consultation in process. The impacts to listed species or designated critical habitat from Federal agency activities or existing Federal agency facilities that are not within the agency's discretion to modify are part of the environmental baseline.

Formal consultation is a process between the Service and the Federal agency that commences with the Federal agency's written request for consultation under section 7(a)(2) of the Act and concludes with the Service's issuance of the biological opinion under section 7(b)(3) of the Act.

Framework programmatic action means, for purposes of an incidental take statement, a Federal action that approves a framework for the development of future action(s) that are authorized, funded, or carried out at a later time, and any take of a listed species would not occur unless and until those future action(s) are authorized, funded, or carried out and subject to further section 7 consultation.

Incidental take refers to takings that result from, but are not the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant.

Informal consultation is an optional process that includes all discussions, correspondence, etc., between the Service and the Federal agency or the designated non-Federal representative prior to formal consultation, if required.

Jeopardize the continued existence of means to engage in an action that reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species.

Listed species means any species of fish, wildlife, or plant which has been determined to be endangered or threatened under section 4 of the Act. Listed species are found in 50 CFR 17.11–17.12.

USA Addendum 45a

Major construction activity is a construction project (or other undertaking having similar physical impacts) which is a major Federal action significantly affecting the quality of the human environment as referred to in the National Environmental Policy Act [NEPA, 42 U.S.C. 4332(2) (C)].

Mixed programmatic action means, for purposes of an incidental take statement, a Federal action that approves action(s) that will not be subject to further section 7 consultation, and also approves a framework for the development of future action(s) that are authorized, funded, or carried out at a later time and any take of a listed species would not occur unless and until those future action(s) are authorized, funded, or carried out and subject to further section 7 consultation.

Preliminary biological opinion refers to an opinion issued as a result of early consultation.

Programmatic consultation is a consultation addressing an agency's multiple actions on a program, region, or other basis. Programmatic consultations allow the Services to consult on the effects of programmatic actions such as:

(1) Multiple similar, frequently occurring, or routine actions expected to be implemented in particular geographic areas; and

(2) A proposed program, plan, policy, or regulation providing a framework for future proposed actions.

Proposed critical habitat means habitat proposed in the Federal Register to be designated or revised as critical habitat under section 4 of the Act for any listed or proposed species.

Proposed species means any species of fish, wildlife, or plant that is proposed in the Federal Register to be listed under section 4 of the Act.

Reasonable and prudent alternatives refer to alternative actions identified during formal consultation that can be implemented in a manner consistent with the intended purpose of the action, that can be implemented consistent with the scope of the Federal agency's legal authority and jurisdiction, that is economically and technologically feasible, and that the Director believes would avoid the likelihood of jeopardizing the continued existence of listed species or resulting in the destruction or adverse modification of critical habitat.

Reasonable and prudent measures refer to those actions the Director considers necessary or appropriate to minimize the impact of the incidental take on the species.

USA Addendum 46a

Recovery means improvement in the status of listed species to the point at which listing is no longer appropriate under the criteria set out in section 4(a)(1) of the Act.

Service means the U.S. Fish and Wildlife Service or the National Marine Fisheries Service, as appropriate.

**Credits**
[73 FR 76286, Dec. 16, 2008; 74 FR 20422, May 4, 2009; 80 FR 26844, May 11, 2015; 81 FR 7225, Feb. 11, 2016; 84 FR 45016, Aug. 27, 2019; 84 FR 50333, Sept. 25, 2019; 89 FR 24297, April 5, 2024]

SOURCE: 51 FR 19957, June 3, 1986, unless otherwise noted.

AUTHORITY: 16 U.S.C. 1531 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

---

End of Document
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2024 Thomson Reuters. No claim to original U.S. Government Works. **USA Addendum 47a**

Code of Federal Regulations
  Title 50. Wildlife and Fisheries
    Chapter IV. Joint Regulations (United States Fish and Wildlife Service, Department of
    the Interior and National Marine Fisheries Service, National Oceanic and Atmospheric
    Administration, Department of Commerce); Endangered Species Committee Regulations
      Subchapter A
        Part 402. Interagency Cooperation—Endangered Species Act of 1973, as Amended
        (Refs & Annos)
          Subpart B. Consultation Procedures

50 C.F.R. § 402.14

§ 402.14 Formal consultation.

