**No. 24-5101 (consolidated with Nos. 24-5156 and 24-5159)**

In the United States Court of Appeals
for the District of Columbia Circuit

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,
*Appellees/Cross-Appellants*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,
*Appellants/Cross-Appellees*,

STATE OF FLORIDA AND FLORIDA DEPARTMENT OF ENVIRONMENTAL
PROTECTION,
*Appellants/Cross-Appellees*.

On Appeal from the U.S. District Court for the District of Columbia
No. 1:21-CV-0119, District Judge Randolph D. Moss

**Brief for the State of Utah and 18 Other States as *Amici Curiae*
Supporting Appellants and Reversal**

Sean Reyes
*Utah Attorney General*

Stanford E. Purser
*Utah Solicitor General*
Jason L. DeForest
*Assistant Utah Attorney General*
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
(801) 366-0100

*Counsel for Amicus Curiae*
*State of Utah*

spurser@agutah.gov
jdeforest@agutah.gov

**Certificate as to Parties, Ruling(s), and Related Cases**

## I.    Parties and Amici

Except for amici states that have joined this brief, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Brief for the State of Florida and Florida Department of Environmental Protection.

## II.    Ruling Under Review

References to the ruling(s) at issue appear in the Brief for the State of Florida and Florida Department of Environmental Protection.

## III.   Related Cases

Amici curiae are not aware of any related cases as defined by D.C. Cir. Rule 28(a)(1) beyond the case referenced in the Brief for the State of Florida and Florida Department of Environmental Protection.

*/s/   Stanford E. Purser*
Stanford E. Purser
Utah Solicitor General

*Counsel for Amicus Curiae*
*State of Utah*

Dated: September 23, 2024

# Table of Contents

Certificate as to Parties, Ruling(s), and Related Cases ............................i

Table of Authorities.......................................................................iii

Glossary ........................................................................................ v

Statutes and Regulations............................................................... 1

Statement of Identity, Interest in Case, and Authority to File ............... 1

Introduction and Summary of Argument ................................. 2

Argument........................................................................................ 4

Conclusion ................................................................................... 12

Counsel for Amici Curiae States.................................................. 14

Certificate of Compliance............................................................ 16

Certificate of Service ................................................................... 17

# Table of Authorities

## Cases

*Arkansas v. Oklahoma,*
  503 U.S. 91 (1992) .................................................................. 3, 4

*Atlantic Richfield Co. v. Christian,*
  590 U.S. 1 (2020) .................................................................... 12

*California v. United States,*
  438 U.S. 645 (1978) .................................................................. 6

*City of Rancho Palos Verdes v. Abrams,*
  544 U.S. 113 (2005) .................................................................. 5

*Cooling Water Intake Structure Coal. v. EPA,*
  905 F.3d 49 (2nd Cir. 2018) ................................................. 8, 10

*EPA v. EME Homer City Generation, L.P.,*
  572 U.S. 489 (2014) ................................................................ 12

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
  599 U.S. 166 (2023) .................................................................. 7

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.,*
  452 U.S. 264 (1981) .................................................................. 6

*New York v. United States,*
  505 U.S. 144, (1992) .............................................................. 4, 5

*Schaffer ex rel. Schaffer v. Weast,*
  546 U.S. 49 (2005) .................................................................... 5

*Texas v. New Mexico,*
  144 S. Ct. 1756 (2024) ............................................................ 11

*Wisconsin Dep't of Health & Fam. Servs. v. Blumer*,
    534 U.S. 473 (2002) ..........................................................5, 9

**Statutes**

16 U.S.C. § 1531(a)(5).............................................................8

16 U.S.C. § 1531(c)(2) ..........................................................8, 9

16 U.S.C. § 1604 ...................................................................7

33 U.S.C. § 1251(a) ..............................................................3, 7

33 U.S.C. § 1251(b) ..............................................................7, 9

42 U.S.C. § 4331 ...................................................................6

43 U.S.C. § 1712 ...................................................................6

**Other Authorities**

Jonathan H. Adler, *Jurisdictional Mismatch in Environmental
    Federalism*,
    14 N.Y.U. ENVTL. L.J. 130 (2005) .......................................11

*Cooperative Endangered Species Conservation Fund Grants (Section
    6 of the Endangered Species Act), available at*
    https://www.fws.gov/sites/default/files/documents/2024-07/section-
    6-fact-sheet-july-2024.pdf ....................................................8

# Glossary

| | |
|---|---|
| CWA | Clean Water Act |
| EPA | Environmental Protection Agency |
| ESA | Endangered Species Act |
| Federal Defendants | EPA, Fish & Wildlife, U.S. Army Corps of Engineers, and other named federal officials |
| Florida | State of Florida and Florida Department of Environmental Protection |
| FLPMA | Federal Land Policy and Management Act |
| NEPA | National Environmental Policy Act |
| NFMA | National Forest Management Act |
| Section 7 | Section 7 of the ESA, 16 U.S.C. § 1536 |
| Section 10 | Section 10 of the ESA, 16 U.S.C. § 1539 |
| Section 402 | Section 402 of the CWA, 33 U.S.C. § 1342 |
| Section 404 | Section 404 of the CWA, 33 U.S.C. § 1344 |
| Service | United States Fish and Wildlife Service |

**Statutes and Regulations**

All applicable statutes, regulations, and authorities are contained in the Brief for the State of Florida and Florida Department of Environmental Protection.

