## <u>NOT YET SCHEDULED FOR ORAL ARGUMENT</u>

No. 24-5101

_____

IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

*Plaintiffs-Appellees/Plaintiffs-Appellants,*

v.

MICHAEL REGAN, *et al.*,

*Defendants-Appellants/Defendants-Appellees,*

and

STATE OF FLORIDA, *et al.*

*Intervenors-Defendants-Appellants/Intervenors-Defendants-Appellees.*

_____

Appeal from the United States District Court for the District of Columbia

No. 1:21-cv-00119 (Hon. Randolph D. Moss)

_____

**BRIEF OF *AMICUS CURIAE***
**THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

_____

KEVIN MINOLI
GEORGE ABNEY
Alston & Bird LLP
1201 W Peachtree Street NE
Suite 4900
Atlanta, GA 30309
(415)881-7980
george.abney@alston.com

*Counsel for Amicus Curiae Miccosukee Tribe of Indians of Florida*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties and Amici

Upon approval from this Court, the Miccosukee Tribe of Indians of Florida will be an *amicus curiae* before this Court. All parties, intervenors and other amici appearing in the district court and in this Court are listed in the Brief for Federal Appellants.

### B. Rulings Under Review

The Miccosukee Tribe of Indians incorporates by reference the certificate of Rulings Under Review included in the Brief for Federal Appellants.

### C. Related Cases

*Miccosukee Tribe of Indians of Florida v. United States Environmental Protection Agency, et al.*, No. 1:22-cv-22459-KMM (S.D. Fla.). Additional information regarding this related case is included below.

    /s/ *George Abney*

Alston & Bird LLP
1201 W Peachtree Street NE
Suite 4900
Atlanta, GA 30309
*Dated* November 8, 2024

i

## TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases-------------------------------------I

Table of Contents--------------------------------------------------------------------------II

Table of Authorities------------------------------------------------------------------------IV

Statutes & Regulations----------------------------------------------------------------------V

Statement of Identity, Interest in Case, and Authority to File--------------------------- 1

Statement of Authorship and Financial Contributions--------------------------------- 3

Argument ---------------------------------------------------------------------------------- 4

I.    The Related Case Brought By The Miccosukee Tribe Raised Unique Claims
Regarding Tribal Sovereignty ----------------------------------------------------------- 4

A.  EPA's Failure to Follow its Own Regulations Resulted in an Unlawful
Diminishment of The Miccosukee Tribe's Sovereignty--------------------------------- 5

Ii.   EPA's Failure to Comply with the Endangered Species Act and Administrative
Procedure Act Warranted the Vacatur of EPA's Approval of Florida's Program -- 7

A.  The EPA Failed to Ensure Compliance with the Endangered Species Act When
Granting Clean Water Act Section 404 Permitting Authority to Florida ------------ 8

B.  The EPA's Decision to Approve Florida's Clean Water Act Section 404
Proposal Has Impacts on The Miccosukee Tribe's Way of Life and the Health o
the Everglades --------------------------------------------------------------------------- 11

Conclusion------------------------------------------------------------------------------- 12

Certificate Of Compliance------------------------------------------------------------- 14

# TABLE OF AUTHORITIES

### CASES

*Miccosukee Tribe of Indians of Fla. v. United States Environmental Protection Agency, et al.,* No. 1:22-CV-22459 (S.D. Fla. July 28, 2023)-------------------- 2, 6

*Miccosukee Tribe of Indians of Florida v. United States Environmental Protection Agency et. al.*, No. 1:22-cv-22459-KMM (S.D. Fla.) -------------------------------- 1

*Or. Natural Res. Council v. Allen*, 476 F.3d 1031, 1038 (9th Cir. 2007) ----------- 12

*United States v. S. Fla. Water Mgmt. Dist.*, 847 F. Supp. 1567 (S.D. Fla. 1992), aff'd 28 F.3d 1563 (11th Cir. 1994) ------------------------------------------------- 8

### STATUTES

16 U.S.C. § 1536 ---------------------------------------------------------------------9, 11

16 U.S.C. § 1536(a)(2)---------------------------------------------------------------- 8

16 U.S.C. § 1536(b)(4)(C) ----------------------------------------------------------- 10

16 U.S.C. § 1539(a) ------------------------------------------------------------------ 8

16 U.S.C. § 410------------------------------------------------------------- 7, 12, - 2 -

25 U.S.C. §§ 1741–1750e ----------------------------------------------------- 7, - 7 -

33 U.S.C. § 1344 --------------------------------------------------------------------- 1

33 U.S.C. § 1344(g)------------------------------------------------------------------ 5

33 U.S.C. § 1344(g)(1) -------------------------------------------------------------- 5

33 U.S.C. § 1344(h)(1)(A)(i) -------------------------------------------------------- 9

33 U.S.C. § 1344(h)(2)(B) ----------------------------------------------------------- 6

5 U.S.C. § 706(2)-------------------------------------------------------------------- 11

5 U.S.C. § 706(2)(A)----------------------------------------------------------------- 9

### REGULATIONS

40 C.F.R. § 233.1(b) ----------------------------------------------------------------- 6

40 C.F.R. § 233.11(a)–(c) ------------------------------------------------------------ 9

40 C.F.R. § 233.12(b)----------------------------------------------------------------- 6

40 C.F.R. § 233.23 ------------------------------------------------------------------- 9

40 C.F.R. §§ 230.10(b)(3) ------------------------------------------------------------ 9

## STATUTES & REGULATIONS

Except for 16 U.S.C. § 410 and 25 U.S.C. § 1741-1750e, all applicable statutes

and regulations are contained in the Brief for Plaintiffs-Appellees.

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND AUTHORITY TO FILE**

The Miccosukee Tribe of Indians of Florida respectfully submits this brief as *amicus curiae* in support of Plaintiffs-Appellees. The Miccosukee Tribe is made up of approximately 620 members located in Southern Florida. The Miccosukee Tribe has been federally recognized since 1962 when the Secretary of the Interior approved the Miccosukee Constitution.

As a federally recognized Tribe, the Miccosukee exercises its power of self-governance to advance and protect the water quality within the Everglades. The Environmental Protection Agency's ("EPA") approval of Florida's application to administer a permitting program for the discharge of dredge and fill material under Section 404 of the Clean Water Act, 33 U.S.C. § 1344, impermissibly infringed upon and diminished the Miccosukee's Tribal Sovereignty by subjecting more than 200,000 acres of Indian lands to the State's new permitting program.

In defense of its Tribal Sovereignty, the Miccosukee Tribe filed a challenge to EPA's approval in the District Court for the Southern District of Florida. *See, Miccosukee Tribe of Indians of Florida v. United States Environmental Protection Agency et. al.*, No. 1:22-cv-22459-KMM (S.D. Fla.). In that case, the Miccosukee Tribe has argued that the EPA exceeded its statutory authority by approving Florida's proposal without satisfying the necessary legal and procedural requirements of the Clean Water Act and that the transfer of Clean Water Act Section

1

404 permitting authority to Florida violated tribal sovereignty, as the State's proposal unlawfully encroached upon the longstanding land rights and authority of the Miccosukee Tribe.

Subsequent to the District Court for the District of Columbia's vacatur of EPA's approval in this case, the District Court for the Southern District of Florida has entered multiple stays (the current stay runs through December 15, 2024) and administratively closed the Miccosukee Tribe's case pending the outcome of the appeal in this case. Order at 2–3, *Miccosukee Tribe of Indians of Fla. v. United States Environmental Protection Agency, et al.,* No. 1:22-CV-22459 (S.D. Fla. July 28, 2023)), Dkt. 50 and 58.

The Miccosukee Tribe, therefore, has a specific compelling interest in the outcome of this case as its interests are directly implicated here. The Miccosukee Tribe has filed a Motion for Leave to Participate as Amicus Curiae concurrently with the filing of this Brief. The authority to file this Brief is dependent on a decision by this Court to grant the leave requested in that Motion.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No counsel for a party to this case authored this Brief in whole or in part. No party to this case nor any counsel for a party to this case contributed money that was intended to fund preparing or submitting this Brief. No person, other than the Miccosukee Tribe of Indians of Florida, its members, or its counsel, contributed money that was intended to fund preparing or submitting this Brief.

# ARGUMENT

*Amicus* Miccosukee Tribe respectfully submits this brief to elaborate upon the Plaintiff-Appellees arguments in support of affirmance of the District Court's vacatur of EPA's approval of Florida's application to administer a permitting program under Clean Water Act Section 404. The District Court's decision below turned on the question of whether the United States Fish and Wildlife Service and the EPA violated the Endangered Species Act in approving Florida's assumption application under the Clean Water Act. The District Court correctly ruled that the "programmatic" Biological Opinion and "programmatic" Incidental Take Statement issued by the Fish and Wildlife Service lacked the required species-specific analyses and take limits. JA___ ECF No. 182 at 84, 73. To that end, the District Court reasoned that the Biological Opinion and Incidental Take Statement purport to confer Endangered Species Act liability protection on future Florida Clean Water Act Section 404 permittees without complying with the dictates of Section 7 or Section 10 of the Endangered Species Act. JA___ ECF No. 182 at 62.

