**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**

No. 24-5101

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY, ET AL.,
*Plaintiff-Appellees / Cross-Appellants,*

v.

MICHAEL REGAN, ET AL.,
*Defendant-Appellants / Cross-Appellees,*

and

STATE OF FLORIDA, ET AL.,
*Intervenors-Defendants-Appellants / Cross-Appellees.*

Appeal from the United States District Court for the District of Columbia
No. 1:21-cv-0119 (Hon. Randolph D. Moss)

**CORRECTED ADDENDUM FOR ENVIRONMENTAL APPELLEES**

Tania Galloni
Christina I. Reichert
Earthjustice
4500 Biscayne Blvd, Ste. 201
Miami, FL 33137
Tel.: (305) 440-5432
tgalloni@earthjustice.org
creichert@earthjustice.org

Bonnie Malloy
Earthjustice
111 S. MLK Jr. Blvd.
Tallahassee, FL 32301
Tel.: (850) 681-0031
bmalloy@earthjustice.org

*Counsel for Plaintiff-Appellees / Cross-Appellants*

## **ADDENDUM**

16 U.S.C. § 1533 ...................................................................................001a

S. Rep. No. 93-307 (1973) ....................................................................011a

S. Rep. No. 97-418 (1982) ....................................................................053a

H.R. Rep. No. 97-567 (1982)................................................................096a

40 C.F.R. § 233.20 ................................................................................176a

50 C.F.R. § 17.11 ..................................................................................177a

50 C.F.R. § 17.22 ..................................................................................302a

50 C.F.R. § 17.23 ..................................................................................313a

84 Fed. Reg. 44,976-01 (Aug. 27, 2019) .............................................316a

Fla. Admin. Code R. 62-331.51 (2020) ................................................359a

Fla. Admin. Code R. 62-331.054 (2020) ..............................................360a

United States Code Annotated
 Title 16. Conservation
  Chapter 35. Endangered Species (Refs & Annos)

16 U.S.C.A. § 1533

§ 1533. Determination of endangered species and threatened species

Effective: December 27, 2022
Currentness

**(a) Generally**

**(1)** The Secretary shall by regulation promulgated in accordance with subsection (b) determine whether any species is an endangered species or a threatened species because of any of the following factors:

**(A)** the present or threatened destruction, modification, or curtailment of its habitat or range;

**(B)** overutilization for commercial, recreational, scientific, or educational purposes;

**(C)** disease or predation;

**(D)** the inadequacy of existing regulatory mechanisms; or

**(E)** other natural or manmade factors affecting its continued existence.

**(2)** With respect to any species over which program responsibilities have been vested in the Secretary of Commerce pursuant to Reorganization Plan Numbered 4 of 1970--

**(A)** in any case in which the Secretary of Commerce determines that such species should--

**(i)** be listed as an endangered species or a threatened species, or

**(ii)** be changed in status from a threatened species to an endangered species,

he shall so inform the Secretary of the Interior, who shall list such species in accordance with this section;

**(B)** in any case in which the Secretary of Commerce determines that such species should--

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.
Addendum 001a   1

**(i)** be removed from any list published pursuant to subsection (c) of this section, or

**(ii)** be changed in status from an endangered species to a threatened species,

he shall recommend such action to the Secretary of the Interior, and the Secretary of the Interior, if he concurs in the recommendation, shall implement such action; and

**(C)** the Secretary of the Interior may not list or remove from any list any such species, and may not change the status of any such species which are listed, without a prior favorable determination made pursuant to this section by the Secretary of Commerce.

**(3)(A)** The Secretary, by regulation promulgated in accordance with subsection (b) and to the maximum extent prudent and determinable--

**(i)** shall, concurrently with making a determination under paragraph (1) that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat; and

**(ii)** may, from time-to-time thereafter as appropriate, revise such designation.

**(B)(i)** The Secretary shall not designate as critical habitat any lands or other geographical areas owned or controlled by the Department of Defense, or designated for its use, that are subject to an integrated natural resources management plan prepared under section 670a of this title, if the Secretary determines in writing that such plan provides a benefit to the species for which critical habitat is proposed for designation.

**(ii)** Nothing in this paragraph affects the requirement to consult under section 1536(a)(2) of this title with respect to an agency action (as that term is defined in that section).

**(iii)** Nothing in this paragraph affects the obligation of the Department of Defense to comply with section 1538 of this title, including the prohibition preventing extinction and taking of endangered species and threatened species.

**(b) Basis for determinations**

**(1)(A)** The Secretary shall make determinations required by subsection (a)(1) solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas.

**(B)** In carrying out this section, the Secretary shall give consideration to species which have been--

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Addendum 002a**

**(i)** designated as requiring protection from unrestricted commerce by any foreign nation, or pursuant to any international agreement; or

**(ii)** identified as in danger of extinction, or likely to become so within the foreseeable future, by any State agency or by any agency of a foreign nation that is responsible for the conservation of fish or wildlife or plants.

**(2)** The Secretary shall designate critical habitat, and make revisions thereto, under subsection (a)(3) on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat. The Secretary may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned.

**(3)(A)** To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5, to add a species to, or to remove a species from, either of the lists published under subsection (c), the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted. If such a petition is found to present such information, the Secretary shall promptly commence a review of the status of the species concerned. The Secretary shall promptly publish each finding made under this subparagraph in the Federal Register.

**(B)** Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings:

**(i)** The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.

**(ii)** The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5).

**(iii)** The petitioned action is warranted, but that--

**(I)** the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and

**(II)** expeditious progress is being made to add qualified species to either of the lists published under subsection (c) and to remove from such lists species for which the protections of this chapter are no longer necessary,

in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**(C)(i)** A petition with respect to which a finding is made under subparagraph (B)(iii) shall be treated as a petition that is resubmitted to the Secretary under subparagraph (A) on the date of such finding and that presents substantial scientific or commercial information that the petitioned action may be warranted.

**(ii)** Any negative finding described in subparagraph (A) and any finding described in subparagraph (B)(i) or (iii) shall be subject to judicial review.

**(iii)** The Secretary shall implement a system to monitor effectively the status of all species with respect to which a finding is made under subparagraph (B)(iii) and shall make prompt use of the authority under paragraph 7 [1] to prevent a significant risk to the well being of any such species.

**(D)(i)** To the maximum extent practicable, within 90 days after receiving the petition of an interested person under section 553(e) of Title 5, to revise a critical habitat designation, the Secretary shall make a finding as to whether the petition presents substantial scientific information indicating that the revision may be warranted. The Secretary shall promptly publish such finding in the Federal Register.

**(ii)** Within 12 months after receiving a petition that is found under clause (i) to present substantial information indicating that the requested revision may be warranted, the Secretary shall determine how he intends to proceed with the requested revision, and shall promptly publish notice of such intention in the Federal Register.

**(4)** Except as provided in paragraphs (5) and (6) of this subsection, the provisions of section 553 of Title 5 (relating to rulemaking procedures), shall apply to any regulation promulgated to carry out the purposes of this chapter.

**(5)** With respect to any regulation proposed by the Secretary to implement a determination, designation, or revision referred to in subsection (a)(1) or (3), the Secretary shall--

**(A)** not less than 90 days before the effective date of the regulation--

**(i)** publish a general notice and the complete text of the proposed regulation in the Federal Register, and

**(ii)** give actual notice of the proposed regulation (including the complete text of the regulation) to the State agency in each State in which the species is believed to occur, and to each county or equivalent jurisdiction in which the species is believed to occur, and invite the comment of such agency, and each such jurisdiction, thereon;

**(B)** insofar as practical, and in cooperation with the Secretary of State, give notice of the proposed regulation to each foreign nation in which the species is believed to occur or whose citizens harvest the species on the high seas, and invite the comment of such nation thereon;

**(C)** give notice of the proposed regulation to such professional scientific organizations as he deems appropriate;

 WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works. **Addendum 004a** 4

**(D)** publish a summary of the proposed regulation in a newspaper of general circulation in each area of the United States in which the species is believed to occur; and

**(E)** promptly hold one public hearing on the proposed regulation if any person files a request for such a hearing within 45 days after the date of publication of general notice.

**(6)(A)** Within the one-year period beginning on the date on which general notice is published in accordance with paragraph (5) (A)(i) regarding a proposed regulation, the Secretary shall publish in the Federal Register--

   **(i)** if a determination as to whether a species is an endangered species or a threatened species, or a revision of critical habitat, is involved, either--

      **(I)** a final regulation to implement such determination,

      **(II)** a final regulation to implement such revision or a finding that such revision should not be made,

      **(III)** notice that such one-year period is being extended under subparagraph (B)(i), or

      **(IV)** notice that the proposed regulation is being withdrawn under subparagraph (B)(ii), together with the finding on which such withdrawal is based; or

   **(ii)** subject to subparagraph (C), if a designation of critical habitat is involved, either--

      **(I)** a final regulation to implement such designation, or

      **(II)** notice that such one-year period is being extended under such subparagraph.

**(B)(i)** If the Secretary finds with respect to a proposed regulation referred to in subparagraph (A)(i) that there is substantial disagreement regarding the sufficiency or accuracy of the available data relevant to the determination or revision concerned, the Secretary may extend the one-year period specified in subparagraph (A) for not more than six months for purposes of soliciting additional data.

**(ii)** If a proposed regulation referred to in subparagraph (A)(i) is not promulgated as a final regulation within such one-year period (or longer period if extension under clause (i) applies) because the Secretary finds that there is not sufficient evidence to justify the action proposed by the regulation, the Secretary shall immediately withdraw the regulation. The finding on which a withdrawal is based shall be subject to judicial review. The Secretary may not propose a regulation that has previously been withdrawn under this clause unless he determines that sufficient new information is available to warrant such proposal.

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**(iii)** If the one-year period specified in subparagraph (A) is extended under clause (i) with respect to a proposed regulation, then before the close of such extended period the Secretary shall publish in the Federal Register either a final regulation to implement the determination or revision concerned, a finding that the revision should not be made, or a notice of withdrawal of the regulation under clause (ii), together with the finding on which the withdrawal is based.

**(C)** A final regulation designating critical habitat of an endangered species or a threatened species shall be published concurrently with the final regulation implementing the determination that such species is endangered or threatened, unless the Secretary deems that--

**(i)** it is essential to the conservation of such species that the regulation implementing such determination be promptly published; or

**(ii)** critical habitat of such species is not then determinable, in which case the Secretary, with respect to the proposed regulation to designate such habitat, may extend the one-year period specified in subparagraph (A) by not more than one additional year, but not later than the close of such additional year the Secretary must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat.

**(7)** Neither paragraph (4), (5), or (6) of this subsection nor section 553 of Title 5 shall apply to any regulation issued by the Secretary in regard to any emergency posing a significant risk to the well-being of any species of fish or wildlife or plants, but only if--

**(A)** at the time of publication of the regulation in the Federal Register the Secretary publishes therein detailed reasons why such regulation is necessary; and

**(B)** in the case such regulation applies to resident species of fish or wildlife, or plants, the Secretary gives actual notice of such regulation to the State agency in each State in which such species is believed to occur.

Such regulation shall, at the discretion of the Secretary, take effect immediately upon the publication of the regulation in the Federal Register. Any regulation promulgated under the authority of this paragraph shall cease to have force and effect at the close of the 240-day period following the date of publication unless, during such 240-day period, the rulemaking procedures which would apply to such regulation without regard to this paragraph are complied with. If at any time after issuing an emergency regulation the Secretary determines, on the basis of the best appropriate data available to him, that substantial evidence does not exist to warrant such regulation, he shall withdraw it.

**(8)** The publication in the Federal Register of any proposed or final regulation which is necessary or appropriate to carry out the purposes of this chapter shall include a summary by the Secretary of the data on which such regulation is based and shall show the relationship of such data to such regulation; and if such regulation designates or revises critical habitat, such summary shall, to the maximum extent practicable, also include a brief description and evaluation of those activities (whether public or private) which, in the opinion of the Secretary, if undertaken may adversely modify such habitat, or may be affected by such designation.

**(c) Lists**

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**(1)** The Secretary of the Interior shall publish in the Federal Register a list of all species determined by him or the Secretary of Commerce to be endangered species and a list of all species determined by him or the Secretary of Commerce to be threatened species. Each list shall refer to the species contained therein by scientific and common name or names, if any, specify with respect to each such species over what portion of its range it is endangered or threatened, and specify any critical habitat within such range. The Secretary shall from time to time revise each list published under the authority of this subsection to reflect recent determinations, designations, and revisions made in accordance with subsections (a) and (b).

**(2)** The Secretary shall--

    **(A)** conduct, at least once every five years, a review of all species included in a list which is published pursuant to paragraph (1) and which is in effect at the time of such review; and

    **(B)** determine on the basis of such review whether any such species should--

        **(i)** be removed from such list;

        **(ii)** be changed in status from an endangered species to a threatened species; or

        **(iii)** be changed in status from a threatened species to an endangered species.

Each determination under subparagraph (B) shall be made in accordance with the provisions of subsections (a) and (b).

**(d) Protective regulations**

Whenever any species is listed as a threatened species pursuant to subsection (c) of this section, the Secretary shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species. The Secretary may by regulation prohibit with respect to any threatened species any act prohibited under section 1538(a)(1) of this title, in the case of fish or wildlife, or section 1538(a)(2) of this title, in the case of plants, with respect to endangered species; except that with respect to the taking of resident species of fish or wildlife, such regulations shall apply in any State which has entered into a cooperative agreement pursuant to section 1535(c) of this title only to the extent that such regulations have also been adopted by such State.

**(e) Similarity of appearance cases**

The Secretary may, by regulation of commerce or taking, and to the extent he deems advisable, treat any species as an endangered species or threatened species even though it is not listed pursuant to this section if he finds that--

    **(A)** such species so closely resembles in appearance, at the point in question, a species which has been listed pursuant to such section that enforcement personnel would have substantial difficulty in attempting to differentiate between the listed and unlisted species;

    **(B)** the effect of this substantial difficulty is an additional threat to an endangered or threatened species; and

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**(C)** such treatment of an unlisted species will substantially facilitate the enforcement and further the policy of this chapter.

**(f) Recovery plans**

**(1)** The Secretary shall develop and implement plans (hereinafter in this subsection referred to as "recovery plans") for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless he finds that such a plan will not promote the conservation of the species. The Secretary, in developing and implementing recovery plans, shall, to the maximum extent practicable--

**(A)** give priority to those endangered species or threatened species, without regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity;

**(B)** incorporate in each plan--

**(i)** a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

**(ii)** objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and

**(iii)** estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal.

**(2)** The Secretary, in developing and implementing recovery plans, may procure the services of appropriate public and private agencies and institutions, and other qualified persons. Recovery teams appointed pursuant to this subsection shall not be subject to chapter 10 of Title 5.