Effective: May 6, 2024
Currentness

(a) Requirement for formal consultation. Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat. If such a determination is made, formal consultation is required, except as noted in paragraph (b) of this section. The Director may request a Federal agency to enter into consultation if he identifies any action of that agency that may affect listed species or critical habitat and for which there has been no consultation. When such a request is made, the Director shall forward to the Federal agency a written explanation of the basis for the request.

(b) Exceptions.

(1) A Federal agency need not initiate formal consultation if, as a result of the preparation of a biological assessment under § 402.12 or as a result of informal consultation with the Service under § 402.13, the Federal agency determines, with the written concurrence of the Director, that the proposed action is not likely to adversely affect any listed species or critical habitat.

(2) A Federal agency need not initiate formal consultation if a preliminary biological opinion, issued after early consultation under § 402.11, is confirmed as the final biological opinion.

USA Addendum 48a

(c) Initiation of formal consultation.

(1) A written request to initiate formal consultation shall be submitted to the Director and shall include:

(i) A description of the proposed action, including any measures intended to avoid, minimize, or offset effects of the action. Consistent with the nature and scope of the proposed action, the description shall provide sufficient detail to assess the effects of the action on listed species and critical habitat, including:

(A) The purpose of the action;

(B) The duration and timing of the action;

(C) The location of the action;

(D) The specific components of the action and how they will be carried out;

(E) Maps, drawings, blueprints, or similar schematics of the action; and

(F) Any other available information related to the nature and scope of the proposed action relevant to its effects on listed species or designated critical habitat.

(ii) A map or description of all areas to be affected directly or indirectly by the Federal action, and not merely the immediate area involved in the action (i.e., the action area as defined at § 402.02).

(iii) Information obtained by or in the possession of the Federal agency and any applicant on the listed species and designated critical habitat in the action area (as required by paragraph (c)(1)(ii) of this section), including available information such as the presence, abundance, density, or periodic occurrence of listed species and the condition and location of the species' habitat, including any critical habitat.

USA Addendum 49a

(iv) A description of the effects of the action and an analysis of any cumulative effects.

(v) A summary of any relevant information provided by the applicant, if available.

(vi) Any other relevant available information on the effects of the proposed action on listed species or designated critical habitat, including any relevant reports such as environmental impact statements and environmental assessments.

(2) A Federal agency may submit existing documents prepared for the proposed action such as NEPA analyses or other reports in substitution for the initiation package outlined in this paragraph (c). However, any such substitution shall be accompanied by a written summary specifying the location of the information that satisfies the elements above in the submitted document(s).

(3) Formal consultation shall not be initiated by the Federal agency until any required biological assessment has been completed and submitted to the Director in accordance with § 402.12.

(4) Any request for formal consultation may encompass, subject to the approval of the Director, a number of similar individual actions within a given geographical area, a programmatic consultation, or a segment of a comprehensive plan. The provision in this paragraph (c)(4) does not relieve the Federal agency of the requirements for considering the effects of the action or actions as a whole.

(d) Responsibility to provide best scientific and commercial data available. The Federal agency requesting formal consultation shall provide the Service with the best scientific and commercial data available or which can be obtained during the consultation for an adequate review of the effects that an action may have upon listed species or critical habitat. This information may include the results of studies or surveys conducted by the Federal agency or the designated non-Federal representative. The Federal agency shall provide any applicant with the opportunity to submit information for consideration during the consultation.

(e) Duration and extension of formal consultation. Formal consultation concludes within 90 days after its initiation unless extended as provided below. If an applicant is not involved, the Service and the Federal agency may mutually agree to extend the consultation for a specific time period. If an applicant is involved, the Service and the Federal agency may mutually agree to extend the consultation provided that the Service submits to the applicant, before the close of the 90 days, a written statement setting forth:

(1) The reasons why a longer period is required,

(2) The information that is required to complete the consultation, and

(3) The estimated date on which the consultation will be completed.

A consultation involving an applicant cannot be extended for more than 60 days without the consent of the applicant. Within 45 days after concluding formal consultation, the Service shall deliver a biological opinion to the Federal agency and any applicant.