**Statement of Identity, Interest in Case, and Authority to File**

*Amici curiae* are the States of Utah, Alabama, Alaska, Arkansas, Idaho, Iowa, Kentucky, Louisiana, Mississippi, Montana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Virginia, West Virginia, and Wyoming. *Amici* have a profound interest in environmental cases like this that involve federal statutory programs based on cooperative federalism. Under those programs, the States and the Federal Government work together in harmony for the good of the people and our environment. But the decision below undercuts these cooperative goals and benefits by making States' participation nearly impossible.

In short, the district court overturned a permitting system developed by Florida, with the approval and oversight of the Environmental Protection Agency ("EPA"), under Section 404 of the Clean Water Act ("CWA"). As part of that permitting system, federal and state agencies collaborate to ensure the protection of species listed under the Endangered Species Act ("ESA"). The district court ignored the

1

extensive cooperative processes required to develop and implement such a system, finding instead that the ESA requires outright guesswork as to the location and effect of dredging and filling on endangered species throughout Florida. These findings are inconsistent with the ESA and seriously damage our system of cooperative federalism.

Cooperation and coordination between state and federal agencies are critical to ensure a functioning environmental law system. The decision below runs roughshod over those principles. The Court should reverse the decision and restore the States' rightful place in our cooperative federalism program.

Amici States may file this brief under Federal Rule of Appellate Procedure 29(a)(2).

## Introduction and Summary of Argument

The case involves far-reaching consequences for the continued administration of environmental law. The federal CWA creates a wetland permit program under Section 404 for dredging and filling the Nation's surface waters. This necessarily requires a partnership between the States and the Federal Government, with a shared objective recognized by the CWA – "'to restore and maintain the chemical, physical, and

biological integrity of the Nation's waters.'" *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992) (quoting 33 U.S.C. § 1251(a)). For its part, Florida built its own Section 404 program, upholding its end of the partnership and reducing inefficiencies in the administration of permitting. EPA approved the program in 2020, and Florida processed thousands of permit applications under EPA oversight.

The permitting process, however, requires consultation with federal agencies over the program's effect on listed species and critical habitats under Section 7 of the ESA. Considering the comprehensive nature of Florida's permitting program, the federal agencies engaged in a programmatic consultation, with a binding technical assistance process wherein federal and state agencies collaborate to evaluate the effect individual projects have on listed species. By all measures, this process exemplifies the utility and value of cooperative federalism to a functioning system of environmental law. Indeed, it mirrors multiple other programs designed to effectively and efficiently address environmental issues throughout the nation.

The district court ignored this critical concept and deprived Florida of the ability to conduct state-run wetlands permit programs. In the

process, it severely constrains ESA consultation and questions federal and state agencies' ability to rely on settled science. Cooperative federalism and its value to environmental regulation cannot survive such decisions. The Court should reverse the district court's decision.

Amici States submit this brief to highlight a few simple, yet significant, consequences of the district court's decision that are particularly troubling from the States' perspective. Specifically, the lower court's decision fails to account for, and threatens to undermine, myriad federal and state agencies that govern environmental regulation through a system of cooperative federalism. For these reasons, if there were any doubt that reversal is in order, these stark, avoidable, and far-reaching consequences should resolve that doubt in favor of reversal.

## Argument

Conceptually, the phrase "cooperative federalism" is not complex. It denotes a form of shared governance among and between the Federal Government and States, tribes, and local governments. Essentially, it "anticipates a partnership between the States and the Federal Government, animated by a shared objective." *New York v. United States*, 505 U.S. 144, 167, (1992) (quoting *Arkansas*, 503 U.S. at 101). In practice,

it usually involves federal agencies working with the States and their political subdivisions to implement federal laws and programs. But the concept and its attendant values are too often undermined by political influences and judicial decisions like the one below.