## I.     The Related Case Brought by the Miccosukee Tribe Raised Unique Claims Regarding Tribal Sovereignty

All parties recognize the related nature of this case and the challenge brought by the Miccosukee Tribe in the Southern District of Florida. Florida Appellants and the Plaintiffs/Appellees both listed the Tribe's case as a related case, while the Federal Defendants acknowledged that the Tribe had also challenged EPA's

4

approval of Florida's application in a footnote. While the two cases challenge the same agency action, the District Court for the Southern District of Florida has recognized that the cases challenge that action for different reasons. *Miccosukee Tribe,* at Dkt. 50, p. 3. Because the District Court for the Southern District of Florida has determined that a final judgement on vacatur in this case would result in that court being unable to grant meaningful relief, *id.*, the Miccosukee Tribe respectfully includes for the Court's awareness the following information related to the claims included in the related case that address the impact of EPA's approval on Tribal Sovereignty.

## A. EPA's Failure to Follow Its Own Regulations Resulted in an Unlawful Diminishment of the Miccosukee Tribe's Sovereignty

Section 404(g) of the Clean Water Act established conditions under which a state can propose to the EPA that the state assume responsibility for issuing permits for the discharge of dredged or fill material into certain waters within the state. 33 U.S.C. § 1344(g). For example, a state must submit a proposal to the EPA that includes an affirmative statement from the state attorney general which confirms that the state possesses "adequate authority to carry out the described program." 33 U.S.C. § 1344(g)(1). In addition, a state's proposal must include "a full and complete description of the program [the state] proposes to establish and administer under State law." *Id*. EPA cannot approve a state's proposal to assume Clean Water Act Section 404 permitting authority for waters over which the state lacks "adequate

authority to carry out the described program," *Id*; 33 U.S.C. § 1344(h)(2)(B), including, per EPA's regulations, where states lack authority to regulate activities on "Indian lands." 40 C.F.R. § 233.1(b).

For a state to assume authority over the Clean Water Act Section 404 permitting program on Indian lands, the state must explicitly seek such authority and have adequate legal authority to carry out the proposed program on those lands. 40 C.F.R. § 233.12(b). Florida's application did not seek such authority. In the absence of either a proposal from a state to assume authority over the Clean Water Act Section 404 permitting program on Indian lands or adequate legal authority to carry out the proposed program on those lands, the EPA regulations specify that Clean Water Act Section 404 permitting authority over Indian lands will remain with the Corps. 40 C.F.R. § 233.1(b).

Florida's application made no attempt to describe the waters within the State's borders for which the State would be assuming permitting authority, nor did Florida's proposal include a complete description of waters to be retained by the Army Corps of Engineers, violating 40 CFR § 233.11(h). For example, the application never described which waters would be retained by the Army Corps of Engineers because the waters were on Indian lands. In addition, Florida's proposal failed to provide any analysis of the key statutory provisions that govern Miccosukee lands, including the impacts of lease agreements and a Settlement Agreement

codified into law,[1] the Florida Indian (Miccosukee) Land Claims Settlement Act, the Miccosukee Reserved Area Act, and the acts establishing Everglades National Park and Big Cypress National Reserve. 25 U.S.C. §§ 1741–1750e; 16 U.S.C. § 410. The EPA's approval disregarded these omissions, failing to ensure that the State's proposal was in full compliance with federal law. These omissions alone render the EPA's approval unlawful. Therefore, the EPA exceeded its statutory authority by approving Florida's proposal despite the State's failure to meet these statutory and regulatory requirements.

Further, the consequence of EPA's approval was that the EPA impermissibly diminished rights granted to the Miccosukee Tribe by the United States and the State of Florida. As a result of the EPA's actions, the ability of the Miccosukee Tribe and its members to exercise the rights granted to them by the United States and the State of Florida have been significantly restricted.

## II.     EPA's Failure to Comply with the Endangered Species Act and Administrative Procedure Act Warranted the Vacatur of EPA's Approval of Florida's Program

The EPA failed to comply with the Endangered Species Act and the Administrative Procedure Act when it approved the State of Florida's proposal to assume Clean Water Act Section 404 permitting, rending the approval arbitrary, capricious, and contrary to the law. The flawed process threatens the delicate

---

[1] *See United States v. S. Fla. Water Mgmt. Dist.*, 847 F. Supp. 1567 (S.D. Fla. 1992), aff'd 28 F.3d 1563 (11th Cir. 1994).

ecosystems of Florida, including the unique Everglades environment and the federally protected species residing there. This approval also jeopardizes the Miccosukee Tribe's way of life and undermines their sovereign rights.

**A.  The EPA Failed to Ensure Compliance with the Endangered Species Act When Granting Clean Water Act Section 404 Permitting Authority to the State of Florida**

The Endangered Species Act mandates that federal agencies, including the EPA, engage in formal consultation with the Fish and Wildlife Service and National Marine Fisheries Service whenever an action may affect species listed as endangered or threatened. 16 U.S.C. § 1536(a)(2). In this context, the consultation process must be followed to ensure that the EPA's action in approving Florida's application would not jeopardize listed species or destroy or adversely modify critical habitats. Importantly, through this consultation process, the Fish and Wildlife Service or the National Marine Fisheries Service may document its conclusion that the taking of a listed species that occurs incidental to the agency action that is the subject of the consultation will not violate the Endangered Species Act in an incidental take statement. *See* 16 U.S.C. § 1539(a).

Before a state may assume Clean Water Act Section 404 permitting authority, the EPA must determine that the state has demonstrated authority to issue permits that assure compliance with Clean Water Act Section 404(b)(1) guidelines, which, among other things, prohibit the issuance of Section 404 permits that would

jeopardize the existence of listed species, or result in the likelihood of destroying or adversely modifying critical habitat identified under the Endangered Species Act. 33 U.S.C. § 1344(h)(1)(A)(i); 40 C.F.R. §§ 230.10(b)(3), 40 C.F.R. § 233.11(a)–(c), 40 C.F.R. § 233.23.

The EPA's consultation process was inadequate and failed to meet the statutory obligations under the Endangered Species Act. When Florida applied for assumption of Clean Water Act Section 404 authority, the EPA initiated consultation with the Fish and Wildlife Service by submitting a biological evaluation that lacked the required comprehensive analysis of the status of species, environmental baseline, and effects of the proposed action. 16 U.S.C. § 1536; 5 U.S.C. § 706(2)(A). The Fish and Wildlife Service, in turn, issued a flawed Biological Opinion that failed to analyze the potential for jeopardy or adverse modification of critical habitat that would result from EPA's approval of Florida's application to assume Clean Water Act Section 404 permitting authority. The Fish and Wildlife Service's analysis was limited to individual permits, failing to assess the overall effects of Florida assuming permitting authority for all dredge and fill activities. This omission violates the Endangered Species Act's requirements to examine the cumulative effects of the entire action under consultation.

The EPA also disregarded its obligations by concluding, without sufficient basis, that Florida's assumption of Clean Water Act Section 404 authority would

have "no effect" on species under the National Marine Fisheries Service's jurisdiction. JA___/Dkt. 182 at 86–88. This conclusion was based solely on a letter from the NMFS to Florida, which incorrectly asserted that no National Marine Fisheries Service-jurisdiction species would be present "in assumable waters."

Under the Endangered Species Act, incidental take of listed species is allowed only if the agency issues an incidental take statement that specifies the extent of permissible take and establishes a "trigger" for reinitiating consultation if the take limit is exceeded. 16 U.S.C. § 1536(b)(4)(C). The Fish and Wildlife Service's biological opinion, however, failed to meet this legal standard. The opinion did not specify the amount or extent of incidental take, nor did it provide a measurable surrogate for the level of take. JA___/Dkt. 182 at 73–75. Without a clear limit on take or a reinitiation trigger, the Fish and Wildlife Service's Biological Opinion is arbitrary and capricious and fails to comply with the Endangered Species Act.

The Ninth Circuit made clear that an agency may only use a surrogate to establish a take limit "if no number may be practically obtained." *Or. Natural Res. Council v. Allen*, 476 F.3d 1031, 1038 (9th Cir. 2007). The surrogate "must be able to perform the functions of a numerical limitation" by setting forth an adequate "trigger" that, when reached, would invalidate the Endangered Species Act's safe harbor provision and require the parties to re-initiate consultation. *Id.* The Fish and Wildlife Service did not provide any such surrogate, nor did it offer any measurable

standard for when re-initiating consultation would be necessary if species were harmed under the assumption of authority. As such, the Biological Opinion is deficient and violates the Endangered Species Act's requirements.