**(3)** The Secretary shall report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all species listed pursuant to this section and on the status of all species for which such plans have been developed.

**(4)** The Secretary shall, prior to final approval of a new or revised recovery plan, provide public notice and an opportunity for public review and comment on such plan. The Secretary shall consider all information presented during the public comment period prior to approval of the plan.

**(5)** Each Federal agency shall, prior to implementation of a new or revised recovery plan, consider all information presented during the public comment period under paragraph (4).

WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**(g) Monitoring**

**(1)** The Secretary shall implement a system in cooperation with the States to monitor effectively for not less than five years the status of all species which have recovered to the point at which the measures provided pursuant to this chapter are no longer necessary and which, in accordance with the provisions of this section, have been removed from either of the lists published under subsection (c).

**(2)** The Secretary shall make prompt use of the authority under paragraph 7 [1] of subsection (b) of this section to prevent a significant risk to the well being of any such recovered species.

**(h) Agency guidelines; publication in Federal Register; scope; proposals and amendments: notice and opportunity for comments**

The Secretary shall establish, and publish in the Federal Register, agency guidelines to insure that the purposes of this section are achieved efficiently and effectively. Such guidelines shall include, but are not limited to--

**(1)** procedures for recording the receipt and the disposition of petitions submitted under subsection (b)(3) of this section;

**(2)** criteria for making the findings required under such subsection with respect to petitions;

**(3)** a ranking system to assist in the identification of species that should receive priority review under subsection (a)(1) of this section; and

**(4)** a system for developing and implementing, on a priority basis, recovery plans under subsection (f) of this section.

The Secretary shall provide to the public notice of, and opportunity to submit written comments on, any guideline (including any amendment thereto) proposed to be established under this subsection.

**(i) Submission to State agency of justification for regulations inconsistent with State agency's comments or petition**

If, in the case of any regulation proposed by the Secretary under the authority of this section, a State agency to which notice thereof was given in accordance with subsection (b)(5)(A)(ii) files comments disagreeing with all or part of the proposed regulation, and the Secretary issues a final regulation which is in conflict with such comments, or if the Secretary fails to adopt a regulation pursuant to an action petitioned by a State agency under subsection (b)(3), the Secretary shall submit to the State agency a written justification for his failure to adopt regulations consistent with the agency's comments or petition.

## CREDIT(S)

(Pub.L. 93-205, § 4, Dec. 28, 1973, 87 Stat. 886; Pub.L. 94-359, § 1, July 12, 1976, 90 Stat. 911; Pub.L. 95-632, §§ 11, 13, Nov. 10, 1978, 92 Stat. 3764, 3766; Pub.L. 96-159, § 3, Dec. 28, 1979, 93 Stat. 1225; Pub.L. 97-304, § 2(a), Oct. 13, 1982, 96 Stat. 1411; Pub.L. 100-478, Title I, §§ 1002 to 1004, Oct. 7, 1988, 102 Stat. 2306; Pub.L. 108-136, Div. A, Title III, § 318, Nov. 24, 2003, 117 Stat. 1433; Pub.L. 117-286, § 4(a)(113), Dec. 27, 2022, 136 Stat. 4318.)

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Notes of Decisions (570)

---

### Footnotes

1        So in original. Probably should be "paragraph (7)".

16 U.S.C.A. § 1533, 16 USCA § 1533
Current through P.L. 118-106. Some statute sections may be more current, see credits for details.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 WESTLAW © 2024 Thomson Reuters. No claim to original U.S. Government Works.    **Addendum 010a**    10

Calendar No. **289**

| 93D CONGRESS | SENATE | REPORT |
| *1st Session* | | No. 93–307 |

## ENDANGERED SPECIES ACT OF 1973

JULY 1, 1973.—Ordered to be printed
Filed under authority of the order of the Senate of June 30, 1973

Mr. MAGNUSON, from the Committee on Commerce,
submitted the following

## REPORT

[To accompany S. 1983]

The Committee on Commerce, to which was referred the bill (S. 1983) to provide for the conservation, protection, restoration, and propagation of species of fish, wildlife, and plants facing extinction, and for other purposes, having considered the same, reports favorably thereon with amendments and recommends that the bill do pass.

### PURPOSE

The purpose of this bill is to provide for conservation, protection and propagation of endangered species of fish and wildlife by Federal action and by encouraging the establishment of State endangered species conservation programs. The methods include authorization to the Secretaries of Interior and Commerce to list species which are either (1) endangered or (2) likely to become endangered within the forseeable future, and authority to establish an Advisory Committee for consultation regarding this list; authorization to the Secretary to use certain existing legislation for land acquisition; provision for criminal and civil penalties for violation of its prohibitions; provision for the administrative implementation of the international convention on endangered species; management of endangered and threatened species by the States under State plans that are approved by the Secretary; and provision for financial aid to State wildlife management agencies which enter into cooperative or management agreements with the Secretary.

Programs provided by this bill are to be administered jointly by the Secretary of the Interior and the Secretary of Commerce within their respective jurisdictions as regards fish or wildlife, as provided by Reorganization Plan No. 4 of 1970.

## BACKGROUND

It has become increasingly apparent that some sort of protective measures must be taken to prevent the further extinction of many of the world's animal species. The number of animals on the Secretary of the Interior's list of domestic species that are currently threatened with extinction is now 109. On the foreign list, there are over 300 species. Further, the rate of extinction has increased to where on the average, one species disappears per year.

Consideration of this need to protect endangered species goes beyond the aesthetic. In hearings before the Subcommittee on the Environment it was shown that many of these animals perform vital biological services to maintain a "balance of nature" within their environments. Also revealed was the need for biological diversity for scientific purposes.

The two major causes of extinction are hunting and destruction of natural habitat.

The first comprehensive endangered species legislation was enacted by the 89th Congress and has become known as the Endangered Species Preservation Act of October 15, 1966, (Public Law 89-669 (80 Stat. 926)). This Act achieved a dual objective: First, it authorized and directed the Secretary of the Interior to initiate and carry out a comprehensive program to conserve, restore, and where necessary to bolster wild populations to propagate selected species of *native* fish and wildlife, including game and non-game birds, that he found to be threatened with extinction. Secondly, it consolidated and in some cases expanded the authorities of the Secretary of the Interior relating to the management and administration of the National Wildlife Refuge System.

The 91st Congress enacted Public Law 91-135 (83 Stat. 275), known as the Endangered Species Conservation Act of 1969. This law expanded the endangered species program in at least three significant respects:

First, to help insure that the United States does not contribute to the extirpation of other nations' wildlife, the Secretary of the Interior was authorized to develop a list of species or subspecies of animals that were threatened with worldwide extinction, and to prohibit the importation from a foreign country of any such animal or any part, any product, or egg thereof. Two limited exceptions to this prohibition were provided: the first authorizes the Secretary to issue permits for the importation of listed animals for scientific, educational, zoological or propagational purposes; the second allows the Secretary to permit for one year the importation of such animals or products for commercial purposes if the importer was a party to a contract entered into prior to the date the animal was placed on the list if the importer would otherwise suffer "undue economic hardship".

Second, in order to assist the States in protecting domestically endangered species, the legislation amended existing laws to make unlawful throughout the United States their sale or purchase by any person who knows, or in the exercise of due care should know, that such animal was taken in any manner in violation of the laws or regulations of a State or foreign country. These provisions supplement an existing statute which currently prevents the interstate sale or purchase of fish, mammals, or birds in violation of State or foreign law.

Addendum 012a

302

Third, in order to further assist in the protection of domestically endangered species the law increased the amounts authorized to be appropriated to acquire lands for the purpose of conserving, protecting, restoring, or propagating any endangered species. This new authority for use of funds contained limits of $2.5 million per area and $5 million per year, and $15 million total ceiling.

### NEED FOR THE LEGISLATION

While the Acts of 1966 and 1969 laid the framework for an increasingly effective endangered species conservation program, the Department of the Interior has indicated some difficulties in expanding the practical effect of the program to the spirit of the original legislation. As the President stated in his Environmental Message of February 8, 1972, the existing law "simply does not provide the kind of management tools needed to act early enough to save a vanishing species."

From testimony offered at hearings on the bill, it is apparent that the following four requirements must be satisfied if the bill is to be effective:

(1) The bill must provide the Secretary with sufficient discretion in listing and delisting animals so that he may afford present protection to those species which are either in present danger of extinction or likely within the foreseeable future to become so endangered; (2) the bill must provide protection throughout the nation for animals which are either endangered or threatened; (3) the bill must lift the statutory restrictions that existing law places on authorization of monies for habitat acquisition from the Land and Water Conservation Fund Act, and extend to the Secretary land acquisition powers for such purposes from other existing legislation; and (4) finally, it became apparent in hearings that many established State agencies could in the future, or do now provide efficient management programs for the benefit of endangered species.

While the Federal government should protect such species where States have failed to meet minimum Federal standards, it should not pre-empt efficient programs. Instead, it should encourage these, and aid in the extension or establishment of others, to facilitate management by granting regulatory authority and making available financial assistance to approved schemes. The reported bill is designed to meet these requirements.

The bill provides a broadened concept of "endangered species" by affording the Secretary the additional power to list animals which he determines are likely within the foreseeable future to become threatened with extinction. This gives effect to the Secretary's ability to forecast population trends by permitting him to regulate these animals before the danger becomes imminent while long-range action is begun. By creating two levels of protection, regulatory mechanisms may more easily be tailored to the needs of the endangered animals. Flexibility in regulation is enhanced by a provision which allows for listing if the animal is endangered over a "substantial portion of its range". The Secretary makes his listing in full consideration of the forces which acted to bring about such endangerment. The Secretary is required to appoint an advisory committee for consultative purposes to aid in the review of these lists.

Addendum 013a

The bill makes violations of conduct prohibited under the bill subject either to civil penalties up to $10,000 or, to criminal penalties with fines levied up to $20,000 and/or imprisonment for up to one year. For the first time, the knowing taking of an endangered animal in violation of the law is a criminal offense where the Federal government has retained management power.

The Secretary may make certain exemptions from the prohibitions for scientific purposes or for the propagation of the species in controlled habitats, if he finds that such excepted conduct furthers the intent of the Act. The Committee wishes to clarify that such exemptions may be granted to individuals with legitimate claims who breed such animals domestically, whether or not they are associated with an institution. He may also receive applications for exemption where it is proven to him that failure to grant such an exemption will cause undue economic hardship to the applicant. The Secretary shall carefully scrutinize such applications to assure validity of the claim, and no such hardship exemption shall be longer than one year.

## LAND ACQUISITION

Because the authorization for habitat acquisition under the 1969 Act *expired* this year, the Committee reviewed carefully the wisdom of the restrictive authorization ceilings for the habitat acquisition under existing authority. Accordingly, the reported bill permits the Secretary to use funds available to him under the Land and Water Conservation Fund Act with no ceiling attached. In addition, he may utilize his authorities under the Migratory Bird Conservation Act, the Fish and Wildlife Act of 1956, and the Fish and Wildlife Coordination Act for land acquisition. Often, protection of habitat is the only means of protecting endangered animals which occur on non-public lands. With programs for protection underway, and worthy of continuation into the foreseeable future, an accelerated land acquisition program is essential.

The Committee finds that the most efficient way to enforce the prohibitions of this bill and to develop the most appropriate and extensive programs is through utilization of the agencies already established for such purposes within the States and development of the potential for such State programs where they do not already exist or have less than sufficient authority to meet the need. Testimony given before the Subcommittee on the Environment revealed that approximately 35 States already have established extensive programs. Many of these already provide for the listing of endangered species, their legal protection, habitat protection, and related land acquisition. Nationwide, State agencies employ approximately 6,000 enforcement agents.

In contrast, the Federal Government, in fiscal year 1973, employed 158 enforcement agents, most of whom were located in ports of entry in order to enforce laws prohibiting the transport of endangered species in foreign commerce. It was found that if the Federal government were to embark on an attempt to manage and regulate endangered fish and wildlife nationwide, administration would necessarily be considerably extended. The Committee decided that the most effective way to fulfill the provisions of the Act was through delegation of authority to approved State agencies. Accordingly, the bill permits three courses of action: (1) The State may enter into a management

Addendum 014a

agreement with the Secretary (section 6(b)); (2) the State may receive financial assistance if it "establishes and maintains an adequate and active program for the management, conservation, protection, and restoration of endangered and threatened species" (section 6(c)); (3) the State may have sole responsibility for the protection of endangered and threatened species of fish and wildlife if it establishes a plan for endangered and threatened species "in accordance with this Act" and such plan is approved by the Secretary (section 16). If a State meets the prerequisites for financial assistance from the Federal government, it may under a cooperative agreement receive as much as 50% of the total budget estimate for such a plan or agreement. For these purposes the bill authorizes the appropriation of $10,000,000. The Federal government shall retain its authority to regulate the interstate and foreign commerce of endangered species, whether or not it has established such agreements with the States.

## OTHER PROVISIONS

### ALASKAN NATIVES

It became apparent to the Committee in hearings that the case of the Alaskan native Indians, Aleuts, and Eskimoes required special attention. Certain native inhabitants depend on traditional hunting practices not only for sustenance but as a means for preserving social unity. Further, it was shown that their "take" was not the principal threat to the animals involved. Accordingly, S. 1983 does not apply with respect to the taking of any endangered or threatened species by such natives, provided that the action is for the purpose of consumption or use in a native community or for creation and sale of native articles of handicrafts and clothing, and is not accomplished in a wasteful manner. Application of the provisions of this section remains subject to the discretion of the Secretary under the terms and conditions set forth in the Act, who may revoke or regulate the exemption on the taking of endangered or threatened fish or wildlife with reference to species, isolated populations, season for taking, or geographical location.

### CONVENTION IMPLEMENTATION

The Federal government has already acknowledged the need for international cooperation in the protection of endangered wildlife by entering into several agreements with other nations, including; migratory bird treaties with Canada and Mexico, a Migratory and Endangered Bird Treaty with Japan, and the Convention on Nature Protection and Wildlife Preservation in the Western Hemisphere. Accordingly, one of the purposes of the bill is to take all appropriate steps to implement the Nation's international commitments. To further this intent, the bill provides a means for implementation of the regulations of the Convention on International Trade in Endangered Species of Wild Fauna and Flora if and when that Convention is ratified by the Senate. The Convention met in February 1973 with 80 countries in attendance. "Practically all" of those given plenipotentiary power, including the representatives of the United States, signed the Convention. Under its provisions, a system of regulation designed to prevent the commercial overexploitation of any species of flora or fauna judged to be endangered or threatened by such trade is

established. Provision is made for management and scientific authorities, and for a Secretariat to coordinate regulations and lists. The Committee found that such a centralized international authority would further the purposes of the Act regarding international cooperation. S. 1983, therefore, provides the means to establish the appropriate management and scientific authorities, one of which would establish communication between Convention and Federal authorities.