(f) Additional data. When the Service determines that additional data would provide a better information base from which to formulate a biological opinion, the Director may request an extension of formal consultation and request that the Federal agency obtain additional data to determine how or to what extent the action may affect listed species or critical habitat. If formal consultation is extended by mutual agreement according to § 402.14(e), the Federal agency shall obtain, to the extent practicable, that data which can be developed within the scope of the extension. The responsibility for conducting and funding any studies belongs to the Federal agency and the applicant, not the Service. The Service's request for additional data is not to be construed as the Service's opinion that the Federal agency has failed to satisfy the information standard of section 7(a)(2) of the Act. If no extension of formal consultation is agreed to, the Director will issue a biological opinion using the best scientific and commercial data available.

(g) Service responsibilities. Service responsibilities during formal consultation are as follows:

(1) Review all relevant information provided by the Federal agency or otherwise available. Such review may include an on-site inspection of the action area with representatives of the Federal agency and the applicant.

USA Addendum 51a

(2) Evaluate the current status and environmental baseline of the listed species or critical habitat.

(3) Evaluate the effects of the action and cumulative effects on the listed species or critical habitat.

(4) Add the effects of the action and cumulative effects to the environmental baseline and in light of the status of the species and critical habitat, formulate the Service's opinion as to whether the action is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat.

(5) Discuss with the Federal agency and any applicant the Service's review and evaluation conducted under paragraphs (g)(1)–(3) of this section, the basis for any finding in the biological opinion, and the availability of reasonable and prudent alternatives (if a jeopardy opinion is to be issued) that the agency and the applicant can take to avoid violation of section 7(a)(2). The Service will utilize the expertise of the Federal agency and any applicant in identifying these alternatives. If requested, the Service shall make available to the Federal agency the draft biological opinion for the purpose of analyzing the reasonable and prudent alternatives. The 45–day period in which the biological opinion must be delivered will not be suspended unless the Federal agency secures the written consent of the applicant to an extension to a specific date. The applicant may request a copy of the draft opinion from the Federal agency. All comments on the draft biological opinion must be submitted to the Service through the Federal agency, although the applicant may send a copy of its comments directly to the Service. The Service will not issue its biological opinion prior to the 45–day or extended deadline while the draft is under review by the Federal agency. However, if the Federal agency submits comments to the Service regarding the draft biological opinion within 10 days of the deadline for issuing the opinion, the Service is entitled to an automatic 10–day extension on the deadline.

(6) Formulate discretionary conservation recommendations, if any, which will assist the Federal agency in reducing or eliminating the impacts that its proposed action may have on listed species or critical habitat.

(7) Formulate a statement concerning incidental take, if such take is reasonably certain to occur.

USA Addendum 52a

(8) In formulating its biological opinion, any reasonable and prudent alternatives, and any reasonable and prudent measures, the Service will use the best scientific and commercial data available and will give appropriate consideration to any beneficial actions as proposed or taken by the Federal agency or applicant, including any actions taken prior to the initiation of consultation. Measures included in the proposed action or a reasonable and prudent alternative that are intended to avoid, minimize, or offset the effects of an action are considered like other portions of the action and do not require any additional demonstration of binding plans.

(h) *Biological opinions.*

(1) The biological opinion shall include:

(i) A summary of the information on which the opinion is based;

(ii) A detailed discussion of the environmental baseline of the listed species and critical habitat;

(iii) A detailed discussion of the effects of the action on listed species or critical habitat; and

(iv) The Service's opinion on whether the action is:

(A) Likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat (a "jeopardy" biological opinion); or

(B) Not likely to jeopardize the continued existence of a listed species or result in the destruction or adverse modification of critical habitat (a "no jeopardy" biological opinion).

(2) A "jeopardy" biological opinion shall include reasonable and prudent alternatives, if any. If the Service is unable to develop such alternatives, the Service will indicate that to the best of its knowledge there are no reasonable and prudent alternatives.

USA Addendum 53a

(3) The Service may adopt all or part of:

(i) A Federal agency's initiation package; or

(ii) The Service's analysis required to issue a permit under section 10(a) of the Act in its biological opinion.