Cooperative federalism undergirds numerous federal statutory schemes, both within environmental law and without. *See, e.g.*, *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (the Individuals with Disabilities Education Act "is frequently described as a model of cooperative federalism" (internal quotation marks omitted)); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 128 (2005) (Breyer, J., concurring) (in the Telecommunications Act of 1996, Congress adopted "a system based on cooperative federalism," where "[s]tate and local authorities would remain free to make siting decisions . . . subject to minimum federal standards—both substantive and procedural—as well as federal judicial review"); *Wisconsin Dep't of Health & Fam. Servs. v. Blumer*, 534 U.S. 473, 495 (2002) ("[T]he Medicaid statute . . . is designed to advance cooperative federalism."); *New York*, 505 U.S. at 167-68 (collecting examples of federal statutory schemes based on cooperative federalism, including the Clean Water Act, the Occupational Safety and

Health Act of 1970, the Resource Conservation and Recovery Act of 1976, and the Alaska National Interest Lands Conservation Act); *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 289 (1981) ("[T]he Surface Mining Act establishes a program of cooperative federalism that allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs."); *California v. United States*, 438 U.S. 645, 650 (1978) ("If the term 'cooperative federalism' had been in vogue in 1902, the Reclamation Act of that year would surely have qualified as a leading example of it.").

Cooperative federalism is also a critical component of day-to-day public land management under statutes like the National Environmental Policy Act ("NEPA"), the Federal Land Policy and Management Act ("FLPMA"), and the National Forest Management Act ("NFMA"). *See* 42 U.S.C. § 4331 (recognizing the "continuing policy of the Federal Government, in cooperation with State and local governments . . . to create and maintain conditions under which man and nature can exist in productive harmony"); 43 U.S.C. § 1712 (stating federal land use plans "shall be consistent with State and local plans to the maximum extent

[the Agency] finds consistent with Federal law and the purposes of this Act"); 16 U.S.C. § 1604 (requiring the Forest Service to coordinate land resource plans with the management planning processes of State and local governments). The concept envisioned by these statutes is exceedingly simple, yet critically important: "Cooperative federalism" is "federal and state actors working together." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 182 (2023). The district court's decision significantly undermines the foundation of this concept.

At issue in this case, the CWA expressly states congressional policy "to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources, and to consult with the Administrator in the exercise of his authority under this chapter." 33 U.S.C. § 1251(b). This policy is animated by a shared objective for the States and the Federal Government "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Id.* at § 1251(a).

Similarly, the ESA encourages "the States and other interested

parties, through Federal financial assistance and a system of incentives, to develop and maintain conservation programs which meet national and international standards . . . to better safeguard[], for the benefit of all citizens, the Nation's heritage in fish, wildlife, and plants." 16 U.S.C. §1531(a)(5). Moreover, "[i]t is further declared to be the policy of Congress that Federal agencies *shall* cooperate with State and local agencies to resolve water resource issues in concert with conservation of endangered species." *Id.* § 1531(c)(2) (emphasis added). Cooperative federalism in this context is therefore *mandated* by the ESA, a point the district court outright ignores.

Utah and other similarly situated states have shouldered their sovereign responsibilities to regulate within their borders and harnessed their unique knowledge of their citizens to advance the best policy for their States. *See, e.g.*, *Cooling Water Intake Structure Coal. v. EPA*, 905 F.3d 49, 59 n.2 (2nd Cir. 2018) (discussing the 47 states involved in the 402 permitting processes). *See also Cooperative Endangered Species Conservation Fund Grants (Section 6 of the Endangered Species Act)*, *available at* https://www.fws.gov/sites/default/files/documents/2024-07/section-6-fact-sheet-july-2024.pdf (summarizing allocations of $62.34

million to States and Territories, pursuant to Section 6 of the ESA, to implement conservation projects). That is by design. As the U.S. Supreme Court has explained, "[w]hen interpreting [statutes embodying cooperative federalism], we have not been reluctant to leave a range of permissible choices to the States, at least where the superintending federal agency has concluded that such latitude is consistent with the statute's aims." *Wisconsin Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 495 (2002). That is uniquely true in environmental regulation.

The district court's decision, however, threatens to transform this cooperative federalism system into an empty promise. Indeed, the district court fails to mention the cited provisions of the CWA or the ESA, despite express commitments within those statutes to cooperative federalism. 16 U.S.C. § 1531(c)(2); 33 U.S.C. § 1251(b). The decision therefore ignores statutory language, with tremendous implications beyond this case.

As to the 404 program itself, the District Court's approach severely hinders the ability of other States to pursue 404 assumption. The district court's approach makes no sense and places onerous burdens on the states and federal agencies. That's especially true about the court's required "species-specific analysis" of all possible section 404 impacts at

the front-end of the program approval (as opposed to the more logical and realistic programmatic approach Florida used of evaluating those impacts on a project-specific basis during program implementation).