The EPA's approval of Florida's Clean Water Act Section 404 program, and the accompanying Biological Opinion issued by the Fish and Wildlife Service, violated the Endangered Species Act and Administrative Procedure Act. The Fish and Wildlife Service's failure to assess the likelihood of jeopardy or adverse modification of critical habitats across all permits to be issued under Florida's authority renders its "no jeopardy" determination unlawful. 16 U.S.C. § 1536. These failures amount to arbitrary and capricious action in violation of the Administrative Procedure Act . 5 U.S.C. § 706(2).

## B.     The EPA's Decision to Approve Florida's Clean Water Act Section 404 Proposal Has Impacts on the Miccosukee Tribe's Way of Life and the Health of the Everglades

The way of life of the Miccosukee Tribe has been intertwined with and dependent upon the Everglades for generations. The Miccosukee Tribe occupied the Everglades prior to the arrival of the first European explorers and took refuge in the Everglades to avoid forced relocation west in the 1800s. The Tribe has lived on and managed lands within the Everglades, including reservation, trust, perpetually leased, reserved, and fee simple lands. These lands are not only vital to the Tribe's cultural and economic survival but are also home to numerous endangered and

threatened species. Many of these lands lay within Everglades National Park, which is protected by federal law and must be preserved as a wilderness, with minimal interference in its natural conditions. 16 U.S.C. § 410.

EPA's approval of Florida's assumption of Clean Water Act Section 404 permitting authority poses a direct threat to this delicate ecosystem and to the Miccosukee Tribe's sovereignty. By failing to adequately assess the impact of its proposal on the Miccosukee Reserved Area and the surrounding Everglades, the EPA violated the rights of the Miccosukee Tribe and endangered the species that rely on this unique environment. The EPA's approval of Florida's proposal, without ensuring compliance with Endangered Species Act requirements, jeopardizes the very species and habitats that the Endangered Species Act was designed to protect.

The EPA's approval of Florida's assumption of Clean Water Act Section 404 permitting authority was unlawful because it failed to comply with the Endangered Species Act's requirements and the Administrative Procedure Act's standards for reasoned decision-making. The insufficient consultation with the Services, failure to adequately assess the impacts on endangered species, and omission of clear take limits render the EPA's actions arbitrary, capricious, and contrary to the law.

## **CONCLUSION**

Based on the foregoing, the Miccosukee Tribe respectfully urges this Court to affirm the District Court's vacatur of EPA's approval of Florida's application to

implement of permitting program under Clean Water Act §404.

Respectfully submitted,

    /s/ *George Abney*

Alston & Bird LLP
1201 W Peachtree Street NE
Suite 4900
Atlanta, GA 30309
404-881-7980
*Dated* November 8, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(a)(5) because this brief contains 2,635 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Local Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6) because this brief has been set in a plain, roman style in a proportionally spaced, 14-point, serif typeface.

Dated:  November 8, 2024.

/s/ *George Abney*

Alston & Bird LLP
1201 W Peachtree Street NE
Suite 4900
Atlanta, GA 30309
404-881-7980

14

<u>**NOT YET SCHEDULED FOR ORAL ARGUMENT**</u>

No. 24-5101

---

IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF
COLUMBIA CIRCUIT

---

CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,

*Plaintiffs-Appellees/Plaintiffs-Appellants,*

v.

MICHAEL REGAN, *et al*.,

*Defendants-Appellants/Defendants-Appellees,*

and

STATE OF FLORIDA, *et al*.

*Intervenors-Defendants-Appellants/Intervenors-Defendants-Appellees.*

---

Appeal from the United States District Court for the District of Columbia

No. 1:21-cv-00119 (Hon. Randolph D. Moss)

---

**ADDENDUM FOR *AMICUS CURIAE***
**THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA**

---

GEORGE ABNEY
Alston & Bird LLP
1201 W Peachtree Street NE
Suite 4900
Atlanta, GA 30309
(415)881-7980
george.abney@alston.com
*Counsel for Amicus Curiae Miccosukee Tribe of Indians of Florida*

# ADDENDUM

**16 U.S.C. § 410**

with the laws and regulations applicable to such park.

(Pub. L. 88–601, § 2, Sept. 18, 1964, 78 Stat. 957.)

#### Editorial Notes

###### CODIFICATION

Section was not enacted as part of act Mar. 2, 1933, ch. 182, 47 Stat. 1421, as amended, which comprises this subchapter.

### § 409i. Acquisition of Warren Property for Morristown National Historical Park

(a) In addition to any other lands or interest authorized to be acquired for inclusion in Morristown National Historical Park, and notwithstanding the first proviso of section 409 of this title, the Secretary of the Interior may acquire by purchase, donation, purchase with appropriated funds, or otherwise, not to exceed 15 acres of land and interests therein comprising the property known as the Warren Property or Mount Kimble. The Secretary may expend such sums as may be necessary for such acquisition.

(b) Any lands or interests acquired under this section shall be included in and administered as part of the Morristown National Historical Park.

(Mar. 2, 1933, ch. 182, § 8, as added Pub. L. 105–355, title V, § 508, Nov. 6, 1998, 112 Stat. 3264.)

## SUBCHAPTER LIV—EVERGLADES NATIONAL PARK

### § 410. Establishment; acquisition of land

When title to all the lands within boundaries to be determined by the Secretary of the Interior within the area of approximately two thousand square miles in the region of the Everglades of Dade, Monroe, and Collier Counties, in the State of Florida, recommended by said Secretary, in his report to Congress of December 3, 1930, pursuant to the Act of March 1, 1929 (45 Stat. 1443), shall have been vested in the United States, said lands shall be, and are, established, dedicated, and set apart as a public park for the benefit and enjoyment of the people and shall be known as the Everglades National Park: *Provided*, That the United States shall not purchase by appropriation of public moneys any land within the aforesaid area, but such lands shall be secured by the United States only by public or private donation.

(May 30, 1934, ch. 371, § 1, 48 Stat. 816.)

#### Editorial Notes

###### REFERENCES IN TEXT

Act of March 1, 1929 (45 Stat. 1443), referred to in text, is act Mar. 1, 1929, ch. 446, 45 Stat. 1443, which is not classified to the Code.

#### Statutory Notes and Related Subsidiaries

###### MICCOSUKEE RESERVED AREA

Pub. L. 105–313, Oct. 30, 1998, 112 Stat. 2964, provided that:

''SECTION 1. SHORT TITLE.

''This Act may be cited as the 'Miccosukee Reserved Area Act'.

''SEC. 2. FINDINGS.

''Congress finds the following:

''(1) Since 1964, the Miccosukee Tribe of Indians of Florida have lived and governed their own affairs on a strip of land on the northern edge of the Everglades National Park pursuant to permits from the National Park Service and other legal authority. The current permit expires in 2014.

''(2) Since the commencement of the Tribe's permitted use and occupancy of the Special Use Permit Area, the Tribe's membership has grown, as have the needs and desires of the Tribe and its members for modern housing, governmental and administrative facilities, schools and cultural amenities, and related structures.

''(3) The United States, the State of Florida, the Miccosukee Tribe, and the Seminole Tribe of Florida are participating in a major intergovernmental effort to restore the South Florida ecosystem, including the restoration of the environment of the Park.

''(4) The Special Use Permit Area is located within the northern boundary of the Park, which is critical to the protection and restoration of the Everglades, as well as to the cultural values of the Miccosukee Tribe.

''(5) The interests of both the Miccosukee Tribe and the United States would be enhanced by a further delineation of the rights and obligations of each with respect to the Special Use Permit Area and to the Park as a whole.

''(6) The amount and location of land allocated to the Tribe fulfills the purposes of the Park.

''(7) The use of the Miccosukee Reserved Area by the Miccosukee Tribe does not constitute an abandonment of the Park.

''SEC. 3. PURPOSES.

''The purposes of this Act are as follows:

''(1) To replace the special use permit with a legal framework under which the Tribe can live permanently and govern the Tribe's own affairs in a modern community within the Park.

''(2) To protect the Park outside the boundaries of the Miccosukee Reserved Area from adverse effects of structures or activities within that area, and to support restoration of the South Florida ecosystem, including restoring the environment of the Park.

''SEC. 4. DEFINITIONS.

''In this Act:

''(1) ADMINISTRATOR.—The term 'Administrator' means the Administrator of the Environmental Protection Agency.

''(2) EVERGLADES.—The term 'Everglades' means the areas within the Florida Water Conservation Areas, Everglades National Park, and Big Cypress National Preserve.

''(3) FEDERAL AGENCY.—The term 'Federal agency' means an agency, as that term is defined in section 551(1) of title 5, United States Code.

''(4) MICCOSUKEE RESERVED AREA; MRA.—

''(A) IN GENERAL.—The term 'Miccosukee Reserved Area' or 'MRA' means, notwithstanding any other provision of law and subject to the limitations specified in section 6(d) of this Act, the portion of the Everglades National Park described in subparagraph (B) that is depicted on the map entitled 'Miccosukee Reserved Area' numbered NPS–160/41,038, and dated September 30, 1998, copies of which shall be kept available for public inspection in the offices of the National Park Service, Department of the Interior, and shall be filed with appropriate officers of Miami-Dade County and the Miccosukee Tribe of Indians of Florida.