SMITHSONIAN STUDY

Recognizing the need for protection of the habitats of endangered species, as well as the need to protect endangered flora to preserve biological diversity, the Committee studied carefully the possibility of including plants within the protective provisions of the Act. However, it was discovered that there is not enough information available on situations of such endangered plants to bring plants within regulatory legislation. To help remedy this lack of information, the Act authorizes the Smithsonian Institution to conduct a review of species of endangered plants and authorizes $250,000 be appropriated for such study. A report of the conclusions of this study, together with legislative recommendations, shall be sent to the Congress within one year following the passage of the Act.

SECTION-BY-SECTION ANALYSIS

### (1) Section 1 (Short Title)

The short title of this Act is the "Endangered Species Act of 1973"; the long and more descriptive title, which constitutes one of two Committee amendments, is "A Bill to provide for the conservation, protection, restoration, and propagation of species of fish, wildlife, and plants facing extinction, and for other purposes."

The other Committee amendment was in the nature of a substitute text, an analysis of which follows.

### (2) Section 2 (Declaration of Policy)

In subsection (a) (Findings), the Congress finds that various species of fish and wildlife have become extinct and others are endangered by or threatened with extinction; that such species and their preservation is of value and a matter of concern to the United States for educational and scientific reasons and because the nation has made sovereign commitments by treaty with foreign nations to protect such species of fish and wildlife facing extinction. The Congress finds further that encouraging the States to develop and maintain endangered species programs is a key toward safeguarding the endangered and threatened species.

In subsection (b) (Purposes), the Congress declares that the purposes of this Act include providing an effective means to "conserve, protect, and restore the ecosystems" upon which these species depend; providing programs to conserve, protect, restore, and propagate these species; and insuring that all Federal agencies cooperate in protection efforts.

### (3) Section 3 (Definitions)

"Convention", as defined in section 1(1), means the recently signed international convention with respect to international trade in "Endangered Species of Wild Fauna and Flora" and its appendices.

Addendum 016a

Section 3(2) defines an "endangered species" as one "which is in danger of extinction throughout all or a significant portion of its range". Section 3(13) defines a "threatened species" as one "which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."

"Fish or wildlife" is defined very broadly in section 3(3) to mean not only animals and fish and birds, but also any part of any such creature, alive or dead. There is a similarly broad definition of "plant" (section 3(7)).

There are definitions of "foreign commerce" (section 3(4)); person (section 3(6)) (includes a corporation or other such entity and any employee of any government); State (section 3(10)); and United States (section 3(14)).

"Import", as used in this Act and defined in section 3(5), has a broader meaning than the same term as used in the customs laws of the United States, including as it does an *attempt* to land on, bring into, or introduce into any place subject to United States jurisdiction, as well as an actual landing, bringing into, or introducing.

"Secretary", as defined in section 3(8), means either the Secretary of the Interior or the Secretary of Commerce depending upon the program responsibilities of each such Secretary under the 1970 Reorganization Plan.

Section 3(9) defines "species" to mean not only a species of fish or wildlife, but also any subspecies or other group of the "same species or lesser taxa in common spatial arrangement that interbreed when mature." Thus, for purposes of this Act, an endangered subspecies of wildlife is an endangered species.

"State agency" is defined in section 3(11) to mean the State agency or other entity within a State which is responsible for that State's program for management and conservation of fish and wildlife resources.

"Take" is defined in section 3(12) in the broadest possible manner to include every conceivable way in which a person can "take" or attempt to "take" any fish or wildlife.

*(4) Section 4 (Determination of Endangered or Threatened Species)*

This section sets forth the mechanism for determining and listing species of fish and wildlife which are endangered or threatened, and sets up machinery for the transition from the single list maintained today under the Endangered Species Act of 1969 to the two lists to be maintained under this Act.

Under subsection (a) (General), the Secretary can list a species as endangered or threatened "as a result of any" of five listed factors: curtailment of its habitat; overutilization; disease or predation; inadequacy of other regulatory mechanisms; and other "natural or manmade factors affecting its continued existence."

Subsection (b) (Basis for Determinations) sets up requirements for listing as either an endangered or a threatened species.

Subsection (c) (Lists) sets out the mechanics for listing or removing from a list, including publication in the Federal Register, a review under section 553 of title 5, United States Code if a petition is filed by an interested person provided the Secretary finds that such person has presented substantial evidence which in his judgment warrants such a review. The species on the endangered species list which is in

existence when this Act becomes effective "shall be republished to conform to the appropriate classifications under this Act."

Subsection (d) (Advisory Committee) establishes a special committee to advise the Secretary on additions to, removals from, or reclassifications within the lists.

Subsection (e) (Protective Regulations) requires the Secretary, once he has listed a species of fish or wildlife as a threatened species, to issue regulations to protect that species. Among other protective measures available, he may make any or all of the acts and conduct defined as "prohibited acts" (in section 10(a)) as to "endangered species" also prohibited acts as to the particular threatened species. (The penalties for prohibited acts are declared in sections 12(a) (civil violation) and 12(b) (criminal violation)).

### (5) Section 5 (Land Acquisition)

This section gives the Secretary broad authority to acquire any real property ("land, waters, or interests therein") which he finds "necessary for the purpose of conserving, protecting, restoring, or propagating any endangered or threatened species." He may use the land acquisition authority under other legislation in addition to the direct authority conferred by this Act, and he may use funds authorized and appropriated under the "Land and Water Conservation Fund Act of 1965" in addition to direct appropriations under this Act.

### (6) Section 6 (Cooperation With the States)

This section establishes mechanisms through which the Federal government and the governments of the States can work fruitfully together toward the mutually accepted goal of protection of endangered and threatened species.

Subsection (a) (General) directs the Secretary to "cooperate to the maximum extent practicable with the States." He is required to consult with a State before acquiring any real property in that State for purposes of protection of endangered or threatened species.

Subsection (b) (Management Agreements) authorizes the Secretary to agree with a State to manage, under a management agreement, any area established for such protective purposes.

Subsection (c) (Financial Assistance) authorizes financial-aid grants to the States for endangered and threatened species programs which meet the criteria set forth in this subsection. The prerequisites to Federal assistance are enumerated.

Subsection (d) (Allocation of Funds) sets out guidelines for the Secretary in dividing appropriated funds between the various eligible States and enumerates provisions regarding each such cooperative agreement for financial aid. (e.g. Federal share shall not exceed 50% of the total estimated costs for a single State).

Subsection (e) (Periodic Review) requires annual review by the Secretary, including the consideration of comment from interested persons.

Subsection (f) (State Action Permitted) makes it clear that this Act shall in no way be construed to hold any State to a Federal standard which is lower or less protective of any endangered or threatened species, except for foreign commerce matters.

### (7) Section 7 (Interagency Cooperation)

All agencies, departments, and other instrumentalities of the Federal government are directed to cooperate in the implementation of the

Addendum 018a

goals of this Act. Each agency shall, inter alia, take steps to "insure that actions authorized, funded, or carried out" by it do not jeopardize the continued existence of any such species or result in the destruction of its habitat.

*(8) Section 8 (International Cooperation)*

Subsection (a) (Financial Assistance) authorizes the President to provide assistance to endangered species programs using foreign currencies accruing to the United States in other nations subject to the provisions of section 1415 of the Supplemental Appropriation Act of 1953. However, no funds other than "counterpart" or "blocked" foreign currencies may be used for such purposes.

Subsection (b) (Encouragement) authorizes the Secretary, with the assistance of the Secretary of State, to encourage foreign countries to establish protective programs and to enter into bilateral or multilateral agreements for the protection, conservation, restoration, or propagation of endangered and threatened species, and to encourage citizens of such countries to practice conservation in taking fish or wildlife for importation into the United States.

Subsection (c) (Personnel) authorizes, after consultation with the Secretary of State, overseas assignment of personnel and expenditure of funds for specified programs.

Subsection (d) (Investigations) authorizes research and law enforcement investigations to be conducted overseas by the Secretary, after consultation with the Secretaries of State and Treasury.

Subsection (e) (Convention Implementation) directs the President to designate appropriate agencies to meet the Nation's implementation and enforcement responsibilities under the Convention.

*(9) Section 9 (Regulations, Procedure, and Judicial Review)*

Subsection (a) (Regulations) sets forth the requirements for the issuance of regulations by the Secretary under this Act.

Subsection (b) (Procedure) incorporates by reference the provisions of the Administrative Procedure Act, except for emergency action.

Subsection (c) (Judicial Review) authorizes limited judicial review of determinations by the Secretary under this Act.

*(10) Section 10 (Unlawful Conduct)*

Subsection (a) (Prohibited Acts) lists the conduct which is unlawful under this Act and punishable under section 12 (Penalties and Enforcement). The unlawful conduct includes, e.g., importing, exporting, taking, selling, distributing, or offering for sale in the United States any endangered species. The prohibited act is not limited to an entire animal, but includes any part of the dead body of any fish or wildlife which is listed pursuant to section 4 (see definition of fish and wildlife).

Subsection (b) (Similarity of Appearance Cases) authorizes the Secretary to deal with the problem presented by two species which are so similar in appearance that persons without specialized training cannot distinguish between them. If one is species listed under section 4, but the other is not, the Secretary may treat the unlisted species as an endangered or threatened species if such treatment "will substantially facilitate the enforcement and further the policy of this Act."

9

**Addendum 019a**

*(11) Section 11 (Exceptions)* .

Subsection (a) (General) permits, upon approval, the importation, exportation, taking, or transportation of an endangered or threatened species for scientific purposes or the propagation of such species in captivity or in a controlled habitat.

Subsection (b) (Hardship) authorizes a limited hardship case exception for persons who have entered into contracts prior to the date a species is listed or proposed to be listed as an endangered or threatened species.

Subsection (c) (Procedure) requires an application, publication of notice, and review before the Secretary may grant a permit under subsection (a) or (b).

Subsection (d) (Alaska Natives) provides that the provisions of this Act shall not apply, with respect to an endangered or threatened species, to Indians, Aleuts, or Eskimos who take such fish or wildlife for the purpose of consumption or use in a native community or for the purpose of selling or creating for sale authentic native articles of handicrafts and clothing, provided the taking is not done in a wasteful manner. As used in this subsection, the phrase "consumption or use in a native community" includes selling any edible portion of fish and wildlife in native villages and towns in Alaska for native consumption. By "native villages and towns in Alaska" the Committee intends to include any native village and any settlement or municipality in Alaska. By "native village" in the previous sentence, the committee means any tribe, band, clan, group, village, community, or association in Alaska which the Alaska Native Claims Settlement Act or the Secretary of the Interior finds eligible for land conveyances under subsection 14(a) of that Act. "Native village" also includes "native groups" as defined in subsection 3(d) of that Act. The term "native village" thus includes entities containing populations of more than 25 and also entities containing populations of less than 25. The Secretary may, however, with respect to endangered and threatened species set and prescribe detailed regulations.

*(12) Section 12 (Penalties and Enforcement)*

Subsection (a) (Civil Penalty) makes a knowing violation punishable by a civil penalty up to $10,000. Other violations may be punished by a penalty up to $1,000. Each prohibited act constitutes a separate violation. No such penalty may be assessed without notice and a hearing pursuant to section 554 of title 5, United States Code.

Subsection (b) (Criminal Violation) makes a knowing and willful violation punishable by a $20,000 fine and up to one year in prison, or both. In case of a criminal conviction, a person may also forfeit Federal hunting permits and other licenses.

Subsection (c) (Rewards) authorizes the Secretary to pay one-half of the amount of the penalty or fine paid to any person who furnishes information which leads to a civil penalty or conviction.

Subsection (d) (Enforcement) establishes mechanisms for enforcement and for forfeitures in case of violation.

Subsection (e) (Registration) requires each person who is an importer of fish or wildlife to register with the Secretary of the Treasury; to keep records; and permit inspection of these records.

Subsection (f) (Enforcement Regulations) authorizes the promulgation of enforcement regulations and the charging of reasonable fees for permits.

Subsection (g) (Citizen Suits) permits, subject to certain conditions, private actions to enforce the provisions of this Act.

Subsection (h) (Coordination) directs the Secretary and the Secretary of Agriculture to coordinate the administration of this Act with the administration of the animal quarantine laws, as well as for coordination in other possibly overlapping areas.

*(13) Section 13 (Endangered Plants)*

The Smithsonian Institution is directed to review species of plants which are endangered or threatened and methods of providing adequate protection for such species. (Such methods might include adding plants to fish or wildlife within the general coverage of this Act). The Institution is directed to report its results and recommendations for legislation to Congress within one year, and funds, not to exceed $250,000, for such purpose are authorized to be appropriated.

*(14) Section 14 (Conforming Amendments)*

The Act amends several existing statutes to conform with the terminology and provisions of this Act.

*(15) Section 15 (Repealer)*

The Endangered Species Conservation Act of 1969 is repealed.

*(16) Section 16 (Applicability Within States)*

Subsection (a) (State Plan) declares that a State may establish a plan for endangered and threatened species in accordance with this Act. A plan is in accordance if it meets or exceeds the requirements set forth in section 6(c) and "represents an effective response to the Nation's need to conserve, protect, restore, and propagate endangered and threatened species of fish or wildlife."

Subsection (b) (Determination by Secretary) provides for the Secretary to determine whether or not such a State plan is in accordance with this Act.

Subsection (c) (Periodic Review) directs the Secretary to review, not less than once every three years, performance within each State with an approved plan "to determine whether such plan is still in accordance with this Act, and to evaluate the success of such plan in terms of the policy of this Act."

Subsection (d) (No State Plan) provides that the provisions of this Act shall become applicable in their entirety within a State 15 months after the enactment date unless, prior to that date, the Secretary has made a determination that such State has not established a plan in accordance with this Act. If such a State later establishes an acceptable plan, such plan shall become effective and the provisions of this Act as to management and taking shall cease to have effect within that State.

Subsection (e) (Procedure) requires published notice and authorizes limited judicial review of a determination regarding a State plan.

Subsection (f) (Effective Date) provides that except for the State plan provisions of this section, the Act takes effect upon the date of enactment.

*(17) Section 17 (Marine Mammals Act)*

In case of conflict, no provision of this Act shall take precedence over a more restrictive provision in the Marine Mammal Protection Act of 1972.