(4) A Federal agency and the Service may agree to follow an optional collaborative process that would further the ability of the Service to adopt the information and analysis provided by the Federal agency during consultation in the development of the Service's biological opinion to improve efficiency in the consultation process and reduce duplicative efforts. The Federal agency and the Service shall consider the nature, size, and scope of the action or its anticipated effects on listed species or critical habitat, and other relevant factors to determine whether an action or a class of actions is appropriate for this process. The Federal agency and the Service may develop coordination procedures that would facilitate adoption of the initiation package with any necessary supplementary analyses and incidental take statement to be added by the Service, if appropriate, as the Service's biological opinion in fulfillment of section 7(b) of the Act.

(i) *Incidental take.*

(1) In those cases where the Service concludes that an action (or the implementation of any reasonable and prudent alternatives) and the resultant incidental take of listed species will not violate section 7(a)(2), and, in the case of marine mammals, where the taking is authorized pursuant to section 101(a)(5) of the Marine Mammal Protection Act of 1972, the Service will provide with the biological opinion a statement concerning incidental take that:

(i) Specifies the impact of incidental taking as the amount or extent of such taking. A surrogate (e.g., similarly affected species or habitat or ecological conditions) may be used to express the amount or extent of anticipated take, provided that the biological opinion or incidental take statement: Describes the causal link between the surrogate and take of the listed species, explains why it is not practical to express the amount or extent of anticipated take or to monitor take-related impacts in terms of individuals of the listed species, and sets a clear standard for determining when the level of anticipated take has been exceeded;

USA Addendum 54a

(ii) Specifies those reasonable and prudent measures that the Director considers necessary or appropriate to minimize such impact of incidental taking on the species;

(iii) In the case of marine mammals, specifies those measures that are necessary to comply with section 101(a)(5) of the Marine Mammal Protection Act of 1972 and applicable regulations with regard to such taking;

(iv) Sets forth the terms and conditions (including, but not limited to, reporting requirements) that must be complied with by the Federal agency or any applicant to implement the measures specified under paragraphs (i)(1)(ii) and (iii) of this section; and

(v) Specifies the procedures to be used to handle or dispose of any individuals of a species actually taken.

(2) Reasonable and prudent measures, along with the terms and conditions that implement them, cannot alter the basic design, location, scope, duration, or timing of the action, may involve only minor changes, and may include measures implemented inside or outside of the action area that avoid, reduce, or offset the impact of incidental take.

(3) Priority should be given to developing reasonable and prudent measures and terms and conditions that avoid or reduce the amount or extent of incidental taking anticipated to occur within the action area. To the extent it is anticipated that the action will cause incidental take that cannot feasibly be avoided or reduced in the action area, the Services may set forth additional reasonable and prudent measures and terms and conditions that serve to minimize the impact of such taking on the species inside or outside the action area.

(4) In order to monitor the impacts of incidental take, the Federal agency or any applicant must report the progress of the action and its impact on the species to the Service as specified in the incidental take statement. The reporting requirements will be established in accordance with 50 CFR 13.45 and 18.27 for FWS and 50 CFR 216.105 and 222.301(h) for NMFS.

(5) If during the course of the action the amount or extent of incidental taking, as specified under paragraph (i)(1)(i) of this section, is exceeded, the Federal agency must reinitiate consultation immediately.

USA Addendum 55a

USCA Case #24-5101    Document #2074893    Filed: 09/16/2024    Page 58 of 65

(6) Any taking that is subject to a statement as specified in paragraph (i)(1) of this section and that is in compliance with the terms and conditions of that statement is not a prohibited taking under the Act, and no other authorization or permit under the Act is required.

(7) For a framework programmatic action, an incidental take statement is not required at the programmatic level; any incidental take resulting from any action subsequently authorized, funded, or carried out under the program will be addressed in subsequent section 7 consultation, as appropriate. For a mixed programmatic action, an incidental take statement is required at the programmatic level only for those program actions that are reasonably certain to cause take and are not subject to further section 7 consultation.

(j) Conservation recommendations. The Service may provide with the biological opinion a statement containing discretionary conservation recommendations. Conservation recommendations are advisory and are not intended to carry any binding legal force.