While Amici are not currently engaged in the 404 permitting processes, they are involved in permitting under Section 402 of the CWA. Essentially, "[t]he standards promulgated under CWA sections 301, 306, and 316(b) are implemented by permits issued through the National Pollutant Discharge Elimination System ('NPDES'). . . . NPDES permits are issued by the EPA or, if the EPA has approved a State's permitting program, by the Director of the NPDES program for the State." *Cooling Water*, 905 F.3d at 59-60. As of 2018, forty-seven states operated and/or had approval from the EPA for an NPDES permitting program. *Id.* at 59 n.2. Like Section 404 permitting, the breadth and complexity of these Section 402 permitting programs requires programmatic-level consultation under the ESA. *Id.* at 73 n.15. The district court calls into question this reasoning, undermining the concept of cooperative federalism and implicating *Amici's* interests in maintaining Section 402 permitting processes.

The district court's reasoning also threatens to undermine the value of decentralized responsibility for environmental concerns and local ecological knowledge. Environmental concerns vary widely throughout the United States, particularly in areas like the arid west. *See, e.g.*, Jonathan H. Adler, *Jurisdictional Mismatch in Environmental Federalism*, 14 N.Y.U. ENVTL. L.J. 130, 136 (2005) (arguing "[a]n overly centralized environmental regulatory system is itself an 'affront to nature.'"). It is therefore extremely difficult, if not impossible, to craft a one-size-fits-all framework for environmental regulation. Enter cooperative federalism—a system whereby local governments can account for local environmental regulation with continued federal oversight. The district court's decision calls into question that system, suggesting that States cannot be trusted with matters of significant environmental concern even after they have demonstrated their ability to do so. This is extraordinarily frustrating for States with established records of protecting their natural environment.

Put simply, upending congressional intent in the fashion advocated by the district court is not cooperative federalism. *See, e.g.*, *Texas v. New Mexico*, 144 S. Ct. 1756, 1785 (2024) (Gorsuch, J., dissenting). It is

instead an endorsement of "paternalistic central planning," *Atlantic Richfield Co. v. Christian*, 590 U.S. 1, 43 (2020) (Gorsuch, J., concurring in part and dissenting in part), which "turns [cooperative federalism] upside down, [by] recasting the statute's presumption in favor of cooperative federalism into a presumption of federal absolutism." *Id.* at 44; cf. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 537 (2014) (Scalia, J., dissenting) ("This remarkably expansive reasoning makes a hash of the Clean Air Act, transforming it from a program based on cooperative federalism to one of centralized federal control."). The district court should not be allowed to run roughshod over States' authorized regulation of their own internal affairs.

## Conclusion

The decision below seriously undermines the very notion of cooperative federalism. The Court should therefore reverse the summary judgment vacating EPA's approval and render summary judgment in favor of Florida and the Federal Defendants. Alternatively, if the Court disagrees with any element of the agency action, it should reverse the vacatur and instruct the district court to remand for the Federal Defendants to cure that error.

Respectfully submitted,

Sean D. Reyes
Utah Attorney General

*/s/Stanford E. Purser*

Stanford E. Purser
Utah Solicitor General
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111
385-382-4334
spurser@agutah.gov


Jason L. DeForest
Assistant Utah Attorneys General
1594 West North Temple, Ste. 300
Salt Lake City, Utah 84114
(801) 537-9801
jdeforest@agutah.gov

*Counsel for Amicus Curiae*
*State of Utah*

## Counsel for Amici Curiae States

Steve Marshall
Attorney General
State of Alabama

Treg R. Taylor
Attorney General
State of Alaska

Tim Griffin
Attorney General
State of Arkansas

Raúl Labrador
Attorney General
State of Idaho

Brenna Bird
Attorney General
State of Iowa

Russell Coleman
Attorney General
Commonwealth of Kentucky

Liz Murrill
Attorney General
State of Louisiana

Lynn Fitch
Attorney General
State of Mississippi

Austin Knudsen
Attorney General
State of Montana

Michael T. Hilgers
Attorney General
State of Nebraska

Dave Yost
Attorney General
State of Ohio

Gentner F. Drummond
Attorney General
State of Oklahoma

Alan Wilson
Attorney General
State of South Carolina

Marty J. Jackley
Attorney General
State of South Dakota

Ken Paxton
Attorney General
State of Texas

Jason S. Miyares
Attorney General
State of Virginia

Patrick Morrisey  
Attorney General  
State of West Virginia

Bridget Hill  
Attorney General  
State of Wyoming

## Certificate of Compliance

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 2,218 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in 14-point Times New Roman font.


*/s/ Stanford E. Purser*
Stanford E. Purser
Utah Solicitor General

*Counsel for Amicus Curiae*
*State of Utah*

**Certificate of Service**

I certify that on September 23, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*/s/Stanford E. Purser*
Stanford E. Purser
Utah Solicitor General

*Counsel for Amicus Curiae*
*State of Utah*