''(B) DESCRIPTION.—The description of the lands referred to in subparagraph (A) is as follows: 'Beginning at the western boundary of Everglades National Park at the west line of sec. 20, T. 54 S., R. 35 E., thence E. following the Northern boundary of said Park in T. 54 S., Rs. 35 and 36 E., to a point in

sec. 19, T. 54 S., R. 36 E., 500 feet west of the existing road known as Seven Mile Road, thence 500 feet south from said point, thence west paralleling the Park boundary for 3,200 feet, thence south for 600 feet, thence west, paralleling the Park boundary to the west line of sec. 20, T. 54 S., R. 35 E., thence N. 1,100 feet to the point of beginning.'.

''(5) PARK.—The term 'Park' means the Everglades National Park, including any additions to that Park.

''(6) PERMIT.—The term 'permit', unless otherwise specified, means any federally issued permit, license, certificate of public convenience and necessity, or other permission of any kind.

''(7) SECRETARY.—The term 'Secretary' means the Secretary of the Interior or the designee of the Secretary.

''(8) SOUTH FLORIDA ECOSYSTEM.—The term 'South Florida ecosystem' has the meaning given that term in section 528(a)(4) of the Water Resources Development Act of 1996 (Public Law 104–303) [110 Stat. 3767].

''(9) SPECIAL USE PERMIT AREA.—The term 'special use permit area' means the area of 333.3 acres on the northern boundary of the Park reserved for the use, occupancy, and governance of the Tribe under a special use permit before the date of the enactment of this Act [Oct. 30, 1998].

''(10) TRIBE.—The term 'Tribe', unless otherwise specified, means the Miccosukee Tribe of Indians of Florida, a tribe of American Indians recognized by the United States and organized under section 16 of the Act of June 18, 1934 (48 Stat. 987; 25 U.S.C. 476) [now 25 U.S.C. 5123], and recognized by the State of Florida pursuant to chapter 285, Florida Statutes.

''(11) TRIBAL.—The term 'tribal' means of or pertaining to the Miccosukee Tribe of Indians of Florida.

''(12) TRIBAL CHAIRMAN.—The term 'tribal chairman' means the duly elected chairman of the Miccosukee Tribe of Indians of Florida, or the designee of that chairman.

''SEC. 5. TRIBAL RIGHTS AND AUTHORITY ON THE MICCOSUKEE RESERVED AREA.

''(a) SPECIAL USE PERMIT TERMINATED.—

''(1) TERMINATION.—The special use permit dated February 1, 1973, issued by the Secretary to the Tribe, and any amendments to that permit, are terminated.

''(2) EXPANSION OF SPECIAL USE PERMIT AREA.—The geographical area contained in the former special use permit area referred to in paragraph (1) shall be expanded pursuant to this Act and known as the Miccosukee Reserved Area.

''(3) GOVERNANCE OF AFFAIRS IN MICCOSUKEE RESERVED AREA.—Subject to the provisions of this Act and other applicable Federal law, the Tribe shall govern its own affairs and otherwise make laws and apply those laws in the MRA as though the MRA were a Federal Indian reservation.

''(b) PERPETUAL USE AND OCCUPANCY.—The Tribe shall have the exclusive right to use and develop the MRA in perpetuity in a manner consistent with this Act for purposes of the administration, education, housing, and cultural activities of the Tribe, including commercial services necessary to support those purposes.

''(c) INDIAN COUNTRY STATUS.—The MRA shall be—

''(1) considered to be Indian country (as that term is defined in section 1151 of title 18, United States Code); and

''(2) treated as a federally recognized Indian reservation solely for purposes of—

''(A) determining the authority of the Tribe to govern its own affairs and otherwise make laws and apply those laws within the MRA; and

''(B) the eligibility of the Tribe and its members for any Federal health, education, employment, economic assistance, revenue sharing, or social welfare programs, or any other similar Federal program for which Indians are eligible because of their—

''(i) status as Indians; and

''(ii) residence on or near an Indian reservation.

''(d) EXCLUSIVE FEDERAL JURISDICTION PRESERVED.—The exclusive Federal legislative jurisdiction as applied to the MRA as in effect on the date of the enactment of this Act [Oct. 30, 1998] shall be preserved. The Act of August 15, 1953, 67 Stat. 588, chapter 505 [see Tables for classification] and the amendments made by that Act, including section 1162 of title 18, United States Code, as added by that Act and section 1360 of title 28, United States Code, as added by that Act, shall not apply with respect to the MRA.

''(e) OTHER RIGHTS PRESERVED.—Nothing in this Act shall affect any rights of the Tribe under Federal law, including the right to use other lands or waters within the Park for other purposes, including, fishing, boating, hiking, camping, cultural activities, or religious observances.

''SEC. 6. PROTECTION OF EVERGLADES NATIONAL PARK.

''(a) ENVIRONMENTAL PROTECTION AND ACCESS REQUIREMENTS.—

''(1) IN GENERAL.—The MRA shall remain within the boundaries of the Park and be a part of the Park in a manner consistent with this Act.

''(2) COMPLIANCE WITH APPLICABLE LAWS.—The Tribe shall be responsible for compliance with all applicable laws, except as otherwise provided by this Act.

''(3) PREVENTION OF DEGRADATION; ABATEMENT.—

''(A) PREVENTION OF DEGRADATION.—Pursuant to the requirements of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Tribe shall prevent and abate degradation of the quality of surface or groundwater that is released into other parts of the Park, as follows:

''(i) With respect to water entering the MRA which fails to meet applicable water quality standards approved by the Administrator under the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), actions of the Tribe shall not further degrade water quality.

''(ii) With respect to water entering the MRA which meets applicable water quality standards approved by the Administrator under the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Tribe shall not cause the water to fail to comply with applicable water quality standards.

''(B) PREVENTION AND ABATEMENT.—The Tribe shall prevent and abate disruption of the restoration or preservation of the quantity, timing, or distribution of surface or groundwater that would enter the MRA and flow, directly or indirectly, into other parts of the Park, but only to the extent that such disruption is caused by conditions, activities, or structures within the MRA.

''(C) PREVENTION OF SIGNIFICANT PROPAGATION OF EXOTIC PLANTS AND ANIMALS.—The Tribe shall prevent significant propagation of exotic plants or animals outside the MRA that may otherwise be caused by conditions, activities, or structures within the MRA.

''(D) PUBLIC ACCESS TO CERTAIN AREAS OF THE PARK.—The Tribe shall not impede public access to those areas of the Park outside the boundaries of the MRA, and to and from the Big Cypress National Preserve, except that the Tribe shall not be required to allow individuals who are not members of the Tribe access to the MRA other than Federal employees, agents, officers, and officials (as provided in this Act).

''(E) PREVENTION OF SIGNIFICANT CUMULATIVE ADVERSE ENVIRONMENTAL IMPACTS.—

''(i) IN GENERAL.—The Tribe shall prevent and abate any significant cumulative adverse environmental impact on the Park outside the MRA resulting from development or other activities within the MRA.

''(ii) PROCEDURES.—Not later than 12 months after the date of the enactment of this Act [Oct. 30, 1998], the Tribe shall develop, publish, and im-

plement procedures that shall ensure adequate public notice and opportunity to comment on major tribal actions within the MRA that may contribute to a significant cumulative adverse impact on the Everglades ecosystem.

''(iii) WRITTEN NOTICE.—The procedures in clause (ii) shall include timely written notice to the Secretary and consideration of the Secretary's comments.

''(F) WATER QUALITY STANDARDS.—

''(i) IN GENERAL.—Not later than 12 months after the date of the enactment of this Act [Oct. 30, 1998], the Tribe shall adopt and comply with water quality standards within the MRA that are at least as protective as the water quality standards for the area encompassed by Everglades National Park approved by the Administrator under the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.).

''(ii) TRIBAL WATER QUALITY STANDARDS.—The Tribe may not adopt water quality standards for the MRA under clause (i) that are more restrictive than the water quality standards adopted by the Tribe for contiguous reservation lands that are not within the Park.

''(iii) EFFECT OF FAILURE TO ADOPT OR PRESCRIBE STANDARDS.—In the event the Tribe fails to adopt water quality standards referred to in clause (i), the water quality standards applicable to the Everglades National Park, approved by the Administrator under the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), shall be deemed to apply by operation of Federal law to the MRA until such time as the Tribe adopts water quality standards that meet the requirements of this subparagraph.

''(iv) MODIFICATION OF STANDARDS.—If, after the date of the enactment of this Act [Oct. 30, 1998], the standards referred to in clause (iii) are revised, not later than 1 year after those standards are revised, the Tribe shall make such revisions to water quality standards of the Tribe as are necessary to ensure that those water quality standards are at least as protective as the revised water quality standards approved by the Administrator.