**(18) Section 18 (Authorization for Appropriations)**

Appropriations are authorized for the next three fiscal years.

### TEXT OF S. 1983, AS REPORTED

"A bill to provide for the conservation, protection, restoration, and propagation of threatened and endangered species of fish, wildlife, and plants, and for other purposes." *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Endangered Species Act of 1973".

#### DECLARATION OF POLICY

SEC. 2. (a) FINDINGS.—The Congress finds and declares that—

(1) various species of fish, wildlife, and plants in the United States have been rendered extinct as a consequence of economic growth and development untempered by adequate concern and conservation;

(2) other species of fish, wildlife and plants have been so depleted in numbers that they are in danger of or threatened with extinction;

(3) these species of fish, wildlife and plants are of educational, historical, recreational, and scientific value to the Nation and its people;

(4) the United States has pledged itself as a sovereign state in the international community to conserve and protect to the extent practicable the various species of fish or wildlife and plants facing extinction, pursuant to—

(A) migratory bird treaties with Canada and Mexico;

(B) the Migratory and Endangered Bird Treaty with Japan;

(C) the Convention on Nature Protection and Wildlife Preservation in the Western Hemisphere;

(D) the International Convention for the Northwest Atlantic Fisheries;

(E) the International Convention for the High Seas Fisheries of the North Pacific Ocean;

(F) the Convention on International Trade in Endangered Species of Wild Fauna and Flora; and

(G) other international agreements.

(5) encourage the States, through Federal financial assistance and a system of incentives, to develop and maintain conservation, protection, restoration, and propagation programs which meet national and international standards is a key to meeting the Nation's international commitments and to better safeguarding, for the benefit of all citizens, the Nation's heritage in fish and wildlife.

(b) PURPOSES.—The Congress hereby declares that the purposes and policy of this Act are to—

(1) provide an effective means to conserve, protect, and restore the ecosystems upon which endangered and threatened species of fish or wildlife depend;

(2) provide a viable program for the conservation, protection, restoration, and propagation of endangered and threatened species;

(3) take all appropriate steps to implement the Nation's international commitments with respect to endangered and theatened fish and wildlife; and

(4) insure that all departments, agencies, and instrumentalities of the United States seek, within the scope of their authority and administrative jurisdiction, to protect endangered and threatened species.

#### DEFINITIONS

SEC. 3. As used in this Act—

(1) "Convention" means the Convention on International Trade in Endangered Species of Wild Fauna and Flora, signed on March 3, 1973, and the appendices thereto.

(2) "Endangered species" means any species of fish or wildlife which is in danger of extinction throughout all or a significant portion of its range.

(3) "Fish or wildlife" means any living member of the animal kingdom and the remains of any dead member of the animal kingdom, including, but not limited to, any mammal, fish, bird, amphibian, reptile, mollusk, crustacean, arthropod or other invertebrate, or any part, egg, or offspring of any such member, or any product produced from any part or parts of the remains of any such member.

(4) "Foreign commerce" includes any transaction—

(A) between persons within one foreign country;

(B) between persons in two or more foreign countries;

(C) between a person within the United States and a person in a foreign country; or

(D) between persons within the United States, where the fish or wildlife involved are moving in any country or countries outside the United States.

(5) "Import" means to land on, bring into, or introduce into, or attempt to land on, bring into, or introduced into, any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the customs laws of the United States.

(6) "Person" means an individual, corporation, partnership, trust, association, or any other private entity, or any officer, employee, agent, department, or instrumentality of the Federal Government, of any State or political subdivision thereof, or of any foreign government.

(7) "Plant" means any member of the plant kingdom, including seeds, roots, and other parts of any such member.

(8) "Secretary" means, except as otherwise provided, the Secretary of the Interior or the Secretary of Commerce in the same manner in which program responsibilities are vested under Reorganization Plan Numbered 4 of 1970. With respect to enforcement of the provisions of this Act and of the Convention, which pertain to the importation of terrestrial plants, the term means the Secretary of Agriculture.

(9) "Species" includes any subspecies or other group of fish or wildlife of the same species or lesser taxa in common spatial arrangement that interbreed when mature.

(10) "State" means any State, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, the Virgin Islands, Guam, and the Trust Territory of the Pacific Islands.

(11) "State agency" means the State agency, department, board, commission, or other governmental entity which is responsible for the management and conservation of fish and wildlife resources within a State.

(12) "Take" means to harass, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.

(13) "Threatened species" means any species of fish or wildlife which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range.

(14) "United States", when used in a geographical sense, includes all States.

### DETERMINATION OF ENDANGERED OR THREATENED SPECIES

SEC. 4. (a) GENERAL.—The Secretary shall by regulation determine whether any fish or wildlife is an endangered or threatened species as a result of any of the following factors:

(1) the present or threatened destruction, modification, or curtailment of its habitat or range;

(2) overutilization for commercial, sporting, scientific, or educational purposes;

(3) disease or predation;

(4) the inadequacy of existing regulatory mechanisms; or

(5) other natural or manmade factors affecting its continued existence.

(b) BASIS FOR DETERMINATIONS.—(1) The determinations required by this section shall be made on the basis of the best scientific and commercial data available to the Secretary, including any recommendations that have been made by the Advisory Committee established under subsection (d) of this section and after consultation, as appropriate, with all interested persons and organizations, including affected or knowledgeable aderal, State, and foreign government agencies. In any case in which such determinations involve an indigenous species, the Secretary shall consult with and consider the recommendations of each State involved. In any case in which determinations involve a species which is normally found on the high seas, in lakes, or other waters off the coast of a State of which are customarily harvested by citizens of such a State, the Secretary shall consult with and consider the recommendations of each State involved. In any case in which such determinations involve a species which is normally found in a foreign country or countries or which is harvested from the ocean by citizens of such country or countries, the Secretary shall (where practicable) with the assistance of the Secretary of State, consult with and consider the recommendations of such country or countries.

Addendum 024a

(2) In determining whether or not any fish or wildlife is an endangered or a threatened species, the Secretary shall take into consideration those efforts, if any, being made by any nation or any political subdivision of any nation to protect within any area under its jurisdiction such fish or wildlife, whether by predator control, protection of habitat and food supply, or other conservation or management practices.

(3) Fish or wildlife which have been designated as requiring protection from unrestricted commerce by any foreign country, or pursuant to any international agreement, shall receive special and full consideration by the Secretary to determine whether each is an endangered or a threatened species.

(c) Lists.—(1) The Secretary shall publish in the Federal Register a list of all fish or wildlife determined by him by regulation to be endangered species and a list of all fish or wildlife determined by him by regulation to be threatened species. Such lists may be amended, modified, or revised periodically by regulation. Each list shall refer to each species of fish or wildlife named therein by scientific name and common name or names and shall specify the portion of its range over which it is endangered or threatened.

(2) The Secretary shall, upon the petition of an interested person under subsection 553(e) of title 5, United States Code, conduct a review of any listed or unlisted species of fish or wildlife proposed to be removed from or added to either of the lists published pursuant to paragraph (1) of this subsection, but only if he makes and publishes a finding that such person has presented substantial evidence which in his judgment warrants such a review.

(3) Any list of species of fish or wildlife determined to be threatened with extinction, by the Secretary of the Interior pursuant to the Endangered Species Conservation Act of 1969, which is in effect the day before the date of enactment of this Act shall be republished to conform to the appropriate classifications under this Act. Pending reclassification as endangered species or threatened species and republication, any species listed pursuant to the Act of 1969 shall be deemed an endangered species within the meaning of this Act. Such reclassification and republication shall not require a public hearing or comment under section 553 of title 5, United States Code.

(d) Advisory Committee.—(1) The Secretary shall establish an Advisory Committee on Endangered and Threatened Species to consult with, advise, and make recommendations to him and to the States. The Advisory Committee shall consist of not more than eleven members including a Chairman who shall be appointed by the Secretary from lists of qualified individuals submitted by State fish and wildlife agency administrators, universities, nongovernmental organizations concerned with conservation, and scientific societies. Five of the members shall be regularly employed by State governments or political subdivisions thereof. The terms of office shall be so arranged by the Secretary that each year at least three new members shall be appointed to fill vacancies caused by the expiration of terms of office.

(2) The Advisory Committee shall periodically, but not less than once each year, make recommendations to the Secretary with respect to removal from, addition to, or reclassification within the lists maintained pursuant to subsection (a) of this section, and may, with the

approval of the Secretary, perform other functions in furtherance of the purposes of this Act. A member of the Advisory Committee who is not otherwise a Government employee may, in the discretion of the Secretary, receive not more than $150 per diem when engaged in the actual performance of his duties. Each member may receive reimbursement for travel, subsistence, and other necessary expenses incurred in the performance of his duties.

(e) PROTECTIVE REGULATIONS.—Whenever the Secretary lists a species of fish or wildlife as a threatened species, pursuant to subsection (a) of this section, he shall issue such regulations as he deems necessary and advisable to provide for the conservation, protection, restoration, or propagation of such species. With respect to any endangered or threatened species, the Secretary may by regulation prohibit any act prohibited with respect to an endangered species under section 10(a) this Act.

## LAND ACQUISITION

SEC. 5. The Secretary shall establish and implement a program to conserve, protect, restore, and propagate fish or wildlife which are listed as endangered or threatened species pursuant to section 4 of this Act. To carry out such programs, the Secretary—

(a) shall utilize as appropriate the land acquisition and other authorities conferred upon him under the Migratory Bird Conservation Act, the Fish and Wildlife Act of 1956, and the Fish and Wildlife Coordination Act;

(b) may acquire by purchase, donation, or otherwise any lands, waters, or interests therein necessary for the purpose of conserving, protecting, restoring, or propagating any endangered or threatened species. Such authority shall be in addition to any other land acquisition authority vested in him; and

(c) may use funds made available under the Land and Water Conservation Fund Act of 1965 or under this Act to acquire such lands, waters, or interests therein.

## COOPERATION WITH THE STATES

SEC. 6. (a) GENERAL.—In carrying out the program authorized by this Act, the Secretary shall cooperate to the maximum extent practicable with the States. In addition to all other obligations, the Secretary shall consult with the affected State before the acquisition of any lands, waters, or interests therein for the purpose of conserving, protecting, restoring, or propagating any endangered or threatened species.

(b) MANAGEMENT AGREEMENTS.—The Secretary may enter into an agreement or agreements with any State for the administration and management of any area established for the conservation, protection, restoration, or propagation of an endangered or a threatened species. Any revenues derived from the administration of such areas under such agreements shall be subject to section 401 of the Act of June 15, 1935 (16 U.S.C. 715s).

(c) FINANCIAL ASSISTANCE.—The Secretary is authorized to enter into a cooperative agreement in accordance with this subsection to provide financial assistance to any State which establishes and maintains

an adequate and active program for the management, conservation, protection, and restoration of endangered and threatened species. Before the Secretary may enter into or renew such a cooperative agreement to provide financial assistance to a State, he shall make, justify, and publish in the Federal Register a finding that such agreement would further the policy of this Act and that such State has a program under which—

(1) the State agency has authority and administrative jurisdiction to manage and protect any species of fish or wildlife which is determined by such agency or the Secretary to be endangered or threatened;

(2) the State has established a State plan, including a management program under the State agency, for all species of resident fish or wildlife which are deemed by the Secretary to be endangered or threatened, and has furnished a copy of such plan and program together with all pertinent details, information, and data requested to the Secretary;

(3) the State agency during the first year of the existence of such agreement—

(A) will issue protective regulations;

(B) will employ sufficient trained and qualified personnel; and

(C) will maintain investigation, enforcement, and public education programs,

which are adequate, in the Secretary's judgment, for the conservation, protection, restoration, and propagation of species of fish or wildlife facing extinction;

(4) the State agency is authorized and plans to conduct studies to determine the status and requirements for survival of species of residual fish or wildlife and agrees to transmit a copy of the findings of such studies to the Secretary;

(5) the State agency is authorized and plans to establish programs, including the acquisition of lands, waters, or interests therein, for the conservation, protection, restoration, and propagation of endangered and threatened species; and

(6) provision is made for public participation in designating species of resident fish or wildlife as endangered or threatened.

(d) ALLOCATION OF FUNDS.—(1) Funds appropriated for financial assistance pursuant to subsection (c) of this section shall be available to the Secretary for allocation to the States under cooperative agreements. The purposes for which such funds may be used include, but are not limited to, research, censusing, law enforcement, and habitat acquisition or improvement. The Secretary shall allocate appropriated funds to such States upon the basis of—

(A) the international commitments of the United States to protect endangered or threatened species;

(B) the national significance of a species found to be endangered or threatened within a State; and

(C) the potential for preventing extinction of a species or for restoring a species to nonendangered or nonthreatened status.

Funds allocated to a State but unexpended or unobligated at the close

17

of the fiscal year remain available for expenditure by such State until the close of the succeeding fiscal year.

(2) Each cooperative agreement between a State and the Secretary shall provide for—

(A) the actions to be taken by the Secretary and the State;

(B) the benefits that are expected to be derived in connection with preservation and restoration of endangered or threatened species;

(C) the estimated cost of these actions; and

(D) the share of such costs to be borne by the Federal Government and by the States, except that—

(i) the Federal share of such program costs shall not exceed 50 per centum of the estimated program costs stated in the agreement; and

(ii) the Federal share may be increased to 66⅔ per centum whenever two or more States, having a common interest in a program that the Secretary deems to meet the criteria of paragraph (1) of this subsection, enter jointly into an agreement with the Secretary.

The Secretary may, in his discretion, and under such rules and regulations as he may prescribe, advance funds to the State for financing the United States pro rata share agreed upon in the cooperative agreement.

(3) The Secretary is authorized to issue such regulations as may be appropriate to carry out the provisions of this section with respect to financial assistance to States.

(4) For the purposes of this section, there is authorized to be appropriated $10,000,000.

(e) PERIODIC REVIEW.—The finding made under subsection (c) of this section and any action taken by the Secretary under this section shall be subject to his periodic review, including the consideration of comment from interested persons, at no greater than annual intervals. Upon ninety days' notice in writing to the affected State, the Secretary may terminate in his discretion any cooperative agreement entered into under this section.

(f) STATE ACTION PERMITTED.—Nothing in this Act shall be construed as superseding or limiting the power of any State or political subdivision thereof to enact legislation or regulations more restrictive than or consistent with the provisions of this Act with respect to an endangered or a threatened species: *Provided*, That any State law or regulation of the import or export of or the interstate or foreign commerce in an endangered species listed pursuant to section 4 of this Act is void to the extent that it may effectively permit what is prohibited by this Act or its implementing regulations, or prohibit what is authorized pursuant to an exemption or permit provided for in this Act or its implementing regulations. This Act shall not otherwise be construed to void any State law or regulation which is intended to conserve and manage migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife.