(k) Incremental steps. When the action is authorized by a statute that allows the agency to take incremental steps toward the completion of the action, the Service shall, if requested by the Federal agency, issue a biological opinion on the incremental step being considered, including its views on the entire action. Upon the issuance of such a biological opinion, the Federal agency may proceed with or authorize the incremental steps of the action if:

(1) The biological opinion does not conclude that the incremental step would violate section 7(a)(2);

(2) The Federal agency continues consultation with respect to the entire action and obtains biological opinions, as required, for each incremental step;

(3) The Federal agency fulfills its continuing obligation to obtain sufficient data upon which to base the final biological opinion on the entire action;

(4) The incremental step does not violate section 7(d) of the Act concerning irreversible or irretrievable commitment of resources; and

USA Addendum 56a

(5) There is a reasonable likelihood that the entire action will not violate section 7(a)(2) of the Act.

(l) Expedited consultations. Expedited consultation is an optional formal consultation process that a Federal agency and the Service may enter into upon mutual agreement. To determine whether an action or a class of actions is appropriate for this type of consultation, the Federal agency and the Service shall consider the nature, size, and scope of the action or its anticipated effects on listed species or critical habitat and other relevant factors. Conservation actions whose primary purpose is to have beneficial effects on listed species will likely be considered appropriate for expedited consultation.

(1) Expedited timelines. Upon agreement to use this expedited consultation process, the Federal agency and the Service shall establish the expedited timelines for the completion of this consultation process.

(2) Federal agency responsibilities. To request initiation of expedited consultation, the Federal agency shall provide all the information required to initiate consultation under paragraph (c) of this section. To maximize efficiency and ensure that it develops the appropriate level of information, the Federal agency is encouraged to develop its initiation package in coordination with the Service.

(3) Service responsibilities. In addition to the Service's responsibilities under the provisions of this section, the Service will:

(i) Provide relevant species information to the Federal agency and guidance to assist the Federal agency in completing its effects analysis in the initiation package; and

(ii) Conclude the consultation and issue a biological opinion within the agreed-upon timeframes.

(m) Termination of consultation.

(1) Formal consultation is terminated with the issuance of the biological opinion.

USA Addendum 57a

(2) If during any stage of consultation a Federal agency determines that its proposed action is not likely to occur, the consultation may be terminated by written notice to the Service.

(3) If during any stage of consultation a Federal agency determines, with the concurrence of the Director, that its proposed action is not likely to adversely affect any listed species or critical habitat, the consultation is terminated.

**Credits**
[54 FR 40350, Sept. 29, 1989; 73 FR 76287, Dec. 16, 2008; 74 FR 20423, May 4, 2009; 80 FR 26844, May 11, 2015; 84 FR 45016, Aug. 27, 2019; 84 FR 50333, Sept. 25, 2019; 89 FR 24297, April 5, 2024]

SOURCE: 51 FR 19957, June 3, 1986, unless otherwise noted.

AUTHORITY: 16 U.S.C. 1531 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

USA Addendum 58a

> Code of Federal Regulations
>   Title 50. Wildlife and Fisheries
>     Chapter IV. Joint Regulations (United States Fish and Wildlife Service, Department of the Interior and National Marine Fisheries Service, National Oceanic and Atmospheric Administration, Department of Commerce); Endangered Species Committee Regulations
>       Subchapter A
>         Part 402. Interagency Cooperation—Endangered Species Act of 1973, as Amended (Refs & Annos)
>           Subpart B. Consultation Procedures

50 C.F.R. § 402.16

§ 402.16 Reinitiation of consultation.

Effective: May 6, 2024
Currentness

(a) Reinitiation of consultation is required and shall be requested by the Federal agency, where discretionary Federal involvement or control over the action has been retained or is authorized by law and:

(1) If the amount or extent of taking specified in the incidental take statement is exceeded;

(2) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;

(3) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion or written concurrence; or

(4) If a new species is listed or critical habitat designated that may be affected by the identified action.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

(b) An agency shall not be required to reinitiate consultation after the approval of a land management plan prepared pursuant to 43 U.S.C. 1712 or 16 U.S.C. 1604 upon listing of a new species or designation of new critical habitat if the land management plan has been adopted by the agency as of the date of listing or designation, provided that any authorized actions that may affect the newly listed species or designated critical habitat will be addressed through a separate action-specific consultation. This exception to reinitiation of consultation shall not apply to those land management plans prepared pursuant to 16 U.S.C. 1604 if:

(1) Fifteen years have passed since the date the agency adopted the land management plan prepared pursuant to 16 U.S.C. 1604; and

(2) Five years have passed since the enactment of Public Law 115–141 [March 23, 2018] or the date of the listing of a species or the designation of critical habitat, whichever is later.