''(v) EFFECT OF FAILURE TO MODIFY WATER QUALITY STANDARDS.—If the Tribe fails to revise water quality standards in accordance with clause (iv), the revised water quality standards applicable to the Everglades Park, approved by the Administrator under the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.) shall be deemed to apply by operation of Federal law to the MRA until such time as the Tribe adopts water quality standards that are at least as protective as the revised water quality standards approved by the Administrator.

''(G) NATURAL EASEMENTS.—The Tribe shall not engage in any construction, development, or improvement in any area that is designated as a natural easement.

''(b) HEIGHT RESTRICTIONS.—

''(1) RESTRICTIONS.—Except as provided in paragraphs (2) through (4), no structure constructed within the MRA shall exceed the height of 45 feet or exceed 2 stories, except that a structure within the Miccosukee Government Center, as shown on the map referred to in section 4(4), shall not exceed the height of 70 feet.

''(2) EXCEPTIONS.—The following types of structures are exempt from the restrictions of this section to the extent necessary for the health, safety, or welfare of the tribal members, and for the utility of the structures:

''(A) Water towers or standpipes.
''(B) Radio towers.
''(C) Utility lines.

''(3) WAIVER.—The Secretary may waive the restrictions of this subsection if the Secretary finds that

the needs of the Tribe for the structure that is taller than structures allowed under the restrictions would outweigh the adverse effects to the Park or its visitors.

''(4) GRANDFATHER CLAUSE.—Any structure approved by the Secretary before the date of the enactment of this Act [Oct. 30, 1998], and for which construction commences not later than 12 months after the date of the enactment of this Act, shall not be subject to the provisions of this subsection.

''(5) MEASUREMENT.—The heights specified in this subsection shall be measured from mean sea level.

''(c) OTHER CONDITIONS.—

''(1) GAMING.—No class II or class III gaming (as those terms are defined in section 4(7) and (8) of the Indian Gaming Regulatory Act (25 U.S.C. 2703(7) and (8)) shall be conducted within the MRA.

''(2) AVIATION.—

''(A) IN GENERAL.—No commercial aviation may be conducted from or to the MRA.

''(B) EMERGENCY OPERATORS.—Takeoffs and landings of aircraft shall be allowed for emergency operations and administrative use by the Tribe or the United States, including resource management and law enforcement.

''(C) STATE AGENCIES AND OFFICIALS.—The Tribe may permit the State of Florida, as agencies or municipalities of the State of Florida to provide for takeoffs or landings of aircraft on the MRA for emergency operations or administrative purposes.

''(3) VISUAL QUALITY.—

''(A) IN GENERAL.—In the planning, use, and development of the MRA by the Tribe, the Tribe shall consider the quality of the visual experience from the Shark River Valley visitor use area, including limitations on the height and locations of billboards or other commercial signs or other advertisements visible from the Shark Valley visitor center, tram road, or observation tower.

''(B) EXEMPTION OF MARKINGS.—The Tribe may exempt markings on a water tower or standpipe that merely identify the Tribe.

''(d) EASEMENTS AND RANGER STATION.—Notwithstanding any other provision of this Act, the following provisions shall apply:

''(1) NATURAL EASEMENTS.—

''(A) IN GENERAL.—The use and occupancy of the MRA by the Tribe shall be perpetually subject to natural easements on parcels of land that are—

''(i) bounded on the north and south by the boundaries of the MRA, specified in the legal description under section 4(4); and

''(ii) bounded on the east and west by boundaries that run perpendicular to the northern and southern boundaries of the MRA, as provided in the description under subparagraph (B).

''(B) DESCRIPTION.—The description referred to in subparagraph (A)(ii) is as follows:

''(i) Easement number 1, being 445 feet wide with western boundary 525 feet, and eastern boundary 970 feet, east of the western boundary of the MRA.

''(ii) Easement number 2, being 443 feet wide with western boundary 3,637 feet, and eastern boundary 4,080 feet, east of the western boundary of the MRA.

''(iii) Easement number 3, being 320 feet wide with western boundary 5,380 feet, and eastern boundary 5,700 feet, east of the western boundary of the MRA.

''(iv) Easement number 4, being 290 feet wide with western boundary 6,020 feet, and eastern boundary 6,310 feet, east of the western boundary of the MRA.

''(v) Easement number 5, being 290 feet wide with western boundary 8,170 feet, and eastern boundary 8,460 feet, east of the western boundary of the MRA.

''(vi) Easement number 6, being 312 feet wide with western boundary 8,920 feet, and eastern

''(2) TRIBE HELD HARMLESS.—Notwithstanding any other provision of law, the Tribe and the members of the Tribe shall not be liable for any injury, loss, damage, or harm that—

''(A) occurs with respect to the MRA; and

''(B) is caused by an action or failure to act by the United States, or the officer, agent, or employee of the United States (including the failure to perform any obligation of the United States under this Act).

''(g) COOPERATIVE AGREEMENTS.—Nothing in this Act shall alter the authority of the Secretary and the Tribe to enter into any cooperative agreement, including any agreement concerning law enforcement, emergency response, or resource management.

''(h) WATER RIGHTS.—Nothing in this Act shall enhance or diminish any water rights of the Tribe, or members of the Tribe, or the United States (with respect to the Park).

''(i) ENFORCEMENT.—

''(1) ACTIONS BROUGHT BY ATTORNEY GENERAL.—The Attorney General may bring a civil action in the United States district court for the district in which the MRA is located, to enjoin the Tribe from violating any provision of this Act.

''(2) ACTION BROUGHT BY TRIBE.—The Tribe may bring a civil action in the United States district court for the district in which the MRA is located to enjoin the United States from violating any provision of this Act.''

### § 410a. Acceptance of title to lands

The Secretary of the Interior is authorized, in his discretion and upon submission of evidence of title satisfactory to him, to accept on behalf of the United States, title to the lands referred to in section 410 of this title as may be deemed by him necessary or desirable for national-park purposes: *Provided*, That no land for said park shall be accepted until exclusive jurisdiction over the entire park area, in form satisfactory to the Secretary of the Interior, shall have been ceded by the State of Florida to the United States.

(May 30, 1934, ch. 371, §2, 48 Stat. 816.)

### § 410b. Administration, protection, and development

The administration, protection, and development of the aforesaid park shall be exercised under the direction of the Secretary of the Interior by the National Park Service, subject to the provisions of the Act of August 25, 1916 (39 Stat. 535), entitled ''An Act to establish a National Park Service, and for other purposes'',[1] as amended: *Provided*, That the provisions of the Federal Power Act [16 U.S.C. 791a et seq.] shall not apply to this park: *Provided further*, That nothing in sections 410 to 410c of this title shall be construed to lessen any existing rights of the Seminole Indians which are not in conflict with the purposes for which the Everglades National Park is created.

(May 30, 1934, ch. 371, §3, 48 Stat. 816; Aug. 21, 1937, ch. 732, 50 Stat. 742.)

#### Editorial Notes

##### REFERENCES IN TEXT

The Act of August 25, 1916 (39 Stat. 535), entitled ''An Act to establish a National Park Service, and for other

___
[1] See References in Text note below.

purposes'', referred to in text, is act Aug. 25, 1916, ch. 408, 39 Stat. 535, known as the National Park Service Organic Act, which enacted sections 1, 2, 3, and 4 of this title and provisions set out as a note under section 100101 of Title 54, National Park Service and Related Programs. Sections 1 to 4 of the Act were repealed and restated as section 1865(a) of Title 18, Crimes and Criminal Procedure, and section 100101(a), chapter 1003, and sections 100751(a), 100752, 100753, and 102101 of Title 54 by Pub. L. 113–287, §§3, 4(a)(1), 7, Dec. 19, 2014, 128 Stat. 3094, 3260, 3272. For complete classification of this Act to the Code, see Tables. For disposition of former sections of this title, see Disposition Table preceding section 100101 of Title 54.

The Federal Power Act, referred to in text, was in the original the ''Act approved June 10, 1920, known as the Federal Water Power Act,'' and was redesignated as the Federal Power Act by section 791a of this title. The Federal Power Act is act June 10, 1920, ch. 285, 41 Stat. 1063, and is classified generally to chapter 12 (§791a et seq.) of this title. For complete classification of this Act to the Code, see section 791a of this title and Tables.

#### AMENDMENTS

1937—Act Aug. 21, 1937, struck out proviso which prohibited expenditure of public moneys by the United States on the park within a period of five years.

#### Executive Documents

##### TRANSFER OF FUNCTIONS

For transfer of functions of other officers, employees, and agencies of Department of the Interior, with certain exceptions, to Secretary of the Interior, with power to delegate, see Reorg. Plan No. 3 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3174, 64 Stat. 1262, set out in the Appendix to Title 5, Government Organization and Employees.

### § 410c. Preservation of primitive condition

The said area or areas shall be permanently reserved as a wilderness, and no development of the project or plan for the entertainment of visitors shall be undertaken which will interfere with the preservation intact of the unique flora and fauna and the essential primitive natural conditions now prevailing in this area.

(May 30, 1934, ch. 371, §4, 48 Stat. 817.)