INTERAGENCY COOPERATION

SEC. 7. The Secretary shall review all programs administered by him and utilize such programs in furtherance of the policy of this Act. All

other departments, agencies, and instrumentalities of the Federal Government shall, in consultation with and with the assistance of the Secretary—

(a) carry out such programs as are practicable for the protection of species listed, pursuant to section 4 of this Act, as endangered or threatened;

(b) take such action as is necessary to insure that actions authorized, funded, or carried out by them do not jeopardize the continued existence of any endangered or threatened species, or result in the destruction or modification of any habitat of such species which is determined by the Secretary, after consultation to the extent appropriate and necessary with affected States, to be a critical habitat of such species.

## INTERNATIONAL COOPERATION

Sec. 8. (a) FINANCIAL ASSISTANCE.—As a demonstration of the commitment of the United States to the worldwide protection of endangered and threatened species, the President may, subject to the provisions of section 1415 of the Supplemental Appropriation Act, 1953 (31 U.S.C. 724), use foreign currencies accruing to the United States Government under the Agricultural Trade Development and Assistance Act of 1954 or any other law to provide to any foreign country (with its consent) assistance in the development and management of programs in that country which the Secretary determines to be necessary or useful for the conservation, protection, restoration, or propagation of any endangered or threatened species listed by the Secretary pursuant to section 4 of this Act: *Provided*, That no funds other than foreign currencies available for expenditure only within such foreign country shall be used pursuant to this section. The President shall provide assistance (which includes, but is not limited to, the acquisition, by lease or otherwise, of lands, waters, or interests therein) to foreign countries under this section upon such terms and conditions as he deems appropriate.

(b) ENCOURAGEMENT.—In order to carry out further the provisions of this Act, the Secretary, with the assistance of the Secretary of State, shall encourage—

(1) foreign countries to provide for the protection, conservation, restoration, or propagation of fish or wildlife, including endangered and threatened species listed pursuant to section 4 of this Act;

(2) the entering into of bilateral or multilateral agreements for foreign countries to provide for such protection, conservation, restoration, or propagation; and

(3) foreign persons, who directly or indirectly take fish or wildlife in foreign countries or on the high sea for importation into the United States for commercial or other purposes, to develop and carry out, with such assistance as he may provide, conservation practices designed to enhance such fish, wildlife and plants and their habitat.

(c) PERSONNEL.—After consultation with the Secretary of State, the Secretary may—

(1) assign or otherwise make available any officer or employee of his department for the purpose of cooperating with foreign

Addendum 029a

countries and international organizations in developing personnel resources and programs which promote the protection, conservation, restoration, or propagation of fish or wildlife; and

(2) conduct or provide financial assistance for the educational training of foreign personnel, in this country or abroad, in fish, wildlife or plant management, research, and law enforcement, and to render professional assistance abroad in such matters.

(d) INVESTIGATIONS.—After consultation with the Secretary of State and the Secretary of the Treasury, as appropriate, the Secretary may conduct or cause to be conducted such law enforcement investigations and research abroad as he deems necessary to carry out the purposes of this Act.

(e) CONVENTION IMPLEMENTATION.—The President is authorized and directed to designate appropriate agencies to act as the Management Authority or Authorities and the Scientific Authority or Authorities pursuant to the Convention. The agencies so designated shall thereafter be authorized to do all things assigned to them under the Convention, including the issuance of permits and certificates. The agency designated by the President to communicate with other parties to the Convention and with the Secretariat shall also be empowered, in consultation with the State Department, to act on behalf of and represent the United States in all regards as required by the Convention.

### REGULATIONS, PROCEDURE, AND JUDICIAL REVIEW

SEC. 9. (a) REGULATIONS.—The Secretary shall publish any regulations proposed under this Act in the Federal Register at least sixty days prior to the time when such regulations shall become final, except that in case of an emergency the Secretary may publish such regulations not less than thirty days prior to the time when such regulations shall become final if at the same time he publishes in the Federal Register detailed reasons why emergency action is necessary. The Secretary shall also publish in the Federal Register a notice of all petitions received pursuant to this Act and, if such petition is denied, his reasons therefor. Such notice shall identify the purpose of the petition and include a statement of the availability of any data submitted in support of such petition. If any person adversely affected by a proposed regulation files objections and requests a public hearing within forty-five days of the date of publication of the proposed regulation, the Secretary shall grant such request. If such public hearing is held, final regulations shall not be promulgated by the Secretary until after the conclusion of such hearing. All public hearings authorized by this subsection shall consist of the oral and written presentation of data or arguments in accordance with such conditions or limitations as the Secretary may make applicable thereto. Proposed and final regulations issued under this Act shall set forth findings of fact on which the regulations are based and shall state the relationship of such findings to the regulations issued.

(b) PROCEDURE.—Except as expressly modified by this section, the provisions of the Administrative Procedure Act (5 U.S.C. 551 et seq.) shall apply to proceedings conducted by the Secretary under this Act: Provided, that the provisions of this section shall not apply to the

extent necessary to permit emerging action by the Secretary. Notice of and reasons for such action shall be published prior to such action in the Federal Register.

(c) JUDICIAL REVIEW.—(1) Any judicial review of final regulations promulgated under this Act and final actions under section 5(c) of this Act shall be in accordance with sections 701–706 of title 5, United States Code, except that—

(A) with respect to regulations promulgated under section 4 or 6 of this Act, the findings of the Secretary as to the facts shall be sustained if based upon substantial evidence on the record considered as a whole; and

(B) with respect to relief pending review, no stay of an action may be granted unless the reviewing court determines that the party seeking such stay—

(i) is likely to prevail on the merits in the review proceeding, and

(ii) will suffer irreparable harm pending such proceeding.

(2) If the party seeking judicial review applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court either that—

(A) the information is material and was not available at the time of the proceeding before the Secretary; or

(B) failure to include such evidence in the proceeding was an arbitrary or capricious act of the Secretary,

the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Secretary, and to be adduced upon the hearing, in such manner and upon such terms and conditions as the court may deem proper. The Secretary may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken, and he shall file with the court such modified or new findings and his recommendation, if any, for the modification or setting aside of his original order.

(d) AUDIT.—(1) Each recipient of Federal assistance under this Act, pursuant to grants, subgrants, contracts, subcontracts, loans or other arrangements, entered into other than by formal advertising, and which are otherwise authorized by this Act, shall keep such records as the Secretary shall prescribe, including records which fully disclose the amount and disposition by such recipient of the proceeds of such assistance, the total cost of the project or undertaking in connection with which such assistance is given or used, the amount of that portion of the cost of the project or undertaking supplied by other sources, and such other records as will facilitate an effective audit.

(2) The Secretary and the Comptroller General of the United States, or any of their duly authorized representatives, shall, until the expiration of three years after completion of the project or undertaking referred to in subsection (a) of this section, have access for the purpose of audit and examination to any books, documents, papers, and records of such recipients which in the opinion of the Secretary or the Comptroller General may be related or pertinent to the grants, subgrants, contracts, subcontracts, loans or other arrangements referred to in subsection (a).

21

Addendum 031a

UNLAWFUL CONDUCT

SEC. 10. (a) PROHIBITED ACT.—Except as povided in section 11 of this Act, it is unlawful for any person subject to the jurisdiction of the United States to—

(1) import into, or export from, the United States any endangered species which has been listed pursuant to section 4 of this Act;

(2) take any such species within the United States or in the territorial sea of the United States or upon the high seas;

(3) possess, sell, deliver, carry, transport, ship, or receive, by any means whatever, any such species which are taken in violation of paragraph (2) of this subsection;

(4) deliver, receive, carry, transport, or ship in interstate or foreign commerce, by any means whatsoever and for commercial purposes, any such species;

(5) sell, distribute, or offer for sale in foreign commerce, interstate commerce, or activity affecting interstate commerce specimens or products processed or manufactured in whole or in part from specimens of any such species;

(6) attempt to commit, solicit another to commit, or cause to be committed, any act prohibited by paragraphs (1) through (5) of this subsection;

(7) engage in any trade in any specimens of fish, wildlife, or plants, contrary to the provisions of the Convention, or possess any specimens traded contrary to the provisions of the Convention, including the definitions in article I therein;

(8) violate any regulation which is promulgated by the Secretary pursuant to section 4(e) of this Act; or

(9) import into or export from the United States except at a port or ports designated by the Secretary, any fish or wildlife, except nonendangered and nonthreatened shellfish and fishery products which are imported or exported for human or animal consumption or taken for recreational purposes in waters under United States jurisdiction or on the high seas. To facilitate enforcement of this paragraph and to reduce the costs of enforcement, the Secretary, with the approval of the Secretary of the Treasury and after notice and opportunity for public hearing, may, by regulation, designate ports and change such designations. Upon such terms and conditions as he may prescribe, the Secretary may permit such importation at nondesignated ports in the interest of the health or safety of the fish or wildlife or for any other reason he deems appropriate. Any port designated by the Secretary of the Interior under the authority of section 4(d) of the Act of December 5, 1969 (16 U.S.C. 666cc–4(d)), shall, if such designation is in effect on the day before the date of the enactment of this Act, be deemed to be a port designated by the Secretary under this paragraph until such time as the Secretary otherwise provides.

(b) SIMILARITY OF APPEARANCE CASES.—The Secretary may, by regulation, and to the extent he deems advisable, treat any species of fish or wildlife as an endangered or threatened species even though it is not listed pursuant to section 4 of this Act if he finds that—

Addendum 032a

(A) such species so closely resembles in appearance, at the point in question, a species which has been listed pursuant to such section that enforcement personnel would have substantial difficulty in attempting to differentiate between the listed and unlisted species;

(B) the effect of this substantial difficulty is an additional threat to an endangered or threatened species; and

(C) such treatment of an unlisted species will substantially facilitate the enforcement and further the policy of this Act.

SEC. 11. (a) GENERAL.—Upon a finding that the excepted conduct will not adversely affect the regenerative capacity of the involved species in a significant portion of its range or habitat or otherwise affect the survival of the wild population of such species, and upon such terms and conditions as he may prescribe, the Secretary may issue permits authorizing the importation, exportation, taking, or transportation, by persons found to be qualified, of any fish or wildlife which is listed as an endangered or threatened species pursuant to section 4 of this Act for—

(1) scientific purposes in furtherance of the purposes of this Act; or

(2) the propagation of such species in captivity or in a controlled habitat.

(b) HARDSHIP.—The Secretary may except from the application of section 10(a) of this Act any person who enters into a contract with respect to a species of fish or wildlife before the date of publication in the Federal Register of notice of a proposed listing of that species as an endangered or threatened species if the failure to grant such exception will cause undue economic hardship to such person under the contract. The extent and duration of such exception shall be such as the Secretary deems appropriate. No such exception shall be granted unless such person applies to the Secretary in writing and furnishes with such application such information as the Secretary may require to prove such hardship. No such exception shall be for a duration of more than one year from the date of publication in the Federal Register of notice of a proposed listing of the involved species, nor shall such exception apply to a quantity of fish or wildlife in excess of that specified by the Secretary. The one-year period for those species of fish or wildlife which were listed by the Secretary as endangered prior to the effective date of this Act shall expire in accordance with the terms of section 3 of the Act of December 5, 1969 (83 Stat. 275). No such exemption may be granted for the importation or exportation of a specimen listed in appendix I of the Convention which is to be used for primarily commercial purposes.

(c) PROCEDURE.—(1) The Secretary shall publish a notice in the Federal Register of each application for an exception. Each notice shall invite the submission from interested parties, within thirty days after the date of the notice, of written data, views, or arguments with respect to the application. Information received by the Secretary as a part of any application shall be available to the public as a matter of public record at every stage of the proceeding.

(2) The Secretary may grant exceptions under subsections (a) and (b) of this section only if he finds, and publishes such finding in the Federal Register, that such exceptions were applied for in good faith and if granted and exercised will not operate to the disadvantage of

such endangered or threatened species and will be consistent with the policy of this Act.

(d) ALASKA NATIVES.—(1) The provisions of this Act shall not apply with respect to the taking of any endangered or threatened species by any Indian, Aleut, or Eskimo who is an Alaskan native who resides in Alaska if such taking is for the purpose of consumption or use in a native community or for the purpose of selling or creating for sale in interstate commerce authentic natives articles of handicrafts and clothing: *Provided*, That in each case such taking is not accomplished in a wasteful manner. As used in this paragraph—

(A) "consumption or use in a native community" includes selling any edible portion of fish or wildlife in native villages and towns in Alaska for native consumption; and

(B) "authentic native articles of handicrafts and clothing" means items composed wholly or in some significant respect of natural materials, and which are produced, decorated, or fashioned in the exercise of traditional native handicrafts without the use of pantographs, multiple carvers, or other mass copying devices. Traditional native handicrafts include, but are not limited to, weaving, carving, stitching, sewing, lacing, beading, drawing, and painting.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, whenever the Secretary determines that any species of fish or wildlife which is subject to taking by Indians, Aleuts, or Eskimos is an endangered or threatened species and that such taking materially and negatively affects the threatened and endangered species, he may prescribe regulations upon the taking of such species by any such Indian, Aleut, or Eskimo. Such regulations may be established with reference to species, geographical decription of the area included, the season for taking, or any other factors related to the reason for establishing such regulations and consistent with the policy of this Act. Such regulations shall be prescribed after notice and hearings in the affected judicial district of Alaska and as otherwise required by section 103 of the Marine Mammal Protection Act of 1972, and shall be removed as soon as the Secretary determines that the need for their imposition has disappeared: *Provided*, That no such regulation shall be established which is in contravention of any provision of the Marine Mammal Protection Act of 1972.

PENALTIES AND ENFORCEMENT

SEC. 12. (a) CIVIL PENALTY.—(1) Any person who—

(A) knowingly violates any provision of this Act or any regulation or permit issued under this Act, which prohibits the taking, importing, exporting, shipping, receiving, or otherwise moving in interstate or foreign commerce of any endangered or threatened species of fish or wildlife, or commits any act made unlawful under section 10(a) of this Act, may be assessed a civil penalty by the Secretary of not more than $10,000 for each violation;

(B) commits any act made unlawful under section 10(a) of this Act, or violates any other provision of this Act, or any regulation or permit issued under this Act, may be assessed a civil

penalty by the Secretary of not more than $1,000 for each such violation.