**Credits**
[84 FR 45017, Aug. 27, 2019; 84 FR 50333, Sept. 25, 2019; 89 FR 24298, April 5, 2024]

SOURCE: 51 FR 19957, June 3, 1986, unless otherwise noted.

AUTHORITY: 16 U.S.C. 1531 et seq.

Current through July 26, 2024, 89 FR 60789. Some sections may be more current. See credits for details.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

USA Addendum 60a

**62-331.053 Additional Conditions for Issuance of Individual Permits.**

In addition to the conditions in Rules 62-330.301 and 62-330.302, F.A.C., individual permits under this chapter are subject to the following conditions:

(1) No dredge or fill activity shall be permitted if there is a practicable alternative to the proposed activity which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences. The Agency shall require the applicant to submit an alternatives analysis completed in accordance with the provisions below. Guidance for completing an alternatives analysis is in Appendix C of the 404 Handbook.

(a) For the purpose of this condition, practicable alternatives shall include, but shall not be limited to:

1. Activities which do not involve dredging or filling in state-assumed waters;

2. Locations where dredge or fill activities would have less adverse impact than the proposed project location, so long as the alternative does not have other significant adverse environmental consequences.

(b) An alternative is practicable if it is available and capable of being done after taking into consideration cost, existing technology, and logistics considering overall project purposes. If it is otherwise a practicable alternative, an area not presently owned by the applicant which could reasonably be obtained, utilized, expanded, or managed to fulfill the basic purpose of the proposed activity may be considered.

(c) Where the dredge or fill activity proposed within a special aquatic site does not require access or proximity to or siting within the special aquatic site to fulfill its basic purpose (i.e., is not "water dependent"), practicable alternatives that do not involve special aquatic sites are presumed to be available, unless clearly demonstrated otherwise. In addition, where a dredge or fill activity is proposed within a special aquatic site, all practicable alternatives to the proposed activity which do not involve dredging or filling within a special aquatic site are presumed to have less adverse impact on the aquatic ecosystem, unless clearly demonstrated otherwise.

(d) To the extent that practicable alternatives have been identified and evaluated under the Coastal Zone Management Program, a CWA section 208 program, or other planning process, such evaluation shall be considered by the Agency as part of the consideration of alternatives under this section. Where such evaluation does not contain all information required under this section, the additional information shall be provided to the Agency for review.

(2) The activity shall not significantly adversely affect the aesthetics of the aquatic ecosystem as they apply to the quality of life enjoyed by the general public and property owners as described in section 8.3.2 of the 404 Handbook.

(3) No permit shall be issued for the following:

(a) When the project is inconsistent with the requirements of this chapter and the 404 Handbook, including when the project:

1. Causes or contributes to violations of any applicable State water quality standard, except when temporarily within a mixing zone proposed by the applicant and approved by the Agency;

2. Causes or contributes to violations of any applicable water quality standard within other states or Tribal lands;

3. Violates any applicable toxic effluent standard or prohibition under section 307 of the CWA, 33 U.S.C. §1317 (2018), incorporated herein (https://www.flrules.org/Gateway/reference.asp?No=Ref-12065), or state law;

4. Jeopardizes the continued existence of endangered or threatened species, or results in the likelihood of the destruction or adverse modification of a habitat which is determined by the Secretary of Interior or Commerce, as appropriate, to be a critical habitat for endangered or threatened species. Compliance with any requirements resulting from consultation with, or technical assistance by, the Florida Fish & Wildlife Conservation Commission, the U.S. Fish & Wildlife Service, and the National Marine Fisheries Service for purposes of the State 404 Program, and review, as it pertains to endangered or threatened species, by the U.S. Environmental Protection Agency as described in subsection 62-331.052(2), F.A.C., shall be determinative for purposes of evaluating violations of this subparagraph. If an exemption has been granted by the Endangered Species Committee, the terms of such exemption shall apply in lieu of this subparagraph;