### § 410d. Acceptance and protection of property pending establishment of park; publication of establishment order

(a) For the purpose of protecting the scenery, the wildlife, and other natural features of the region authorized to be established as the Everglades National Park by sections 410 to 410c of this title, notwithstanding any provision contained in said sections, the Secretary of the Interior is authorized in his discretion to accept on behalf of the United States any land, submerged land, or interests therein, subject to such reservations of oil, gas, or mineral rights as the Secretary may approve, within the area of approximately two thousand square miles recommended by said Secretary in his report to the Congress of December 3, 1930, pursuant to the Act of March 1, 1929 (45 Stat. 1443): *Provided*, That no general development of the property accepted pursuant to this section shall be undertaken nor shall the park be established until title satisfactory to the Secretary to a major portion of the lands, to be selected by him, within the aforesaid recommended area shall have

boundary 9,232 feet, east of the western boundary of the MRA.

''(2) EXTENT OF EASEMENTS.—The aggregate extent of the east-west parcels of lands subject to easements under paragraph (1) shall not exceed 2,100 linear feet, as depicted on the map referred to in section 4(4).

''(3) USE OF EASEMENTS.—At the discretion of the Secretary, the Secretary may use the natural easements specified in paragraph (1) to fulfill a hydrological or other environmental objective of the Everglades National Park.

''(4) ADDITIONAL REQUIREMENTS.—In addition to providing for the easements specified in paragraph (1), the Tribe shall not impair or impede the continued function of the water control structures designated as 'S–12A' and 'S–12B', located north of the MRA on the Tamiami Trail and any existing water flow ways under the Old Tamiami Trail.

''(5) USE BY DEPARTMENT OF THE INTERIOR.—The Department of the Interior shall have a right, in perpetuity, to use and occupy, and to have vehicular and airboat access to, the Tamiami Ranger Station identified on the map referred to in section 4(4), except that the pad on which such station is constructed shall not be increased in size without the consent of the Tribe.

''SEC. 7. IMPLEMENTATION PROCESS.

''(a) GOVERNMENT-TO-GOVERNMENT AGREEMENTS.—The Secretary and the tribal chairman shall make reasonable, good faith efforts to implement the requirements of this Act. Those efforts may include government-to-government consultations, and the development of standards of performance and monitoring protocols.

''(b) FEDERAL MEDIATION AND CONCILIATION SERVICE.—If the Secretary and the tribal chairman concur that they cannot reach agreement on any significant issue relating to the implementation of the requirements of this Act, the Secretary and the tribal chairman may jointly request that the Federal Mediation and Conciliation Service assist them in reaching a satisfactory agreement.

''(c) 60-DAY TIME LIMIT.—The Federal Mediation and Conciliation Service may conduct mediation or other nonbinding dispute resolution activities for a period not to exceed 60 days beginning on the date on which the Federal Mediation and Conciliation Service receives the request for assistance, unless the Secretary and the tribal chairman agree to an extension of period of time.

''(d) OTHER RIGHTS PRESERVED.—The facilitated dispute resolution specified in this section shall not prejudice any right of the parties to—

''(1) commence an action in a court of the United States at any time; or

''(2) any other resolution process that is not prohibited by law.

''SEC. 8. MISCELLANEOUS.

''(a) NO GENERAL APPLICABILITY.—Nothing in this Act creates any right, interest, privilege, or immunity affecting any other Tribe or any other park or Federal lands.

''(b) NONINTERFERENCE WITH FEDERAL AGENTS.—

''(1) IN GENERAL.—Federal employees, agents, officers, and officials shall have a right of access to the MRA—

''(A) to monitor compliance with the provisions of this Act; and

''(B) for other purposes, as though it were a Federal Indian reservation.

''(2) STATUTORY CONSTRUCTION.—Nothing in this Act shall authorize the Tribe or members or agents of the Tribe to interfere with any Federal employee, agent, officer, or official in the performance of official duties (whether within or outside the boundaries of the MRA) except that nothing in this paragraph may prejudice any right under the Constitution of the United States.

''(c) FEDERAL PERMITS.—

''(1) IN GENERAL.—No Federal permit shall be issued to the Tribe for any activity or structure that would be inconsistent with this Act.

''(2) CONSULTATIONS.—Any Federal agency considering an application for a permit for construction or activities on the MRA shall consult with, and consider the advice, evidence, and recommendations of the Secretary before issuing a final decision.

''(3) RULE OF CONSTRUCTION.—Except as otherwise specifically provided in this Act, nothing in this Act supersedes any requirement of any other applicable Federal law.

''(d) VOLUNTEER PROGRAMS AND TRIBAL INVOLVEMENT.—The Secretary may establish programs that foster greater involvement by the Tribe with respect to the Park. Those efforts may include internships and volunteer programs with tribal schoolchildren and with adult tribal members.

''(e) SAVING ECOSYSTEM RESTORATION.—

''(1) IN GENERAL.—Nothing in this Act shall be construed to amend or prejudice the authority of the United States to design, construct, fund, operate, permit, remove, or degrade canals, levees, pumps, impoundments, wetlands, flow ways, or other facilities, structures, or systems, for the restoration or protection of the South Florida ecosystem pursuant to Federal laws.

''(2) USE OF NONEASEMENT LANDS.—

''(A) IN GENERAL.—The Secretary may use all or any part of the MRA lands to the extent necessary to restore or preserve the quality, quantity, timing, or distribution of surface or groundwater, if other reasonable alternative measures to achieve the same purpose are impractical.

''(B) SECRETARIAL AUTHORITY.—The Secretary may use lands referred to in subparagraph (A) either under an agreement with the tribal chairman or upon an order of the United States district court for the district in which the MRA is located, upon petition by the Secretary and finding by the court that—

''(i) the proposed actions of the Secretary are necessary; and

''(ii) other reasonable alternative measures are impractical.

''(3) COSTS.—

''(A) IN GENERAL.—In the event the Secretary exercises the authority granted the Secretary under paragraph (2), the United States shall be liable to the Tribe or the members of the Tribe for—

''(i) cost of modification, removal, relocation, or reconstruction of structures lawfully erected in good faith on the MRA; and

''(ii) loss of use of the affected land within the MRA.

''(B) PAYMENT OF COMPENSATION.—Any compensation paid under subparagraph (A) shall be paid as cash payments with respect to taking structures and other fixtures and in the form of rights to occupy similar land adjacent to the MRA with respect to taking land.

''(4) RULE OF CONSTRUCTION.—Paragraphs (2) and (3) shall not apply to a natural easement described in section 6(d)(1).

''(f) PARTIES HELD HARMLESS.—

''(1) UNITED STATES HELD HARMLESS.—

''(A) IN GENERAL.—Subject to subparagraph (B) with respect to any tribal member, tribal employee, tribal contractor, tribal enterprise, or any person residing within the MRA, notwithstanding any other provision of law, the United States (including an officer, agent, or employee of the United States), shall not be liable for any action or failure to act by the Tribe (including an officer, employee, or member of the Tribe), including any failure to perform any of the obligations of the Tribe under this Act.

''(B) RULE OF CONSTRUCTION.—Nothing in this paragraph shall be construed to alter any liability or other obligation that the United States may have under the Indian Self-Determination and Education Assistance Act (25 U.S.C. 450 et seq.) [now 25 U.S.C. 5301 et seq.].

**25 U.S.C. §§ 1741-1750e**

(Pub. L. 96–420, §11, Oct. 10, 1980, 94 Stat. 1796.)

CODIFICATION

"October 10, 1980," substituted in text for "the effective date of this Act".

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 1724 of this title.

## § 1731. Other claims discharged by this subchapter

Except as expressly provided herein, this subchapter shall constitute a general discharge and release of all obligations of the State of Maine and all of its political subdivisions, agencies, departments, and all of the officers or employees thereof arising from any treaty or agreement with, or on behalf of any Indian nation, or tribe or band of Indians or the United States as trustee therefor, including those actions now pending in the United States District Court for the District of Maine captioned United States of America against State of Maine (Civil Action Nos. 1966–ND and 1969–ND).

(Pub. L. 96–420, §12, Oct. 10, 1980, 94 Stat. 1796.)

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 1724 of this title.

## § 1732. Limitation of actions

Except as provided in this subchapter, no provision of this subchapter shall be construed to constitute a jurisdictional act, to confer jurisdiction to sue, or to grant implied consent to any Indian, Indian nation, or tribe or band of Indians to sue the United States or any of its officers with respect to the claims extinguished by the operation of this subchapter.

(Pub. L. 96–420, §13, Oct. 10, 1980, 94 Stat. 1797.)

## § 1733. Authorization of appropriations

There is hereby authorized to be appropriated $81,500,000 for the fiscal year beginning October 1, 1980, for transfer to the funds established by section 1724 of this title.

(Pub. L. 96–420, §14, Oct. 10, 1980, 94 Stat. 1797.)

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 1724 of this title.