No penalty shall be assessed unless such person is given notice and opportunity for a hearing with respect to such violation. Each prohibited act is a separate violation. Any such civil penalty may be compromised by the Secretary. Upon any failure to pay a penalty assessed under this subsection, the Secretary may by his own attorneys institute a civil action in a district court of the United States for any district in which such person is found, resides, or transacts business to collect the penalty and such court shall have jurisdiction to hear and decide any such action. The court shall hear such action solely on the record made before the Secretary and shall sustain his action if it is supported by substantial evidence on the record considered as a whole.

(2) Hearings held during proceedings for the assessment of civil penalties authorized by paragraph (1) of this subsection shall be conducted in accordance with section 554 of title 5, United States Code. The Secretary may issue subpenas for the attendance and testimony of witnesses and the production of relevant papers, books, and documents, and may administer oaths. Witnesses summoned shall be paid the same fees and mileage that are paid to witnesses in the courts of the United States. In case of contumacy or refusal to obey a subpena served upon any person pursuant to this paragraph, the district court of the United States for any district in which such person is found or resides or transacts business, upon application by the United States and after notice to such person, shall have jurisdiction to issue an order requiring such person to appear and give testimony before the Secretary or to appear and produce documents before the Secretary, or both, and any failure to obey such order of the court may be punished by such court as a contempt thereof.

(b) CRIMINAL VIOLATIONS.—(1) Any person who knowingly and willfully violates any provision of this Act, or of any regulation or permit issued thereunder, shall, upon conviction, be fined not more than $20,000 or imprisoned for not more than one year, or both.

(2) The head of any Federal agency which has issued a lease, license, permit, or other agreements authorizing the use of Federal lands, including grazing of domestic livestock, to any person who is convicted under paragraph (1) of this subsection may immediately modify, suspend, or revoke such lease, license, permit, or other agreement. The Secretary may suspend, cancel, or refuse to issue for a period of up to one year Federal hunting or fishing permits or stamps with respect to any person who is convicted under paragraph (1) of this subsection. The United States shall not be liable to pay any compensation, reimbursement, or damages in connection with any such modification, suspension, or revocation of any lease, license, permit, stamp, or other agreement.

(c) REWARDS.—Upon the recommendation of the Secretary, the Secretary of the Treasury is authorized to pay an amount equal to one-half of the civil penalty or fine paid, but not to exceed $2,500, to any person who furnishes information which leads to a finding of civil violation or a conviction of a criminal violation of any provision of

this Act or any regulation or permit issued thereunder. Any officer or employee of the United States or of any State or local government who furnishes information or renders service in the performance of his official duties shall not be eligible for payment under this section.

(d) ENFORCEMENT.—(1) The provisions of this Act and any regulations or permits issued under this Act shall be enforced by the Secretary, the Secretary of the Treasury, or the Secretary of the Department in which the Coast Guard is operating, or all Secretaries. Each such Secretary may utilize, by agreement, with or without reimbursement, the personnel, services, and facilities of any other Federal agency or any State agency for purposes of enforcing this Act.

(2) The judges of the district courts of the United States and the United States magistrates may, within their respective jurisdictions, upon proper oath or affirmation showing probable cause, issue such warrants or other process as may be required for enforcement of this Act and any regulation issued thereunder.

(3) Any person authorized by the Secretary, the Secretary of the Treasury, or the Secretary of the Department in which the Coast Guard is operating, in furtherance of the enforcement of this Act may execute and serve any arrest warrant, search warrant, or other warrant of civil or criminal process issued by any officer or court of competent jurisdiction. A person so authorized may search and seize, with or without a warrant, to the extent authorized by law. Any fish, wildlife, property, or item so seized shall be held by any person authorized by the Secretary, the Secretary of the Treasury, or the Secretary of the Department in which the Coast Guard is operating pending disposition of civil or criminal proceedings, or the institution of an action in rem for forfeiture of such fish, wildlife, property, or item pursuant to paragraph (4) of this subsection, except that the Secretary may, in lieu of holding such fish, wildlife, property, or item, permit the owner or consignee to post a bond or other surety satisfactory to the Secretary.

(4) All fish or wildlife, or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported or imported contrary to the provisions of this Act, any regulation issued under this Act, or any permit issued thereunder, and all guns, traps, nets, and other equipment, vessels, vehicles, aircraft, and other means of transportation used to aid the taking, possessing, selling, purchasing, offering for sale or purchase, transporting, delivering, receiving, carrying, shipping, exporting, or importing of any fish or wildlife, or plants in violation of this Act, any regulation made pursuant thereto, or any permit issued thereunder shall be subject to forfeiture to the United States.

(5) All provisions of law relating to the seizure, forfeiture, and condemnation of a vessel for violation of the customs laws, the disposition of such vessel or the proceeds from the sale thereof, and the remission or mitigation of such forfeiture, shall apply to the seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this Act, insofar as such provisions of law are applicable and not inconsistent with the provisions of this Act. The powers, rights, and duties conferred or imposed by the customs laws upon any officer or employee of the Treasury Department shall, for purposes of this Act,

26

**Addendum 036a**

be exercised or performed by the Secretary or by such persons as he may designate.

(e) REGISTRATION.—(1) Any person who engages to any extent in business as an importer of fish or wildlife must register with the Secretary of the Treasury his name and the address of each place of business at which, and all trade names under which, he conducts such business.

(2) Any person required to register with the Secretary of the Treasury under paragraph (1) of this subsection shall—

(A) keep such records as will fully and correctly disclose each importation or exportation of fish or wildlife except nonendangered and nonthreatened shell fish or fishery products which are imported or exported for human or animal consumption or recreational purposes, made by him and the subsequent disposition made by him with respect to such fish or wildlife and

(B) at all reasonable times upon notice by a duly authorized representative of the Secretary, afford such representative access to his places of business, an opportunity to examine his inventory of imported fish or wildlife and the records required to be kept under subparagraph (A) of this paragraph and to copy such records.

(3) The Secretary of the Treasury, after consultation with the Secretary, shall prescribe such regulations as are necessary and appropriate to carry out the purposes of this subsection.

(f) ENFORCEMENT REGULATIONS.—(1) The Secretary, the Secretary of the Treasury, and the Secretary of the Department in which the Coast Guard is operating, are authorized to promulgate such regulations as may be appropriate to enforce this Act, and to charge reasonable fees for expenses to the Government connected with permits authorized by this Act, including processing applications and reasonable inspections, and the transfer, board, handling, or storage of fish, wildlife, or plants and evidentiary items seized and forfeited under this Act. All fees collected pursuant to this subsection shall be deposited in the Treasury to the credit of the appropriation which is current and chargeable for the cost of furnishing the services. Appropriated funds may be expended pending reimbursement from parties in interest.

(g) CITIZEN SUITS.—(1) Except as provided in paragraph (2) of this subsection, any person may commence a civil suit on his own behalf to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, as the case may be.

(2) No action may be commenced—

(A) prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation;

(B) if the Secretary has commenced action to impose a penalty pursuant to subsection (a) of this section; or

(C) if the United States has commenced and is diligently prosecuting a criminal action in a court of the United States or a State to redress a violation of any such provision or regulation.

(3) (A) Any suit under this subsection may be brought in the judicial district in which the violation occurs.

(B) In any such suit under this subsection in which the United States is not a party, the Attorney General, at the request of the Secretary, may intervene on behalf of the United States as a matter of right.

(4) The court, in issuing any final order in any suit brought pursuant to paragraph (1) of this subsection may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

(5) The injunctive relief provided by this subsection shall not restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or limitation or to seek any other relief (including relief against the Secretary or a State agency).

(h) COORDINATION.—The Secretary of Agriculture and the Secretary shall provide for appropriate coordination of the administration of this Act with the administration of the animal quarantine laws (21 U.S.C. 101–105, 111–135b, and 612–614) and section 306 of the Tariff Act of 1930 (19 U.S.C. 1306). Nothing in this Act or any amendment made by this Act, shall be construed as superseding or limiting in any manner the functions of the Secretary of Agriculture under any other law relating to prohibited or restricted importations or possession of animals and other articles. No proceeding or determination under this Act shall preclude any proceeding or be considered determinative of any issue of fact or law in any proceeding under any Act administered by the Secretary of Agriculture. Nothing in this Act shall be construed as superseding or limiting in any manner the functions and responsibilities of the Secretary of the Treasury under the Tariff Act of 1930, including, but not limited to, section 527 of such Act (19 U.S.C. 1527), relating to the importation of wildlife taken, killed, possessed, or exported to the United States in violation of the laws or regulations of a foreign country.

### ENDANGERED PLANTS

SEC. 13. The Secretary of the Smithsonian Institution, in conjunction with other affected agencies, is authorized and directed to review species of plants which are endangered or threatened, and methods of providing adequate protection including legislation for such species. He shall report the results of such review to Congress, not later than one year after the date of enactment of this Act. For purposes of this section, there is authorized to be appropriated not to exceed $250,000.

### CONFORMING AMENDMENTS

SEC. 14. (a) Section 4(c) of the Act of October 15, 1966 (80 Stat. 928, 16 U.S.C. 668dd(c)), is further amended by revising the second sentence thereof to read as follows: "With the exception of endangered

**Addendum 038a**

and threatened species listed by the Secretary pursuant to section 4 of the Endangered Species Act of 1973 in States wherein a cooperative agreement does not exist pursuant to section 6(c) of such Act nothing in this Act shall be construed to authorize the Secretary to control or regulate hunting or fishing of resident fish and wildlife on lands not within the System."

(b) Section 10(a) of the Migratory Bird Conservation Act (45 Stat. 1224, 16 U.S.C. 715i(a)) and section 401(a) of the Act of June 15, 1935 (49 Stat. 383, 16 U.S.C. 715s(a)) are each amended by striking out "threatened with extinction," and inserting in lieu thereof the following: "listed pursuant to section 4 of the Endangered Species Act of 1973 as endangered or threatened species,".

(c) Section 6(a)(1) of the Land and Water Conservation Fund Act of 1965 (16 U.S.C. 4601-9(a)(1)) is amended by striking out:

"THREATENED SPECIES.—For any national area which may be authorized for the preservation of species of fish or wildlife that are threatened with extinction."

and inserting in lieu thereof the following:

"ENDANGERED AND THREATENED SPECIES.—For lands, waters, or interests therein, the acquisition of which is authorized under section 5 of the Endangered Species Act of 1973, needed for the purpose of conserving, protecting, restoring, or propagating endangered or threatened species of fish, wildlife, or plants."

(d) The first sentence of section 2 of the Act of September 28, 1962 (76 Stat. 653; 16 U.S.C. 460k-1), is amended to read as follows:

"SEC. 2. The Secretary is authorized to acquire areas of land, or interests therein, which are suitable for—

"(1) incidental fish and wildlife-oriented recreational development,

"(2) the protection of natural resources,

"(3) the protection of endangered or threatened species listed by the Secretary pursuant to section 4 of the Endangered Species Act of 1973, or

"(4) carrying out two or more of the purposes set forth in paragraphs (1) through (3) of this section,

and are adjacent to, or within, the said conservation areas, except that the acquisition of any land or interest therein pursuant to this section shall be accomplished only with such funds as may be appropriated therefor by the Congress or donated for such purposes, but such property shall not be acquired with funds obtained from the sale of Federal migratory bird hunting stamps."

(e) The Marine Mammal Protection Act of 1972 (16 U.S.C. 1361-1407 is amended—

(1) by striking out "Endangered Species Conservation Act of 1969" in section (1)(B) thereof and inserting in lieu thereof the following: "Endangered Species Act of 1973";

(2) by striking out "pursuant to the Endangered Species Conservation Act of 1969" in section 101(a)(3)(B) thereof and inserting in lieu thereof the following: "or threatened species pursuant to the Endangered Species Act of 1973";

(3) by striking out "endangered under the Endangered Species Conservation Act of 1969" in section 102(b)(3) thereof and in-

29

**Addendum 039a**

serting in lieu thereof the following: "an endangered or a threat-
ened Species pursuant to the Endangered Species Act of 973"; and
    (4) by striking out "Endangered Species List," authorized by
the Endangered Species Conservation Act of 1969." in section
202(a)(6) thereof and inserting in lieu thereof the following: "en-
dangered species list and threatened species list published pur-
suant to section 4(c)(1) of the Endangered Species Act of 1973".

### REPEALER

SEC. 15. The Endangered Species Conservation Act of 1969 (sec-
tions 1 through 3 of the Act of October 15, 1966, and sections 1 through
6 of the Act of December 5, 1969; 16 U.S.C. 668aa—668cc–6) is
repealed.

### APPLICABILITY WITHIN STATES

SEC. 16. (a) STATE PLAN.—By the end of the first year after the
date of enactment of this Act, a State may establish a plan for endan-
gered and threatened species in accordance with this Act. A plan is in
accordance with this Act if it meets or exceeds the requirements set
forth in section 6(c) of this Act and represents an effective response to
the Nation's need to conserve, protect, restore, and propagate en-
dangered and threatened species of fish or wildlife. Upon the estab-
lishment of such a plan, the Governor or the head of the State agency
shall promptly transmit a certified copy to the Secretary.

    (b) DETERMINATION BY SECRETARY.—Within ninety days after the
Secretary receives a certified copy of a State plan established under
subsection (a) or subsection (d) of this section, the Secretary shall
make a determination whether such State has established a plan for
endangered and threatened species in accordance with this Act. Un-
less the Secretary determines, pursuant to this section, that a State
plan is not in accordance with this Act, the plan shall go into effect
in such State on the date designated in the plan. In no event shall such
State plan go into effect less than three months or more than nine
months after the date of its establishment.

    (c) PERIODIC REVIEW.—The Secretary shall periodically, but not less
than once every three years, review each State plan for endangered and
threatened species which has been approved under subsection (b) of
this section and for which there is experience, to determine whether
such plan is still in accordance with this Act and to evaluate the success
of such plan in terms of the policy of this Act. To facilitate such review,
the Governor or the head of the State agency in each such State
shall submit to the Secretary periodically all information relevant and
requested by the Secretary. The Secretary shall report to the President
and Congress simultaneously each year on the results of such reviews,
including any recommendations for legislation.

    (d) NO STATE PLAN.—Except as to species listed in Appendix I
of the Convention, the provisions of this Act regarding the manage-
ment and taking of any State's resident species shall become applicable
in their entirety within a State fifteen months after the date of en-
actment of this Act unless, prior to such date, the Secretary has made

30

a determination under subsection (b) of this section that such State has established a plan for endangered and threatened species in accordance with this Act: Provided, That the provisions of subsection (a) of section 10 of this Act shall be effective upon the date of enactment of this Act within any State which does not prevent the taking of any species listed by the Secretary as an endangered species. If, at any time thereafter, the Secretary upon petition makes a determination, pursuant to subsection (b) of this section, that a State has established a plan for endangered and threatened species in accordance with this Act, such plan shall go into effect and the provisions of this Act regarding the management and taking of any species shall cease to be applicable in effect within such State on a date to be designated by the Secretary. If, after a State plan in accordance with this Act is in effect within a State, the Secretary makes a determination, pursuant to subsection (e) of this section, that such plan is no longer in accordance with this Act, the provisions of this Act regarding the management and taking of any species shall go into effect within such State and such plan shall cease to be in effect on a date to be designated by the Secretary.