5. Violates any requirement imposed by the Secretary of Commerce to protect any area designated as a marine sanctuary.

6. Causes or contributes to significant degradation of wetlands or other surface waters. Effects contributing to significant degradation considered individually or collectively, include:

i. Significant adverse effects on human health or welfare, including but not limited to, effects on municipal water supplies, plankton, fish, shellfish, wildlife, and special aquatic sites;

ii. Significant adverse effects on life stages of aquatic life and other wildlife dependent on aquatic ecosystems, including the transfer, concentration, and spread of pollutants or their by-products outside of the project site through biological, physical, and

chemical processes;

iii. Significant adverse effects on aquatic ecosystem diversity, productivity, and stability. Such effects may include, but are not limited to, loss of fish and wildlife habitat or loss of the capacity of a wetland to assimilate nutrients, purify water, or reduce wave energy; or

iv. Significant adverse effects on recreational, aesthetic, and economic values.

(b) When appropriate and practicable steps have not been taken to minimize potential adverse impacts of the activity on the aquatic ecosystem;

(c) When there does not exist sufficient information to make a reasonable judgement as to whether the proposed activity will comply with the requirements of this chapter;

(d) When the EPA has objected to issuance of the permit and the objection has not been resolved, or placed a requirement for a permit condition that has not been addressed, as described in paragraph 62-331.052(3)(b), F.A.C.;

(e) When the proposed dredge or fill activity would be in an area which has been prohibited, withdrawn, or denied as a disposal site by the EPA under section 404(c) of the CWA, or when the activity would fail to comply with a restriction imposed thereunder;

(f) If the Corps determines, after consultation with the Secretary of the Department in which the Coast Guard is operating, that anchorage and navigation of any of the navigable waters would be substantially impaired.

**Editor notes: The effective date of the rule will be the effective date of assumption, which is the date identified by EPA as published in the Federal Register §373.4146, F.S.**

*Rulemaking Authority 373.026(7), 373.043, 373.4131, 373.4135, 373.414(9), 373.4145, 373.4146(2), 403.805(1) FS. Law Implemented 373.4146 FS. History–New 12-22-20.*

**62-331.054 General Conditions for Individual Permits.**

(1) Individual permits shall contain the general conditions for individual permits in subsection 62-330.350(1), F.A.C., as applicable, and any specific conditions necessary to assure that the activities will be conducted in compliance with this Chapter, and in a manner which minimizes adverse impacts upon the physical, chemical, and biological integrity of wetlands or other surface waters, such as mitigation requirements and protection measures for listed species or historical resources.

(2) Individual permits shall contain the following conditions in addition to those described in subsection (1), above:

(a) The permittee shall comply with all conditions of the permit, even if that requires halting or reducing the permitted activity to maintain compliance. Any permit violation constitutes a violation of Part IV of Chapter 373, F.S., and this chapter, as well as a violation of the CWA.

(b) The permittee shall take all reasonable steps to prevent any unauthorized dredging or filling in violation of this permit.

(c) The permittee shall timely notify the Agency of any expected or known actual noncompliance.

(d) Upon Agency request, the permittee shall provide information necessary to determine compliance status, or whether cause exists for permit modification, revocation, or termination.

(e) Inspection and entry. The permittee shall allow the Agency, upon presentation of proper identification, at reasonable times to:

1. Enter upon the permittee's premises where a regulated activity is located or where records must be kept under the conditions of the permit,

2. Have access to and copy any records that must be kept under the conditions of the permit,

3. Inspect operations regulated or required under the permit, and

4. Sample or monitor, for the purposes of assuring permit compliance or as otherwise authorized by the CWA, any substances or parameters at any location.

**Editor notes: The effective date of the rule will be the effective date of assumption, which is the date identified by EPA as published in the Federal Register §373.4146, F.S.**

*Rulemaking Authority 373.026(7), 373.043, 373.4131, 373.4135, 373.414(9), 373.4145, 373.4146(2), 403.805(1) FS. Law Implemented 373.042, 373.409, 373.413, 373.4131, 373.4132, 373.4135, 373.4136, 373.414, 373.4141, 373.4142, 373.4145, 373.4146, 373.416, 373.426, 373.429, 704.06 FS. History–New 12-22-20.*