## § 1734. Inseparability of provisions

In the event that any provision of section 1723 of this title is held invalid, it is the intent of Congress that the entire subchapter be invalidated. In the event that any other section or provision of this subchapter is held invalid, it is the intent of Congress that the remaining sections of this subchapter shall continue in full force and effect.

(Pub. L. 96–420, §15, Oct. 10, 1980, 94 Stat. 1797.)

## § 1735. Construction

### (a) Law governing; special legislation

In the event a conflict of interpretation between the provisions of the Maine Implementing Act and this subchapter should emerge, the provisions of this subchapter shall govern.

### (b) General legislation

The provisions of any Federal law enacted after October 10, 1980, for the benefit of Indians, Indian nations, or tribes or bands of Indians, which would affect or preempt the application of the laws of the State of Maine, including application of the laws of the State to lands owned by or held in trust for Indians, or Indian nations, tribes, or bands of Indians, as provided in this subchapter and the Maine Implementing Act, shall not apply within the State of Maine, unless such provision of such subsequently enacted Federal law is specifically made applicable within the State of Maine.

(Pub. L. 96–420, §16, Oct. 10, 1980, 94 Stat. 1797.)

SUBCHAPTER III—FLORIDA INDIAN (MICCOSUKEE) LAND CLAIMS SETTLEMENT

PART A—FLORIDA INDIAN LAND CLAIMS SETTLEMENT ACT OF 1982

## § 1741. Congressional findings and declaration of policy

Congress finds and declares that—

(1) there is pending before the United States District Court for the Southern District of Florida a lawsuit by the Miccosukee Indian Tribe which involves certain lands within the State of Florida;

(2) the pendency of such lawsuit may result in economic hardships for residents of the State of Florida by clouding the titles to lands in the State, including lands not now involved in the lawsuits;

(3) the pendency of such lawsuit also has clouded the easement rights of the South Florida Water Management District in lands necessary for use as a water flowage and storage area, which is part of a federally authorized project for flood control and water management in central and southern Florida, and which is being used to provide and regulate a water supply for the residents of South Florida;

(4) the State of Florida and the Miccosukee Indian Tribe have executed agreements for the purposes of resolving tribal land claims and settling such lawsuit, which agreements require implementing legislation by the Congress of the United States and the Legislature of the State of Florida; and

(5) Congress shares with the parties to such agreements a desire to settle such Indian claims in the State of Florida without additional cost to the United States.

(Pub. L. 97–399, §2, Dec. 31, 1982, 96 Stat. 2012.)

SHORT TITLE

Section 1 of Pub. L. 97–399 provided: "That this Act [enacting this part] may be cited as the 'Florida Indian Land Claims Settlement Act of 1982'."

## § 1742. Definitions

For purposes of this part—

(1) The term "Miccosukee Tribe" means the Miccosukee Tribe of Indians of Florida, a tribe of American Indians recognized by the United States and organized under section 476 of this title and recognized by the State of Florida pursuant to chapter 285, Florida Statutes.

(2) The term "State of Florida" means the State of Florida, its agencies, political sub-

divisions, constitutional officers, officials of its agencies and subdivisions, and the South Florida Water Management District.

(3) The term ''Secretary'' means the Secretary of the Interior.

(4) The term ''lands or natural resources'' means any real property or natural resources, or any interest in or right involving any real property or natural resources including but not limited to minerals and mineral rights, timber and timber rights, water and water rights, and rights to hunt and fish.

(5) The term ''lawsuit'' means the action in the United States District Court for the Southern District of Florida, entitled Miccosukee Tribe of Indians of Florida against State of Florida, et al., Case No. 79–253–CIV–JWK.

(6) The term ''Lease Agreement'' means that perpetual lease granted by the State of Florida to the Miccosukee Tribe, involving a specifically described area in South Florida, title to which is held by the State of Florida and in which the Miccosukee Tribe is granted certain express rights and interests.

(7) The term ''settlement funds'' means those amounts of money which the State of Florida has agreed to pay to the Miccosukee Tribe under the Settlement Agreement in partial consideration for the settlement of the lawsuit and the extinguishment of rights to all potential or unsettled claims which the Miccosukee Tribe may have to lands or natural resources in the State of Florida.

(8) The term ''Settlement Agreement'' means those documents entitled ''Settlement Agreement between the Miccosukee Tribe and the State of Florida'' executed on April 16, 1982, by representatives of the State of Florida and representatives of the Miccosukee Tribe and filed with the secretary of state of the State of Florida which incorporate the Lease Agreement described in paragraph (6) of this section.

(9) The term ''transfer'' includes but is not limited to any sale, grant, lease, allotment, partition, or conveyance, any transaction the purpose of which was to effect a sale, grant, lease, allotment, partition, or conveyance, or any event or events that resulted in a change of possession or control of lands or natural resources.

(Pub. L. 97–399, § 3, Dec. 31, 1982, 96 Stat. 2012.)

## § 1743. Findings by the Secretary

Section 1744 of this title shall not take effect until the Secretary finds that the following events have occurred:

(1) the State of Florida has enacted legislation appropriating sufficient money to pay, and in fact has paid, the settlement funds to the Miccosukee Tribe;

(2) the State of Florida and the Miccosukee Tribe have executed the Lease Agreement; and

(3) the State of Florida has enacted appropriate legislation to carry out its commitments under paragraph 1b of the Settlement Agreement between the State of Florida and the Miccosukee Tribe and has given the waiver specified in paragraph 4d of such Agreement.

(Pub. L. 97–399, § 4, Dec. 31, 1982, 96 Stat. 2013.)

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 1744 of this title.

## § 1744. Approval of prior transfers and extinguishment of claims and aboriginal title involving Florida Indians

### (a) Publication of findings; consequences

If the Secretary finds that the State of Florida has satisfied the conditions set forth in section 1743 of this title, he shall publish such findings and the Settlement Agreement in the Federal Register, and upon such publication—

(1) the transfers, waivers, releases, relinquishments, and other commitments made by the Miccosukee Tribe in paragraph 3 of the Settlement Agreement between the State of Florida and the Miccosukee Tribe shall be of full force and effect on the terms and conditions therein stated; and

(2) the transfers, waivers, releases, relinquishments, and other commitments validated by paragraph (1) of this subsection and the transfers and extinguishments approved and validated by paragraphs (1) and (2) of subsection (b) of this section shall be deemed to have been made in accordance with the Constitution and all laws of the United States that are specifically applicable to transfers of lands or natural resources from, by, or on behalf of any Indian, Indian nation, or tribe of Indians (including but not limited to the Act of July 22, 1790 (1 Stat. 137) and any amendments thereto and all subsequent versions thereof), and Congress does hereby approve any such transfers effective as of the date of such transfers.

### (b) Scope of applicability to claims, transfers, etc.

(1) All claims to lands within the State of Florida based upon aboriginal title by the Miccosukee Tribe, or any predecessor or successor in interest, are hereby extinguished, and any transfer of lands or natural resources located anywhere within the State of Florida, including but not limited to transfers pursuant to the statute or treaty of or with any State or the United States, by, from, or on behalf of the Miccosukee Tribe, or any predecessor or successor in interest, shall be deemed to be in full force and effect: *Provided, however,* That nothing herein shall be construed as extinguishing any aboriginal right, title, interest, or claim to lands or natural resources solely to the extent of the rights or interests defined as ''excepted interests'' in paragraph 3c of the Settlement Agreement between the State of Florida and the Miccosukee Tribe.

(2) By virtue of the approval of a transfer of lands or natural resources effected by this section, or an extinguishment of aboriginal title effected thereby, all claims against the United States, any State or subdivision thereof, or any other person or entity, by the Miccosukee Tribe, arising subsequent to the transfer and based upon any interest in or right involving such lands or natural resources, including but not limited to claims for trespass damages or claims for use and occupancy, shall be regarded as extinguished as of the date of the transfer.

(3) Notwithstanding any other provision of this subsection, nothing in this subchapter shall be construed as extinguishing any right, title, interest, or claim to lands or natural resources in the State of Florida by any individual Indian—

(A) which is based on use and occupancy, or
(B) which was acquired under Federal or State law,

and which is not derived from or through the Miccosukee Tribe, or its predecessor or predecessors in interest.

(Pub. L. 97–399, §5, Dec. 31, 1982, 96 Stat. 2013.)

REFERENCES IN TEXT

Act of July 22, 1790, referred to in subsec. (a)(2), is act July 22, 1790, ch. 33, 1 Stat. 137, which was not classified to the Code.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 1743, 1749 of this title.

### §1745. Special provisions for Miccosukee Tribe

#### (a) Exemption of leasehold from State and local taxes

The leasehold interest granted the Miccosukee Tribe under the Lease Agreement shall be exempt from all State and local taxes.

#### (b) Treatment of leasehold as Indian reservation

The lands leased to the Miccosukee Tribe pursuant to the Lease Agreement shall be treated as if such lands constituted a federally recognized Indian reservation solely for purposes of determining the eligibility of the Miccosukee Tribe and its members for any Federal health, education, employment, economic assistance, revenue sharing, law enforcement over Indians, or social welfare programs, or any other similar Federal program for which Indians are eligible because of their status as Indians and of their residence on an Indian reservation.