(e) PROCEDURE.—(1) Before making any determination under this section, the Secretary shall publish a notice in the Federal Register and afford the State and all interested parties a reasonable opportunity to present their views by oral and written submission.

(2) The Secretary shall notify in writing the Governor of the affected State of any determinations made under this section and shall publish these determinations with reasons therefor in the Federal Register.

(3) Any determinations made by the Secretary under this section shall be subject to judicial review in accordance with chapter V of title 5, United States Code, in the United States court of appeals for the circuit in which is located the State whose plan is the subject of such determination or in the United States Court of Appeals for the District of Columbia Circuit. Any such review shall be instituted within sixty days from the date on which the determination made by the Secretary is published in the Federal Register.

(f) EFFECTIVE DATE.—Except as otherwise provided in this section, the provisions of this Act shall become effective in their entirety upon the date of enactment of this Act.

### MARINE MAMMALS ACT

SEC. 17. CONFLICTS.—Except as otherwise provided in this Act, no provision of this Act shall take precedence over any more restrictive conflicting provision of the Marine Mammal Protection Act of 1972.

### AUTHORIZATION FOR APPROPRIATIONS

SEC. 18. For purposes of this Act, other than section 6 and section 13 of this Act, there are authorized to be appropriated such sums as are necessary, not to exceed $3,960,000 for the fiscal year ending June 30, 1974; not to exceed $6,660,000 for the fiscal year ending June 30, 1975; and not to exceed $8,870,000 for the fiscal year ending June 30, 1976.

## COST ESTIMATES

It is not possible to estimate with precision the cost of S. 1983. The Committee on Commerce estimates that the total cost, except for Sections 6 (Cooperation With the States) and 13 (Endangered Plants), of the endangered species programs under this bill would be:

| For fiscal year ending: | Million |
|---|---|
| June 30, 1974 | $3.00 |
| June 30, 1975 | 6.66 |
| June 30, 1976 | 8.87 |

No additional authority is granted to the Departments to obtain funds under the Land and Water Conservation Fund Act. Section 6 (d) (4) of the Act authorizes not to exceed $10.0 million to be appropriated for the purpose of funding the cooperative financial agreements between State governments and the Federal government. Section 13 of the Act authorizes not to exceed $250,000 to be appropriated for the purpose of a study by the Secretary of the Smithsonian Institution. The Committee knows of no other cost estimates at variance with its own.

## CHANGES IN EXISTING LAW

In compliance with subsection (4) of rule XXIX of the Standing Rules of the Senate, changes in existing law made by the bill as reported are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

### SECTION 4(C) OF THE ACT OF OCTOBER 15, 1966 (16 U.S.C. 668dd(c))

"(c) No person shall knowingly disturb, injure, cut, burn, remove, destroy, or possess any real or personal property of the United States, including natural growth, in any area of the System; or take or possess any fish, bird, mammal, or other wild vertebrate or invertebrate animals or part or nest or egg thereof within any such area; or enter, use, or otherwise occupy any such area for any purpose; unless such activities are performed by persons authorized to manage such area, or unless such activities are permitted either under subsection (d) of this section or by express provision of the law, proclamation Executive order, or public land order establishing the area, or amendment thereof: *Provided,* That the United States mining and mineral leasing laws shall continue to apply to any lands within the System to the same extent they apply prior to the effective date of this Act unless subsequently withdrawn under other authority of law. [Nothing in this Act shall be construed to authorize the Secretary to control or regulate hunting or fishing of resident fish and wildlife, including endangered species thereof, on lands not within the System.] *With the exception of endangered and threatened species listed by the Secretary pursuant to section 4 of the Endangered Species Act of 1973 in States wherein a cooperative agreement does not exist pursuant to section 6(c) of such Act nothing in this Act shall be construed to authorize the Secretary to control or regulate hunting or fishing of resident fish and wildlife on lands not within the system.* The regulations permitting hunting and fishing of resident fish and wildlife within the System shall be,

Addendum 042a

**332**

to the extent practicable, consistent with State fish and wildlife laws and regulations. The provisions of this Act shall not be construed as affecting the authority, jurisdiction, or responsibility of the several States to manage, control, or regulate fish and resident wildlife under State law or regulations in any area within the System."

### SECTION 10(a) OF THE MIGRATORY BIRD CONSERVATION ACT (16 U.S.C. 715i(a))

"(a) Areas of lands, waters, or interests therein acquired or reserved pursuant to sections 1–5, 6, 7–12, and 15–19 of this Act shall, unless otherwise provided by law, be administered by the Secretary of the Interior under rules and regulations prescribed by him to conserve and protect migratory birds in accordance with treaty obligations with Mexico and Canada, and other species of wildlife found thereon, including species that are [threatened with extinction] *listed pursuant to section 4 of the Endangered Species Act of 1973 as endangered or threatened species,* and to restore or develop adequate wildlife habitat."

### SECTION 401(a) OF THE ACT OF JUNE 15, 1935 (16 U.S.C. 715s(a))

"(a) Separate fund in the United States Treasury; availability of funds until expended; definition of "National Wildlife Refuge System".
. . . The National Wildlife Refuge System (hereafter referred to as the "System") includes those lands and waters administered by the Secretary as wildlife refuges, lands acquired or reserved for the protection and conservation of fish and wildlife that are [threatened with extinction] *listed pursuant to section 4 of the Endangered Species Act of 1973 as endangered or threatened species,* wildlife ranges, game ranges, wildlife management areas, and waterfowl areas established under any law, proclamation, Executive or public land order."

### SECTION 6(a)(1) OF THE LAND AND WATER CONSERVATION FUND ACT OF 1965 (16 U.S.C. 4601–9(a)(1))

"(a) Moneys appropriated from the fund for Federal purposes shall, unless otherwise allotted in the appropriation Act making them available, be allotted by the President to the following purposes and subpurposes in substantially the same proportion as the number of visitor-days in areas and projects hereinafter described for which admission fees are charged under section 2 of this Act:
"(1) For the acquisition of land, waters, or interests in land or waters as follows: . . .

  \*          \*          \*          \*          \*

["THREATENED SPECIES.—For any national area which may be authorized for the preservation of species of fish or wildlife that are threatened with extinction.]
"*ENDANGERED AND THREATENED SPECIES.*– For lands, waters, or interests therein, the acquisition of which is authorized under section 5 of the Endangered Species Act of 1973, needed for the purpose of conserving, protecting, restoring, or propagating endangered or threatened species of fish, wildlife, or plants. . . ."

33

**Addendum 043a**

SECTION 2 OF THE ACT OF SEPTEMBER. 28, 1962 (16 U.S.C. 460k–1)

"[SEC. 2. In order to avoid adverse effects upon fish and wildlife populations and management operations of the said areas that might otherwise result from public recreation or visitation to such areas, the Secretary is authorized to acquire limited areas of land for recreational development adjacent to the said conservation areas in existence or approved by the Migratory Bird Conservation Commission as of the date of enactment of this Act: *Provided*, That the acquisition of any land or interest therein pursuant to this section shall be accomplished only with such funds as may be appropriated therefor by the Congress or donated for such purposes, but such property shall not be acquired with funds obtained from the sale of Federal migratory bird hunting stamps. Lands acquired pursuant to this section shall become a part of the particular conservation area to which they are adjacent.]

*SEC. 2. The Secretary is authorized to acquire areas of land, or interests therein, which are suitable for—*

    *(1) incidental fish and wildlife oriented recreational development,*

    *(2) the protection of natural resources,*

    *(3) the protection of endangered or threatened species listed by the Secretary pursuant to section 4 of the Endangered Species Act of 1973, or*

    *(4) carrying out two or more of the purposes set forth in paragraphs (1) through (3) of this section, and are adjacent to, or within, the said conservation areas, except that the acquisition of any land or interest therein pursuant to this section shall be accomplished only with such funds as may be appropriated therefor by the Congress or donated for such purposes, but such property shall not be acquired with funds obtained from the sale of Federal migratory bird hunting stamps.*"

SECTION 3(1)(B) OF THE MARINE MAMMAL PROTECTION ACT (16 U.S.C. 1362) DEFINITIONS

"(1) The term 'depletion' or 'depleted' means any case in which the Secretary, after consultation with the Marine Mammal Commission and the Committee of Scientific Advisors on Marine Mammals established under title II of this Act, determines that the number of individuals within a species or population stock—

    (A) has declined to a significant degree over a period of years;

    (B) has otherwise declined and that if such decline continues, or is likely to resume, such species would be subject to the provisions of the [Endangered Species Conservation Act of 1969] *Endangered Species Act of 1973;* or

    (C) is below the optimum carrying capacity for the species or stock within its environment."

SECTION 101(A)(3)(B) OF THE MARINE MAMMAL PROTECTION ACT (16 U.S.C. 1371)

"(B) Except for scientific research purposes as provided for in paragraph (1) of this subsection, during the moratorium no permit may be issued for the taking of any marine mammal which is classified as belonging to an endangered species [pursuant to the Endangered

Species Conservation Act of 1969] *or threatened species pursuant to the Endangered Species Act of 1973* or has been designated by the Secretary as depleted, and no importation may be made of any such mammal."

SECTION 132(b)(3)  OF  THE  MARINE  MAMMAL  PROTECTION  ACT  (16 U.S.C. 1372(b)(3))

"(b) Except pursuant to a permit for scientific research issued under section 104(c) of this title, it is unlawful to import into the United States any marine mammal if such mammal was—

(1) pregnant at the time of taking;

(2) nursing at the time of taking, or less than eight months old, whichever occurs later;

(3) taken from a species or population stock which the Secretary has, by regulation published in the Federal Register, designated as a depleted species or stock or which has been listed as [endangered under the Endangered Species Conservation Act of 1969] *an endangered or a threatened species pursuant to the Endangered Species Act of 1973;* or

(2) taken in a manner deemed inhumane by the Secretary."

SECTION  202(a)(6)  OF  THE  MARINE  MAMMAL  PROTECTION  ACT  (16 U.S.C. 1402(a)(6))

SEC. 202. (a) The Commission shall—

". . . (6) recommend to the Secretary of the Interior such revisions of the [Endangered Species List, authorized by the Endangered Species Conservation Act of 1969] *endangered species list and threatened species list published pursuant to section 4(c)(1) of the Endangered Species Act of 1973,* as may be appropriate with regard to marine mammals; . . . ."

SECTIONS 1–3 OF THE ACT OF OCTOBER 15, 1966 (16 U.S.C. 668AA–668CC)

[An Act To provide for the conservation, protection, and propagation of native species of fish and wildlife, including migratory birds, that are threatened with extinction; to consolidate the authorities relating to the administration by the Secretary of the Interior of the National Wildlife Refuge System; and for other purposes.

[*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That (a) the Congress finds and declares that one of the unfortunate consequences of growth and development in the United States has been the extermination of some native species of fish and wildlife; that serious losses in other species of native wild animals with educational, historical, recreational, and scientific value have occurred and are occurring; and that the United States has pledged itself, pursuant to migratory bird treaties with Canada and Mexico and the Convention on Nature Protection and Wildlife Preservation in the Western Hemisphere, to conserve and protect, where practicable, the various species of native fish and wildlife, including game and nongame migratory birds, that are threatened with extinction. The purposes of this Act are to provide a program for the conservation, protection, restoration, and propagation

of selected species of native fish and wildlife, including migratory birds, that are threatened with extinction, and to consolidate, restate, and modify the present authorities relating to administration by the Secretary of the Interior of the National Wildlife Refuge System.

[(b) It is further declared to be the policy of Congress that the Secretary of the Interior, the Secretary of Agriculture, and the Secretary of Defense, together with the heads of bureaus, agencies, and services within their departments, shall seek to protect species of native fish and wildlife, including migratory birds, that are threatened with extinction, and, insofar as is practicable and consistent with the primary purposes of such bureaus, agencies, and services, shall preserve the habitats of such threatened species on lands under their jurisdiction.

[(c) A species of native fish and wildlife shall be regarded as threatened with extinction whenever the Secretary of the Interior finds, after consultation with the affected States, that its existence is endangered because its habitat is threatened with destruction, drastic modification, or severe curtailment, or because of overexploitation, disease, predation, or because of other factors, and that its survival requires assistance. In addition to consulting the States, the Secretary shall, from time to time, seek the advice and recommendations of interested persons and organizations including, but not limited to, ornithologists, ichthyologists, ecologists, herpetologists, and mammalogists. He shall publish in the Federal Register the names of the species of native fish and wildlife found to be threatened with extinction in accordance with this paragraph.

[SEC. 2. (a) The Secretary of the Interior shall utilize the land acquisition and other authorities of the Migratory Bird Conservation Act, as amended, the Fish and Wildlife Act of 1956, as amended, and the Fish and Wildlife Coordination Act to carry out a program in the United States of conserving, protecting, restoring, and propagating selected species of native fish and wildlife that are threatened with extinction.

[(b) In addition to the land acquisition authorities in such Acts. the Secretary is hereby authorized to acquire by purchase, donation, or otherwise, lands or interests therein needed to carry out the purpose of this Act relating to the conservation, protection, restoration, and propagation of selected species of native fish that are threatened with extinction.

[(c) Funds made available pursuant to the Land and Water Conservation Fund Act of 1965 (78 Stat. 897) may be used for the purpose of acquiring lands, waters, or interests therein pursuant to this section that are needed for the purpose of conserving, protecting, restoring, and propagating selected species of native fish and wildlife, including migratory birds, that are threatened with extinction. Not to exceed $5,000,000 may be appropriated annually pursuant to that Act for such purpose for any fiscal year, and the total sum appropriated for such purpose shall not exceed $15,000,000: *Provided,* That the Secretary shall, to the greatest extent possible, utilize funds from the Land and Water Conservation Fund Act of 1965 for such purpose. Such sums shall remain available until expended. The Secretary shall not use more than $750,000 to acquire lands, waters, or interests therein for any one area for such purpose unless authorized by Act of Congress.

Addendum 046a

〔(d) The Secretary shall review other programs administered by him and, to the extent practicable, utilize such programs in furtherance of the purpose of this Act. The Secretary shall also encourage other Federal agencies to utilize, where practicable, their authorities in furtherance of the purpose of this Act and shall consult with and assist such agencies in carrying out endangered species program.