#### (c) Power of State of Florida to diminish leasehold interests for public purposes

The State of Florida, through exercise of the power of eminent domain, may take or diminish any interest granted to the Miccosukee Tribe under the Lease Agreement only for a public purpose and upon payment of just compensation, but such taking or diminution shall not require the approval of Congress or any executive officer of the United States.

#### (d) Impairment of benefits received by State of Florida under other provisions

Nothing in this part or in any grant of leasehold rights by the State of Florida under the Lease Agreement shall affect or otherwise impair in any adverse manner any benefits received by the State of Florida under the Act of September 2, 1937 (16 U.S.C. 669 et seq.), or the Act of August 9, 1950 (16 U.S.C. 777 et seq.).

(Pub. L. 97–399, §6, Dec. 31, 1982, 96 Stat. 2014.)

REFERENCES IN TEXT

Act of September 2, 1937, referred to in subsec. (d), is act Sept. 2, 1937, ch. 899, 50 Stat. 917, as amended, known as the Pittman-Robertson Wildlife Restoration Act, and also as the Federal Aid in Wildlife Restoration Act, which is classified generally to chapter 5B (§669 et seq.) of Title 16, Conservation. For complete classification of this Act to the Code, see Short Title note set out under section 669 of Title 16 and Tables.

Act of August 9, 1950, referred to in subsec. (d), is act Aug. 9, 1950, ch. 658, 64 Stat. 430, as amended, known as the Dingell-Johnson Sport Fish Restoration Act, and also as the Federal Aid in Fish Restoration Act and the Fish Restoration and Management Projects Act, which is classified generally to chapter 10B (§777 et seq.) of Title 16, Conservation. For complete classification of this Act to the Code, see Short Title note set out under section 777 of Title 16 and Tables.

### §1746. Scope of rights or interests granted to Miccosukee Tribe; scope of civil and criminal jurisdiction of State of Florida

Nothing in this part shall grant to the Miccosukee Tribe any greater rights or interests in the leased area other than those expressly set forth in the Lease Agreement, and, notwithstanding any other provision of this part, nothing in this part shall diminish, modify, or otherwise affect the extent of the civil and criminal jurisdiction of the State of Florida in the leased area.

(Pub. L. 97–399, §7, Dec. 31, 1982, 96 Stat. 2015.)

### §1747. Transfer of lands to United States

#### (a) Acceptance by Secretary

The Secretary is authorized and directed to accept the transfer to the United States, to be held in trust for the use and benefit of the Miccosukee Tribe of Indians of Florida, of the lands authorized to be conveyed to the Miccosukee Tribe by section 285.061, Florida Statutes, and the lands described in Dedication Deed No. 23228 from the Trustees of the Internal Improvement Trust Fund subject to the provisions of section 285.061, Florida Statutes, and of this section.

#### (b) Jurisdiction of State of Florida

(1) Notwithstanding the conveyance of any lands by the State of Florida to the United States in trust for the Miccosukee Tribe of Indians of Florida, the assumption of jurisdiction in favor of the State of Florida contained in section 285.16, Florida Statutes, pursuant to section 7 of the Act of August 15, 1953 (67 Stat. 588), as in effect prior to its repeal, shall continue in full force and effect on such lands unless the State shall retrocede such civil or criminal jurisdiction in whole or in part.

(2)(A) The laws of Florida relating to alcoholic beverages (chapters 561, 562, 563, 564, and 565, Florida Statutes), gambling (chapter 849, Florida Statutes), sale of cigarettes (chapter 210, Florida Statutes), and their successor laws, shall have the same force and effect within said transferred lands as they have elsewhere within the State and the State shall have jurisdiction over offenses committed by or against Indians under said laws to the same extent the State has jurisdiction over said offenses committed elsewhere within the State.

(B) Nothing in subparagraph (A) shall permit the exercise of jurisdiction by the State of Florida as to any matter to which section 1162(b) of title 18 or section 1360(b) of title 28 applies.

**(c) Transfer of lands as subject to existing leases, etc.; additional water rights**

(1) Any transfer of lands under this section shall be subject to all existing leases, easements, and rights-of-way, and all the rights, easements, and reservations in favor of the Central and Southern Florida Flood Control District (now the South Florida Water Management District) and shall not increase, diminish, modify, or otherwise affect the extent to which chapter 373, Florida Statutes, and its successor laws, have force and effect within such lands.

(2) Any transfer of lands under this section shall not confer upon the Miccosukee Tribe, or upon the lands within the reservation, any additional water rights.

(Pub. L. 97–399, § 8, Dec. 31, 1982, 96 Stat. 2015.)

REFERENCES IN TEXT

Section 7 of Act August 15, 1953 (67 Stat. 588), as in effect prior to its repeal, referred to in subsec. (b)(1), is section 7 of act Aug. 15, 1953, ch. 505, 67 Stat. 590, which was set out as a note under section 1360 of Title 28, Judiciary and Judicial Procedure, and was repealed by Pub. L. 90–284, title IV, § 403(b), Apr. 11, 1968, 82 Stat. 79.

**§ 1748. Limitations of actions**

Notwithstanding any other provision of law, any action to contest the constitutionality of this part shall be barred unless the complaint is filed within one hundred and eighty days after December 31, 1982. An action to contest the constitutionality of this part may only be brought in the United States District Court for the Southern District of Florida.

(Pub. L. 97–399, § 9, Dec. 31, 1982, 96 Stat. 2016.)

**§ 1749. Revocation of settlement**

In the event the Settlement Agreement between the Miccosukee Tribe and the State of Florida is ever invalidated—

(1) the transfers, waivers, releases, relinquishments, and other commitments made by the Miccosukee Tribe in paragraph 3 of the Settlement Agreement shall no longer be of any force or effect,

(2) section 1744 of this title shall be inapplicable to the lands, interests in lands, or natural resources of the Miccosukee Tribe and its members as if never enacted, and

(3) the approvals of prior transfers and the extinguishment of claims and aboriginal title of the Miccosukee Tribe otherwise effected by section 1744 of this title shall be void ab initio.

(Pub. L. 97–399, § 10, Dec. 31, 1982, 96 Stat. 2016.)

PART B—MICCOSUKEE SETTLEMENT

**§ 1750. Congressional findings**

Congress finds that:

(1) There is pending before the United States District Court for the Southern District of Florida a lawsuit by the Miccosukee Tribe that involves the taking of certain tribal lands in connection with the construction of highway Interstate 75 by the Florida Department of Transportation.

(2) The pendency of the lawsuit referred to in paragraph (1) clouds title of certain lands used in the maintenance and operation of the highway and hinders proper planning for future maintenance and operations.

(3) The Florida Department of Transportation, with the concurrence of the Board of Trustees of the Internal Improvements Trust Fund of the State of Florida, and the Miccosukee Tribe have executed an agreement for the purpose of resolving the dispute and settling the lawsuit.

(4) The agreement referred to in paragraph (3) requires the consent of Congress in connection with contemplated land transfers.

(5) The Settlement Agreement is in the interest of the Miccosukee Tribe, as the Tribe will receive certain monetary payments, new reservation lands to be held in trust by the United States, and other benefits.

(6) Land received by the United States pursuant to the Settlement Agreement is in consideration of Miccosukee Indian Reservation lands lost by the Miccosukee Tribe by virtue of transfer to the Florida Department of Transportation under the Settlement Agreement.

(7) The lands referred to in paragraph (6) as received by the United States will be held in trust by the United States for the use and benefit of the Miccosukee Tribe as Miccosukee Indian Reservation lands in compensation for the consideration given by the Tribe in the Settlement Agreement.

(8) Congress shares with the parties to the Settlement Agreement a desire to resolve the dispute and settle the lawsuit.

(Pub. L. 105–83, title VII, § 702, Nov. 14, 1997, 111 Stat. 1624.)

SHORT TITLE

Section 701 of title VII of Pub. L. 105–83 provided that: "This title [enacting this part] may be cited as the 'Miccosukee Settlement Act of 1997'."

**§ 1750a. Definitions**

In this part:

**(1) Board of Trustees of the Internal Improvements Trust Fund**

The term "Board of Trustees of the Internal Improvements Trust Fund" means the agency of the State of Florida holding legal title to and responsible for trust administration of certain lands of the State of Florida, consisting of the Governor, Attorney General, Commissioner of Agriculture, Commissioner of Education, Controller, Secretary of State, and Treasurer of the State of Florida, who are Trustees of the Board.

**(2) Florida Department of Transportation**

The term "Florida Department of Transportation" means the executive branch department and agency of the State of Florida that—

(A) is responsible for the construction and maintenance of surface vehicle roads, existing pursuant to section 20.23, Florida Statutes; and

(B) has the authority to execute the Settlement Agreement pursuant to section 334.044, Florida Statutes.

**(3) Lawsuit**

The term "lawsuit" means the action in the United States District Court for the Southern