SEC. 3. (a) In carrying out the program authorized by this Act, the Secretary shall cooperate to the maximum extent practicable with the several States. Such cooperation shall include consultation before the acquisition of any land for the purpose of conserving, protecting, restoring, or propagating any endangered species of native fish and wildlife.

〔(b) The Secretary may enter into agreements with the States for the administration and management of any area established for the conservation, protection, restoration, and propagation of endangered species of native fish and wildlife. Any revenues derived from the administration of such areas under these agreements shall be subject to the provisions of section 401 of the Act of June 15, 1935 (49 Stat. 383), as amended (16 U.S.C. 715s).〕

SECTIONS 1–6 OF THE ACT OF DECEMBER 5, 1969 (16 U.S.C.
66 SEC–1–1—66 SEC–6)

〔*An Act* To prevent the importation of endangered species of fish or wildlife into the United States; to prevent the interstate shipment of reptiles, amphibians, and other widlife taken contrary to State law; and for other purposes.

〔*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, for the purposes of sections 2 through 5 of this Act, the term—

〔(1) "Secretary" means the Secretary of the Interior;

〔(2) "fish or wildlife" means any wild mammal, fish, wild bird, amphibian, reptile, mollusk, or crustacean, or any part, products, egg, or offspring thereof, or the dead body or parts thereof;

〔(3) "United States" includes the several States, the District of Columbia, the Commonwealth of Puerto Rico, American Samoa, the Virgin Islands, and Guam; and

〔(4) "person" means any individual, firm, corporation, association, or partnership.

〔SEC. 2. Except as provided in section 3 of this Act, whoever imports from any foreign country into the United States any species or subspecies of fish or wildlife which the Secretary has determined, in accordance with the provisions of section 3 of this Act, to be threatened with worldwide extinction, shall be punished in accordance with the provisions of section 4 of this Act.

〔SEC. 3. (a) A species or subspecies of fish or wildlife shall be deemed to be threatened with worldwide extinction whenever the Secretary determines, based on the best scientific and commercial data available to him and after consultation, in cooperation with the Secretary of State, with the foreign country or countries in which such fish or wildlife are normally found and, or to the extent practicable, with interested persons and organizations and other interested Federal agencies, that the continued existence of such species or subspecies of fish or wildlife is, in the judgment of the Secretary, endangered due to any of

**Addendum 047a**

the following factors: (1) the destruction, drastic modification, or severe curtailment, or the threatened destruction, drastic modification, or severe curtailment, of its habitat, or (2) its overutilization for commercial or sporting purposes, or (3) the effect on it of disease or predation, or (4) other natural or man-made factors affecting its continued existence. After making such determination, the Secretary shall promulgate and from time to time he may revise, by regulation, a list in the Federal Register of such fish or wildlife by scientific, common, and commercial name or names, together with his determination. The Secretary shall at least once every five years conduct a thorough review of any such list to determine what, if any, changes have occurred relative to the continued existence of the species or subspecies of fish or wildlife then on the list and to determine whether such fish or wildlife continue to be threatened with worldwide extinction. Upon completion of such review, he shall take appropriate action consistent with the purposes of this Act. The Secretary shall, upon the request of any interested person, also conduct such review of any particular listed species or subspecies at any other time if he finds and publishes his finding that such person has presented substantial evidence to warrant such a review.

[(b) In order to minimize undue economic hardship to any person importing any species or subspecies of fish or wildlife which are determined to be threatened with worldwide extinction under this section, under any contract entered into prior to the date of publication of such determination in the Federal Register of such species or subspecies, the Secretary, upon such person filing an application with him and upon filing such information as the Secretary may require showing, to his satisfaction, such hardship, shall permit such person to import such species or subspecies in such quantities and for such periods, not to exceed one year, as he determines to be appropriate.

[(c) The Secretary may permit, under such terms and conditions as he may prescribe, the importation of any species or subspecies of fish or wildlife listed in the Federal Register under this section for zoological, educational, and scientific purposes, and for the propagation of such fish or wildlife in captivity for preservation purposes, unless such importation is prohibited by any other Federal law or regulation.

[(d) The provisions of section 553 of title 5 of the United States Code shall apply to any regulation issued under this section.

[SEC. 4. (a)(1) Any person who violates any provision of section 2 or 3 of this Act or any regulation or permit issued thereunder, or any regulation issued under subsection (d) of this section, other than a violation the penalty for which is prescribed by subsection (b) of this section, shall be assessed a civil penalty by the Secretary of not more than $5,000 for each such violation. No penalty shall be assessed unless such person is given notice and opportunity for a hearing with respect to such violation. Each violation shall be a separate offense. Any such civil penalty may be compromised by the Secretary. Upon any failure to pay the penalty assessed under this paragraph, the Secretary may request the Attorney General to institute a civil action in a district court of the United States for any district in which such person is found or resides or transacts business to collect the penalty and such court shall have jurisdiction to hear and decide any such action. In

hearing such action, the court shall have authority to review the violation and the assessment of the civil penalty de novo.

〔(2) Any employee authorized pursuant to subsection (c) of this section to enforce the provision of sections 2 and 3 of this Act, and any regulations or permits issued pursuant thereto or pursuant to subsection (d) of this section, shall have authority, in addition to any other authority provided by law relating to search and seizure, to execute any warrant to search for and seize any fish or wildlife or property or items taken, used, or possessed in connection with any violation of any such section, regulation, or permit with respect to which a civil penalty may be assessed pursuant to paragraph (1) of this subsection. Such fish, wildlife, property, or item so seized shall be held by any employee authorized by the Secretary or the Secretary of the Treasury pending disposition of proceedings by the Secretary involving the assessment of a civil penalty pursuant to paragraph (1) of this subsection; except that the Secretary may, in lieu of holding such fish, wildlife, property, or item, permit such person to post a bond or other surety satisfactory to the Secretary. Upon the assessment of a civil penalty pursuant to paragraph (1) of this subsection for any nonwillful violation of any such section, regulation, or permit, such fish, wildlife, property, or item so seized may be proceeded against in any court of competent jurisdiction and forfeited to the Secretary for disposition by him in such manner as he deems appropriate. The owner or consignee of any such fish, wildlife, property, or item so seized shall, as soon as practicable following such seizure, be notified of that fact in accordance with regulations established by the Secretary or the Secretary of the Treasury. Whenever any fish or wildlife or property or item is seized pursuant to this subsection, the Secretary shall move to dispose of the civil penalty proceedings pursuant to paragraph (1) of this subsection as expeditiously as possible. If, with respect to any such fish, wildlife, property, or item so seized no action is commenced in any court of competent jurisdiction to obtain the forfeiture of such fish, wildlife, property, or item within thirty days following the disposition of proceedings involving the assessment of a civil penalty, such fish, wildlife, property, or item shall be immediately returned to the owner or the consignee in accordance with regulations promulgated by the Secretary.

〔(b) Any person who willfully violates any provision of section 2 or 3 of this Act or any regulation or permit issued thereunder or any regulation issued under subsection (d) of this section shall, upon conviction, be fined not more than $10,000, or imprisoned for not more than one year, or both.

〔(c) The provisions of sections 2 and 3 of this Act and any regulations or permits issued pursuant thereto or pursuant to subsection (d) of this section shall be enforced by either the Secretary or the Secretary of the Treasury, or both such Secretaries. Either Secretary may utilize, by agreement, the personnel, services, and facilities of any other Federal agency or any State agency. Any employee of the Department of the Interior or the Department of the Treasury authorized by the Secretary or the Secretary of the Treasury may, without a warrant, arrest any person who such employee has probable cause to believe is willfully violating, in his presence or view, any such section, or any regulation or permit issued thereunder, the penalty for

which is provided under subsection (b) of thi.. section, and may execute a warrant or other process issued by an officer or court of competent jurisdiction to enforce the provisions of such sections, regulations or permits. An employee who has made an arrest of a person in connection with any such willful violation may search such person at the time of his arrest and seize any fish or wildlife or property or items taken, used, or possessed in connection with any such violation, or any such employee shall have authority, in addition to any other authority provided by law relating to search and seizure, to execute any warrant to search for and seize any such fish, wildlife, property, or item so taken, used, or possessed. Any fish or wildlife or property or item seized shall be held by any employee authorized by the Secretary or the Secretary of the Treasury or by a United States marshal pending disposition of the case by the court, commissioner, or magistrate, except that the Secretary may, in lieu thereof, permit such person to post a bond or other surety satisfactory to him. Upon conviction, any (1) fish or wildlife seized shall be forfeited to the Secretary for disposal by him in such manner as he deems appropriate, and (2) any other property or items seized may, in the discretion of the court, commissioner, or magistrate, be forfeited to the United States or otherwise disposed of. The owner or consignee of any such fish, wildlife, property, or item so seized, shall, as soon as practicable following such seizure, be notified of that fact in accordance with regulations established by the Secretary or the Secretary of the Treasury. If no conviction results from any such alleged violation, such fish, wildlife, property or item so seized in connection therewith shall be immediately returned to the owner or consignee in accordance with regulations promulgated by the Secretary, unless the Secretary, within thirty days following the final disposition of the case involving such violation, commences proceedings under subsection (a) of this section.

[(d) For the purposes of facilitating enforcement of sections 2 and 3 of this Act and reducing the costs thereof, the Secretary, with the approval of the Secretary of the Treasury, shall, after notice and an opportunity for a public hearing, from time to time designate, by regulation, any port or ports in the United States for the importation of fish and wildlife, other than shellfish and fishery products imported for commercial purposes, into the United States. The importation of such fish or wildlife into any port in the United States, except those so designated, shall be prohibited after the effective date of such designations; except that the Secretary, under such terms and conditions as he may prescribe, may permit importation at nondesignated ports for movement to designated ports of entry. Such regulations may provide other exceptions to such prohibition if the Secretary deems it appropriate and consistent with the purposes of this subsection.

[(e) In carrying out the provisions of sections 2 through 5 of this Act, the Secretary may issue such regulations as may be appropriate.

[Sec. 5. (a) In carrying out the provisions of sections 2 and 3 of this Act, the Secretary, through the Secretary of State, shall encourage foreign countries to provide protection to species and subspecies of fish or wildlife threatened with worldwide extinction, to take measures

40

to prevent any fish or wildlife from becoming threatened with extinction, and shall cooperate with such countries in providing technical assistance in developing and carrying out programs to provide such protection, and shall, through the Secretary of State, encourage bilateral and multilateral agreements with such countries for the protection, conservation, and propagation of fish or wildlife. The Secretary shall also encourage persons, taking directly or indirectly fish or wildlife in foreign countries for importation into the United States for commercial or other purposes, to develop and carry out, with such assistance as he may provide under any authority available to him, conservation practices designed to enhance such fish or wildlife and their habitat. The Secretary of State, in consultation with the Secretary, shall take appropriate measures to encourage the development of adequate measures, including, if appropriate, international agreements, to prevent such fish or wildlife from becoming threatened with worldwide extinction.

[(b) To assure the worldwide conservation of endangered species and to prevent competitive harm to affected United States industries, the Secretary, through the Secretary of State, shall seek the convening of an international ministerial meeting on fish and wildlife prior to June 30, 1971, and included in the business of that meeting shall be the signing of a binding international convention on the conservation of endangered species.

[(c) There are authorized to be appropriated such sums, not to exceed $200,000, as may be necessary to carry out the provisions of subsection (b) of this section, such sums to remain available until expended.

[SEC. 6. (a) The Secretary of Agriculture and the Secretary shall provide for appropriate coordination of the administration of this Act and amendments made by this Act, with the administration of the animal quarantine laws (21 U.S.C. 101 et seq., 21 U.S.C. 111, 21 U.S.C. 134 t seq.) and the Tariff Act of 1930, as amended (19 U.S.C. 1306).

[(b) Nothing in this Act, or any amendment made by this Act, shall be construed as superseding or limiting in any manner the functions of the Secretary of Agriculture under any other law relating to prohibited or restricted importations of animals and other articles and no proceeding or determination under this Act shall preclude any proceeding or be considered determinative of any issue of fact or law in any proceeding under any Act administered by the Secretary of Agriculture.

[(c) Nothing in this Act, or any amendment made by this Act, shall be construed as superseding or limiting in any manner the functions and responsibilities of the Secretary of the Treasury under the Tariff Act of 1930, as amended, including, without limitation, section 527 of said Act (19 U.S.C. 1527) relating to the importation of wildlife taken, killed, possessed or exported to the United States in violation of the laws or regulations of a foreign country.]

## AGENCY COMMENTS

No comments on S. 1983 were received from any affected agency. The following comments were received on S. 1592:

41

**Addendum 051a**

DEPARTMENT OF STATE,
*Washington, D.C., June 5, 1973.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Commerce,*
*U.S. Senate, Washington, D.C.*

DEAR MR. CHAIRMAN: The Secretary has asked me to reply to your letter of May 15, 1973, requesting the Department's comments on S. 1592, a bill to provide for the conservation, protection and propagation of species or subspecies of fish and wildlife that are presently threatened with extinction or likely within the foreseeable future to become threatened with extinction; and for other purposes.

The legislation was transmitted to the Congress in conjunction with the President's State of the Union Message on Natural Resources and Environment of February 15, 1973. This Department strongly supports S. 1592.

The Office of Management and Budget advises that there is no objection to the submission of this report and that enactment of S. 1592 would be in accord with the Administration's program.

Sincerely,

MARSHALL WRIGHT,
*Assistant Secretary for Congressional Relations.*

THE GENERAL COUNSEL OF THE TREASURY,
*Washington, D.C., May 25, 1973.*

Hon. WARREN G. MAGNUSON,
*Chairman, Committee on Commerce,*
*U.S. Senate, Washington, D.C.*

DEAR MR. CHAIRMAN: Reference is made to your request for the views of this Department on S. 1592, "To provide for the conservation, protection, and propagation of species or subspecies of fish and wildlife that are presently threatened with extinction or likely within the foreseeable future to become threatened with extinction; and for other purposes."

The President, in his State of the Union Message of February 15, 1973, on Natural Resources and the Environment, stated that the limited scope of existing laws requires new authority to identify and protect endangered species before they are so depleted that it is too late and that he would ask the 93rd Congress to direct its attention to this problem. The Administration's proposal is contained in S. 1592.

In view of the foregoing, the Department recommends the enactment of S. 1592.

The Department was advised by the Office of Management and Budget that there was no objection to the submission to the Committee on Merchant Marine and Fisheries of a similar report on H.R. 4758, an identical bill, and that enactment of this legislation would be in accord with the program of the President.

Sincerely yours,

SAMUEL R. PIERCE, Jr.
*General Council.*

42

Addendum 052a